IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ST. PAUL FIRE AND MARINE INSURANCE    *      Civil Action No.: WDQ 02CV3123
COMPANY

                            *

               Plaintiff,

                            *

      v.

                            *

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY, et al.,
                  *

               Defendants.

      *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS

### PRELIMINARY STATEMENT

Defendants AMERICAN UNITED LIFE INSURANCE COMPANY, FIRST

ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, CONNECTICUT GENERAL

LIFE INSURANCE COMPANY, COMBINED INSURANCE COMPANY OF AMERICA,

CROWN LIFE INSURANCE COMPANY, THE EQUITABLE LIFE ASSURANCE SOCIETY

OF THE UNITED STATES, MANUFACTURERS LIFE INSURANCE COMPANY,

PHOENIX LIFE INSURANCE COMPANY, SUN LIFE ASSURANCE COMPANY OF

CANADA, SWISS RE LIFE & HEALTH AMERICA, INC., SWISS RE AMERICA HOLDING

CORPORATION, UNUM LIFE INSURANCE COMPANY OF AMERICA, GENERAL &

COLOGNE LIFE RE OF AMERICA, and CANADA LIFE INSURANCE COMPANY OF

AMERICA, (collectively "the Moving Defendants"), respectfully submit this Memorandum of

Law in support of their Motion to Stay this proceeding pending adjudication of the appeal in

Security Life Insurance Co. v. St. Paul Fire and Marine Insurance Company, currently before the

Georgia Court of Appeals.  As set forth below, considerations of practicality and wise judicial administration require a stay of this proceeding because the legal determinations from the underlying action on appeal in state court are so inextricably linked to the claims that have been asserted by St. Paul Fire and Marine Insurance Company ("St. Paul") in this action that the prior resolution of that earlier state court action is required before relief can be considered herein.

## STATEMENT OF FACTS

St. Paul brings this action to enforce alleged indemnity rights.  St. Paul's claims are based on contracts entered into in connection with its role as surety on a supersedeas bond filed in a Georgia court.  The supersedeas bond was to ensure that funds would be available to pay a 1996 Georgia judgment entered in favor of Gordon and Clarice Clark against Security Life Insurance Company of America ("Security Life").  Although the jury in the Clark trial had returned a verdict against Security Life on a variety of claims, the original judgment was entered against Security Life on a RICO claim for $14,476,694.18.  St. Paul entered into contracts with Security Life as well as Security Life's reinsurers which included the Moving Defendants[1] which provided indemnity to St. Paul to the extent it was required to pay a judgment on behalf of Security Life in its role as surety on the supersedeas bond. Thus, St. Paul issued a supersedeas bond in the amount of $16,220,000 securing the judgment against Security Life.

The supersedeas bond was to remain in effect pending appeals and pursuant to its express terms would become void and unenforceable to the extent that judgment was reversed.  The supersedeas bond states in pertinent portion:

---

[1]As more fully set forth in the Answer of the Moving Defendants, annexed hereto as Exhibit 1, in some instances the agreements were with the predecessors or affiliates of the Moving Defendants.

NOW THEREFORE, if Security Life Insurance Company shall pay all costs, charges and damages which may be awarded against it on said appeal, and if Security Life Insurance Company shall pay the judgment or that part of the judgment which is affirmed, then this obligation shall become void to the extent of such payment; and <u>if the judgment is overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified</u>; otherwise to be and remain in full force and effect. (emphasis added).[2]

In short, St. Paul's obligation as surety was the same as the obligation of its principal, Security Life.

Although the <u>Clark</u> verdict was initially reversed by the Georgia Court of Appeals, this was but the first of several appellate decisions in this matter. Indeed, the <u>Clark</u> action has a lengthy and complex appellate history which in the interest of brevity will not be recounted at length herein.[3] During the course of appeals by Security Life, the Clarks' RICO claim was reversed, as was the resultant trebling of damages. Similarly, the awards of attorneys' fees and punitive damages were also reversed.[4] When the case was last remanded to the Superior Court of Early County, Georgia in 2002, the compensatory award which had been affirmed was $4,073,000.

Before a judgment, consistent with the appellate decisions, was entered by the trial court after remand, there were a number of significant issues raised by Security Life concerning the

---

[2]A copy of the supersedeas bond is annexed as Exhibit B to the Moving Defendants' Answer, which has been annexed hereto as Exhibit 1.

[3]For the convenience of the Court, copies of the relevant appellate decisions are annexed as Exhibits C-K of the Moving Defendants' Answer, which has been annexed hereto as Exhibit 1.

[4] The Clark Plaintiffs in the underlying litigation were granted a new trial on attorneys' fees and punitive damages, but the new trial has not yet occurred, and St. Paul has no bond on that portion of the remaining litigation.

amount of the affirmed judgment.  These issues were litigated in motion practice before the Early County Superior Court, and St. Paul joined in Security Life's objections to the manner in which the Clark Plaintiffs sought to have their partial appellate victory crystalized in the form of a new judgment.  The issues currently on appeal are substantial in nature.  If all of Security Life's positions are sustained the amount of the judgment would be millions of dollars less than the amount which the Clark Plaintiffs contended should be awarded.  As discussed further below, this would have a direct impact on the liability of the Moving Defendants in this action.

The Early County Superior Court ruled in favor of the Clark Plaintiffs' contentions on the amount of the judgment and overruled the objections expressed by Security Life and St. Paul. Security appealed to the Georgia Court of Appeals and that appeal remains pending. Notwithstanding the continuing appeal of Security Life, its principal, St. Paul did not appeal but rather paid the entire judgment in excess of $7.5 million.  If, however, Security Life is correct in the position it has taken on appeal, the conclusion is inescapable that St. Paul has overpaid its obligation under the supersedeas bond, as an appeal was equally available to St. Paul, particularly to the extent that the positions taken by Security Life on appeal were the same positions taken by St. Paul in the trial court.

In substance, the issues were, and in the pending Georgia appeal still are, three-fold:

(1)    the original 1996 judgment on jury verdict had been reduced by $410,000 paid in settlement by certain settling parties.  At the end of the appeals, Security Life contended that the surviving judgment of $4,073,000 dollars should be similarly reduced, yielding a judgment of less than $4 million.  Security Life took the position that under Georgia law, the Clark Plaintiffs were entitled to pre-judgment interest only if they

-4-

recovered damages in excess of their pre-trial settlement demand of $4 million. It was Security Life's position that Georgia law requires settlement set-offs to be applied first for the purposes of this determination, and since the judgment after set-offs was less than the amount of the settlement demand, no pre-judgment interest could be recovered. Security also argued that the Clark Plaintiffs sought to manipulate application of the settlement set-offs so that they no longer applied on the judgment which had been the subject of the appeals, but were applied to another 1996 sanctions judgment for attorneys' fees.[5] The trial court sustained the Clark's position and Security Life appealed. If Security Life succeeds in its appeal, $374,792.10 of pre-judgement interest should never have been included in the judgment which was paid by St. Paul, and post-judgment interest on the amounts previously set-off by settlements should not have been made part of the judgment. This disputed post-judgment interest could total more than $1 million.

(2)    Security Life has also taken the position that the Clark Plaintiffs manipulated the sanctions judgment, applying post-judgment interest to it *before* subtracting the settlement set-offs. Security Life contends that there is no basis in Georgia law for applying settlement set-offs *after* adding post-judgment interest. If a set-off is to be applied, it should be applied to the judgment, and interest cannot be earned on the amount which is subject to set-off. This manipulation created a basis, however strained, for recovery of pre-judgment interest. If this ruling, which is the subject of

---

[5] The other judgment was a 1996 judgment in the amount of $306,290.08 for attorneys' fees against Security Life as a sanction for Security Life having asserted a counter-claim. Security Life has taken the position that the other judgment had, however, been "subsumed" by the attorney's fees award at trial, and that subsequent award had been reversed, with direction for a new trial.

Security Life's appeal, is reversed, the conclusion is again inescapable that St. Paul overpaid the judgment. St. Paul, like Security Life, had attacked the calculation of the judgment, and St. Paul also had a right of appeal which it abandoned when it volunteered to pay this questionable judgment. These two issues involve a substantial sum of money, as much as $1.5 million, as the elimination of the settlement set-offs from the trial judgment result in an addition of post-judgment interest on a larger judgment amount, running (according to the Clark Plaintiffs) for six years.

(3)     Finally, Security Life contends that post-judgment interest should be awarded only after entry of the modified judgment of July of 2001, while the Clark Plaintiffs take the position that post-judgment interest should run on the affirmed portion of the 1996 judgment from the original entry of that judgment in 1996. Again, if Security Life is correct in its position on this issue, then it would appear that St. Paul overpaid the judgment, in this instance by more than $2 million in post-judgment interest.

This collection of three enumerated errors, currently pending on appeal in the Court of Appeals of Georgia, represent millions of dollars in potential reduction of the judgment St. Paul paid.

In response to Security Life's appeal to the Court of Appeals of Georgia, the Clark Plaintiffs moved to dismiss the appeal in the Court of Appeals or, in the alternative, to substitute St. Paul as a proper party in lieu of the Clark Plaintiffs. The Clark Plaintiffs contended that the payment in full of the judgment by St. Paul rendered the appeal moot, or, if it was not moot, St. Paul was the proper party to defend the appeal.

On February 10, 2003, the Court of Appeals of Georgia entered an order, denying the motion to dismiss the appeal as moot, but granting the motion to substitute St. Paul in lieu of the

Clark Plaintiffs, as appellee.  The Court of Appeals made the following ruling:

> Appellees' motion to dismiss is denied.  Security Life Insurance Company's ("Security") appeal is not moot even though co-defendant St. Paul, as surety on the supersedeas bond, paid the full amount of the judgment awarded to the Clarks, since St. Paul has demanded indemnification from Security, and <u>a reversal of the judgment on the grounds urged by Security will reduce any potential obligation that Security may have to St. Paul to indemnify it for payment of the judgment</u>.  (citations omitted) (emphasis added).[6]

The identical rationale applies to the Moving Defendants herein.  Reversal of any portion of the judgment will reduce the potential obligation that the defendants may have to St. Paul under the indemnity agreements.

Thus, it clear that the Georgia Court of Appeals has concluded that the right of St. Paul to obtain indemnity from its indemnitors on the supersedeas bond is conditioned upon a finding that the amount paid by St. Paul was actually due and payable.[7]  If the judgment is reversed in part, the Court of Appeals has already ruled that this "will reduce any potential obligation that Security may have to St. Paul to indemnify it for payment of the judgment."  A review of the plain language of the supersedeas bond and of the recent decision of the Georgia Court of Appeals clearly demonstrates that St. Paul's claim for indemnification herein is premature, and further, that it should be stayed pending resolution of  Security Life's appeal.

---

[6] A copy of the decision of the Court of Appeals in annexed as Exhibit K to the Moving Defendants' Answer, which has been annexed hereto as Exhibit 1.

[7] St. Paul subsequently filed a motion for reconsideration of this order, but the motion was denied on March 14, 2003.

**LEGAL ARGUMENT**

**POINT I**

I.      **The Balance of the Equities Counsels That This Court Should Exercise Its Discretion to Stay This Action Pending Resolution of the Underlying Appeal.**

The Declaratory Judgment Act under which the plaintiff seeks relief is an enabling act which confers a discretion on the court rather than an absolute right upon the litigant.  Wilton v. Seven Falls Company, 515 U.S. 277, 287 (1995).  In keeping with the nonobligatory nature of this remedy, a district court is vested with the discretion to stay or dismiss an action for declaratory judgment.  Id. at 288, Centennial Life Insurance Company v. Poston, 88 F.3d 255, 256 (4th Cir. 1996).   Indeed, the district courts have been afforded wide latitude in making the determination of whether to issue such a stay or dismissal.  Aetna Casualty & Surety Company v. Ind-Com Electric Company, 139 F.3d 419, 421-22 (4th Cir. 1998); Hartford Casualty Insurance Company v. Wugin, 2003 WL 679841 (D. Md. Feb. 11, 2003) at *1; Rei-Jue Chang v. Maxwell, 102 F.Supp.2d 316, 317 (D. Md. 2000), aff'd, 19 Fed. Appx. 148 (4th Cir. 2001).

Considerations of practicality and wise judicial administration dictate whether the Court should stay an action for declaratory judgment pending resolution of underlying litigation. Wilton, 515 U.S. at 288,  Essex Insurance Company v. Dembo, Inc., 47 F. Supp.2d 627 (D. Md. 1999).  The Fourth Circuit has ruled that a declaratory judgment action is appropriate where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue and the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  Centennial Life, 88 F.3d at 256-257; Aetna Casualty & Surety Company v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937); Hartford Casualty, at *2.

In the instant case, neither of these purposes would be satisfied by proceeding with this

federal action at this juncture. As discussed in detail above, any reduction in the judgment as a result of Security Life's pending appeal will reduce the obligation of the Moving Defendants herein. Accordingly, the uncertainty and controversy giving rise to this proceeding cannot be resolved until the underlying action is resolved, nor can the legal relations in issue be clarified or settled until the precise amount of the judgment is fixed in that action. If anything, proceeding with this action at this time would serve only to muddle matters. The inequity which could result from a scenario wherein this Court ruled that the Moving Defendants must fully indemnify St. Paul, only to have the state court determine that St. Paul's payment was excessive and thus voluntary, should be sufficient to convince this Court to await resolution of the underlying appeal.

Even if the above two criteria for the propriety of a declaratory judgment action could somehow be satisfied, it appears that the district court must still weigh additional factors before deciding to hear such an action, including: 1) whether the state has a strong interest in having the issues decided in its courts; 2) whether the state courts could resolve the issues more efficiently than the federal courts; 3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between state and federal courts; and 4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping. Ind-Com Electric, 139 F.3d at 422 (citing Nautilus Insurance Company v. Winchester Homes Inc., 15 F.3d 371, 377 (1994)). But see Centennial Life, 88 F.3d at 257-258 (questioning the continued viability of Nautilus in the wake of Wilton); see also Hartford Casualty at *2 (noting that while the Nautilus factors may no longer be binding following Wilton, they still provide some guidance in this area).

To the extent that these factors are applicable in this instance, they also militate in favor of a stay.  St. Paul has not indicated that any questions of federal law are implicated, and indeed as the above factual recitation indicates the extent of the ultimate indemnification obligation owed to St. Paul touches upon complicated issues of calculation of the final judgment under state law.  As was noted by the Fourth Circuit in <u>Mitcheson v. Harris</u>, 955 F.2d 235, 237 (1992), "[t]here exists an interest in having the most authoritative voice speak on the meaning of the applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."  Moreover, given the breadth of experience that the Georgia courts have had with this matter to date, they should be able to resolve the issue of the extent of St. Paul's right to indemnification with respect to the supersedeas bond more efficiently in this instance.  There would appear to be little incentive for this Court to expend its resources on resolution of the identical issue.  In addition, once that issue has been resolved in state court, the remaining issues in this proceeding should be ripe for resolution.  Finally, while not a major factor, there would appear to be overlapping factual issues between this matter and the pending state court action which could create the potential for entanglement on preclusion grounds.  In sum, the relevant factors to be considered by the Court all indicate that a stay is warranted.

## <u>CONCLUSION</u>

This Court should exercise its broad discretion to stay these proceedings based upon considerations of practicality and wise judicial administration.  Proceeding with this action at this time would serve little purpose, given that the issues herein are so inextricably linked with and dependent upon the resolution of the pending appeal in the related state court action. It would be

grossly inequitable to require the Moving Defendants to proceed in mounting a defense in this action against St. Paul's uncertain claim for indemnification concerning a judgment which remains in dispute.  The Moving Defendants respectfully request an Order staying this proceeding pending the resolution of the underlying dispute.

SEMMES, BOWEN & SEMMES, P.C.


*/s/ J. Snowden Stanley, Jr.*
J. Snowden Stanley, Jr., Fed. Bar #00059
SEMMES, BOWEN & SEMMES, P.C.
250 West Pratt Street
Baltimore, MD  21201
(410) 539-5040
                - and -
MOUND, COTTON, WOLLAN & GREENGRASS
Lawrence S. Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200
**ATTORNEYS FOR DEFENDANTS**
AMERICAN UNITED LIFE INSURANCE COMPANY,
FIRST ALLMERICA FINANCIAL LIFE INSURANCE
COMPANY, CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, COMBINED INSURANCE
COMPANY OF AMERICA, CROWN LIFE INSURANCE
COMPANY, THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES, MANUFACTURERS
LIFE INSURANCE COMPANY, PHOENIX LIFE
INSURANCE COMPANY, SUN LIFE ASSURANCE
COMPANY OF CANADA, SWISS RE LIFE & HEALTH
AMERICA, INC., SWISS RE AMERICA HOLDING
CORPORATION, UNUM LIFE INSURANCE COMPANY
OF AMERICA, GENERAL & COLOGNE LIFE RE OF
AMERICA, and CANADA LIFE INSURANCE
COMPANY OF AMERICA

(B0331329.WPD;1)