IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No. WDQ-02-3123 |
| | * | |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, et al. | * | |
| | | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Defendant Transamerica Occidental Life Insurance Company ("Transamerica") submits this memorandum in support of its motion to dismiss the First Amended Complaint of Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") for failure to state a claim upon which relief can be granted.

**I.   Introduction**

In its First Amended Complaint, St. Paul seeks declaratory and other relief based upon indemnity agreements it entered into with Transamerica and the other defendants in connection with St. Paul's role as surety on a Supersedeas Bond filed in The Superior Court of Early County, Georgia. The bond was issued as security for a judgment which had been entered in the Georgia state court in favor of Plaintiffs, Gordon and Clarice Clark, in the amount of $14,476,694.18, and against Security Life Insurance Company of America ("Security Life"). Pursuant to its terms, the bond expired in the event any appellate court reversed the lower court's judgment.

On December 2, 1997, the Georgia Court of Appeals reversed the judgment; however, St. Paul failed to take action to discharge the bond. After a series of further appeals to the Georgia Supreme Court and Georgia Court of Appeals,[1] the case was remanded to the trial court, which entered a modified judgment in favor of plaintiffs in the amount of $6,330,694.18 on July 5, 2001. The Court of Appeals affirmed the Judgment and the Georgia Supreme Court denied St. Paul's Petition for Certiorari. St. Paul paid the remaining judgment in the amount of $7,527,513.91, which included interest and attorneys fees. St. Paul then filed the instant action against Transamerica and the other defendants based on indemnity agreements each had signed agreeing to indemnify St. Paul in the event it was required to pay any portion of the judgment pursuant to the terms of the Bond.

As demonstrated more fully below, Transamerica's obligation to indemnify St. Paul ended when the Georgia appellate court reversed the judgment upon which the Supersedeas Bond was based because the explicit and unambiguous terms of the bond provide that this obligation became void upon a reversal of the judgment by any appellate court. Any further obligations on the bond constituted an additional commitment to which Transamerica did not agree. Accordingly, Plaintiff's Amended Complaint should be dismissed.

## II.     Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court should grant Transamerica's motion to dismiss if it appears certain from St. Paul's First Amended Complaint that St. Paul can prove no set of facts which would support its claims and entitle St. Paul to the relief which it seeks in its First Amended Complaint. <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130,

---

[1] The somewhat tortured procedural history of the underlying action is set forth in co-defendants' Motion to Stay Proceedings, filed in this action. In the Motion to Stay, co-defendants seek a stay pending further proceedings in the

1134 (4th Cir. 1993).

For purposes of deciding Transamerica's motion to dismiss, this Court must accept all well-pled allegations in St. Paul's First Amended Complaint as true and construe the facts and reasonable inferences derived therefrom in the light most favorable to St. Paul. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1994). However, this Court need not accept usupported legal conclusions in St. Paul's First Amended Complaint. Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989). Moreover, this Court need not accept legal conclusions in St. Paul's First Amended Complaint that are couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III.  Factual Allegations

On August 6, 1996, the Superior Court for Early County, Georgia, entered a judgment against Security Life in the amount of $14,476,694.18 on behalf of Gordon and Clarice Clark. First Amended Complaint, ¶¶s 21 and 22. The judgment was based on the Clark's claims under the Georgia Racketeering Influenced and Corrupt Action Act for alleged violations of the Georgia Insurance Code. The Clarks alleged that, in applying for a health insurance policy with Security Life Insurance, they disclosed a preexisting health-related condition, which the insurance agent fraudulently omitted from the application. See, Security Life Insurance Company of America v. Clark, et al., 228 Ga. App. 593, 493 S.E. 2d 388 (GA. App, 1997).

---

Georgia appellate courts.

Security Life appealed the judgment of the Superior Court. St. Paul agreed to post an appeal bond in the amount of $16,220,000.00, which was filed by St. Paul, as surety, on December 2, 1996. First Amended Complaint, ¶ 25. On November 8, 1996, Richard K.M. Lau, on behalf of Transamerica, executed a document in which Transamerica agreed to provide specific indemnification to St. Paul ("Indemnity Agreement"), a copy of which appears in Exhibit A to St. Paul's First Amended Complaint. First Amended Complaint ¶¶ 23 and 24. Pursuant to the terms of the Indemnity Agreement, Transamerica agreed to indemnify and hold St. Paul harmless in respect of 12.1125 percent of losses, damages, claims, costs, expenses and attorneys' fees which St. Paul may incur pursuant to the explicit terms of the Supersedeas Bond issued by St. Paul, a copy of which appears as Exhibit B to St. Paul's First Amended Complaint.[2]

> The appeal bond provides in pertinent part that:
>
> NOW THEREFORE, if Security Life Insurance Company shall pay all costs, charges and damages which may be awarded against it on said appeal, and if Security Life Insurance Company shall pay the judgment or that part of the judgment which is affirmed, then this obligation shall become void to the extent of such payment; and if the judgment is overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified; otherwise to be and remain in full force and effect.

Exhibit B, Plaintiff's First Amended Complaint.

---

2  The terms of the Supersedeas Bond with respect to losses, damages, claims, costs, expenses and attorneys' fees, therefore, are incorporated by reference into the Indemnity Agreement. Payne v. McDonald's Corp., 957 F. Supp. 749, 756 (D. Md. 1997). Both Maryland and Georgia have adopted the incorporation by reference doctrine. Javed v. British Airways, PLC, 980 F.2d 1407, 1408 (11th Cir. 1993); Goodwin and Boone, et al. v. Choice Hotels International, Inc., 346 Md. 153, 159, 695 A.2d 168 (1997).

On December 2, 1997, the Georgia Court of Appeals reversed the judgment of the trial court in its entirety.  First Amended Complaint, ¶ 26.  The Clarks appealed to the Georgia Supreme Court, which affirmed in part, and reversed in part, and remanded the case to the Court of Appeals.  First Amended Complaint, ¶ 27.  On remand, the Court of Appeals made further findings based on the Supreme Court's Opinion and reinstated a portion of the trial court's judgment in favor of Plaintiffs.  First Amended Complaint, ¶ 28.  On or about September 11, 2000, the Supreme Court again reversed the Court of Appeals and remanded the case to the Court of Appeals, which, in turn, remanded the case to the lower court for further proceedings.  First Amended Complaint, ¶¶s 28-30.  Upon remand, the Superior Court issued a modified judgment in the amount of $6,330,694.18.

It was not until the case was ultimately remanded to the trial court by the Court of Appeals on April 3, 2001, that St. Paul filed a motion to discharge it as surety in connection with the Appeal Bond.  First Amended Complaint, ¶ 31.  The trial court, however, denied St. Paul's motion, holding that the Supersedeas Bond remained in full force and effect with respect to that portion of the modified judgment that the Court had imposed in the amount of $6,330,694.18.  First Amended Complaint, ¶ 32.  The Court of Appeals affirmed the trial court's entry of the modified judgment as well as the denial of the motion to discharge St. Paul as surety.  First Amended Complaint, ¶ 33.  The Supreme Court of Georgia denied St. Paul's Petition for Writ of Certiorari. First Amended Complaint, ¶ 34.

**IV.  Argument**

The Supersedeas Bond at issue that St. Paul furnished acted as security for the original judgment entered by the Superior Court of Early County, Georgia on August 6, 1996.  The third

paragraph of the Supersedeas Bond explicitly provides that St. Paul's obligations thereunder would become void if the judgment were reversed by any court exercising appellate jurisdiction over the Clarks. Accordingly, pursuant to the unambiguous terms of the Supersedeas Bond, St. Paul's obligations thereunder became void and, thereby, Transamerica's obligations under the Indemnity Agreement ceased on December 2, 1997, when the Georgia Court of Appeals reversed the judgment. First Amended Complaint, ¶ 26.

In its First Amended Complaint, St. Paul makes a number of allegations as to what occurred with respect to <u>Clark</u> after the judgment was reversed on December 2, 1997. What happened after the judgment was reversed, however, is completely irrelevant to Transamerica's obligations under the Indemnity Agreement, which is premised on the Supersedeas Bond that became "void" upon reversal of the judgment. St. Paul may have had liability under the Supersedeas Bond after December 2, 1997 for any number of reasons. For example, after December 2, 1997, St. Paul may have left the Supersedeas Bond in place and continued to collect premiums from Security even though there was then no judgment upon which the plaintiffs in <u>Clark</u> could have collected. Alternatively, St. Paul may have had liability to the plaintiffs in <u>Clark</u> simply because St. Paul failed to file a motion to discharge its obligations as a surety after the Georgia Court of Appeals reversed the Judgment on December 2, 1997. Transamerica never agreed to provide St. Paul with indemnification under any of these or any other similar circumstances.

When a surety materially changes an undertaking indemnified, thereby increasing the risk to the indemnitor or otherwise prejudicing the indemnitor, the indemnitor may be discharged from liability. <u>United States Fidelity & Guar. Co. v. Hathaway</u>, 394 S.E.2d 764, 767 (W. Va.

6

1990)(citing General Ins. Co. v. Fleeger, 389 F.2d 159 (5th Cir. 1968); Hiern v. St. Paul-Mercury Indem. Co., 262 F.2d 526 (5th Cir. 1959); American Casualty Co. v. Idaho First Nat'l Bank, 328 F.2d 138 (9th Cir. 1964); Denton v. Fireman's Fund Indem. Co., 352 F.2d 95 (10th Cir. 1965); United Pac. Ins. Co. v. Johnson-Gillanders Co., 280 F. Supp. 90 (D.N.D. 1968); United States Fire Ins. Co. v. Johansen, 76 Cal. Rptr. 174 (Cal. Ct. App. 1969); Rosenbloom v. Feiler, 431 A.2d 102 (Md. 1981); New Amsterdam Casualty Co. v. Lundquist, 198 N.W.2d 543 (Minn. 1972); Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co., 714 S.W.2d 597 (Mo. Ct. App. 1986); Huck v. Gabriel Realty, 346 A.2d 628 (N.J. Super Ct. Law Div. 1975); and 41 Am. Jur. 2d Indemnity § 37 (1968 & Supp. 1990)).  Any commitment by St. Paul to provide security under the Supersedeas Bond after December 2, 1997 would have been a material change in St. Paul's undertaking because St. Paul's obligations under the Supersedeas Bond had become void on December 2, 1997.  St. Paul never sought the consent of Transamerica for any such material change in St. Paul's undertaking.  Accordingly, even if Transamerica did have continuing obligations under the Indemnity Agreement after December 2, 1997, Transamerica would be entitled to be discharged from such obligations and, therefore, St. Paul would neither be entitled to the declaration it seeks, nor would St. Paul be able to prevail on its breach of contract claim.

No allegation is made by St. Paul in its First Amended Complaint that, after December 2, 1997, Transamerica agreed to provide any indemnification whatsoever to St. Paul.  Indeed, after December 2, 1997, when St. Paul requested that Transamerica provide indemnification to St. Paul, Transamerica refused to provide such indemnification.  See letter dated January 18, 2000 from Reid A. Evers, Esq. to St. Paul, a copy of which appears in Exhibit C to St. Paul's First Amended Complaint.

In summary, the following is clear:

(1) Transamerica agreed to indemnify St. Paul for obligations of St. Paul that ceased on December 2, 1997; and

(2) Transamerica never agreed to provide any other indemnification to St. Paul.

Under these circumstances, there can be no set of facts which would support St. Paul's claims and entitle St. Paul to the relief that it seeks in its First Amended Complaint. For the foregoing reasons, Transamerica's motion to dismiss should be granted.

Respectfully submitted,

_____/s/_____
Gregg L. Bernstein (Fed. Bar No. 01340)
Martin, Snyder & Bernstein, P.A.
217 East Redwood Street, Suite 2000
Baltimore, Maryland 21202
Telephone: (410) 547-7163
Facsimile: (410) 547-1605


_____/s/_____
Reid A. Evers
Transamerica Occidental Life
Insurance Company
1150 South Olive Street, T-9-13
Los Angeles, CA 90015
Telephone: (213) 742-3595
Facsimile: (213) 763-9680
*Counsel for Defendant Transamerica Occidental Life Insurance Company*