# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, et al. | *   Civil Action No.: WDQ-02-3123 |
| | * |
| Defendants. | * |
| | * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

St. Paul Fire and Marine Insurance Company ("St. Paul"), Plaintiff, by its undersigned attorneys, files this Memorandum in Support of its Motion for Partial Summary Judgment.

## INTRODUCTION

In this case St. Paul seeks to enforce the unambiguous language of indemnity agreements executed by each of the Defendants in consideration of St. Paul's agreement to furnish an appeal bond in a Georgia state-court case.[1] In the indemnity agreements,

---

[1] St. Paul seeks summary judgment as to its claims against all of the Defendants in this action (or their successors as identified by Defendants in their Answer to Amended Complaint). The Defendants include Transamerica Occidental Life Insurance Company, American United Life Insurance Company, First Allmerica Financial Life Insurance Company, Connecticut General Life Insurance Company, General and Cologne Life Re of America (formerly known as Cologne Life Reinsurance Company), Combined Insurance Company of America, Crown Life Insurance Company, The Equitable Life Assurance Society of the United States, Manufacturers Life Insurance Company, Phoenix Life Insurance Company (formerly known as Phoenix Home Life Mutual Insurance Company), Principal Life Insurance Company (formerly known as Principal Mutual Life Insurance Company), Sun Life Assurance Company of Canada, Swiss Re Life & Health America, Inc. (as successor to The Mercantile & General Reinsurance Company Limited and as successor to Swiss Re Life Company America, sued as Swiss Re Life Company of America), Unum Life Insurance Company of America, and Canada Life Insurance Company of America.

each of the Defendants agreed to indemnify St. Paul in a specific percentage against any and all loss, damages, claims, costs, expenses and attorney's fees incurred by St. Paul by reason of having furnished the appeal bond.

Now, St. Paul has fulfilled its obligation under the bond by paying a Georgia judgment of more than $7.5 million. Defendants, however, have refused to live up to their obligations; so far, they have failed to pay St. Paul a single penny. As a result, St. Paul has filed this action seeking to enforce the unambiguous language of the indemnity agreements.

## UNDISPUTED FACTS

### I. The Clarks Obtain a Judgment against Security Life Insurance Company of America.

In 1995, Gordon and Clarice Clark ("the Clarks") sued Security Life Insurance Company of America ("Security") in Early County, Georgia. After a trial, on August 6, 1996, the trial court entered judgment in the amount of $14,476,694.18 in favor of the Clarks against Security.

### II. In Consideration of Defendants' Promises of Indemnity, St. Paul Issues an Appeal Bond.

Security wished to appeal the judgment, but under Georgia law it needed to post an appeal bond of $16,220,000 ("the Appeal Bond") to avoid execution on the judgment while the appeal was pending. It asked St. Paul to issue the Appeal Bond.

Before agreeing to furnish the bond, St. Paul required appropriate collateral and indemnity to protect itself against a loss. To that end, prior to agreeing to issue the bond, St. Paul demanded and received substantial collateral and indemnity obligations from Security and the Defendants. Specifically, Security entered into a Agreement of Indemnity with St. Paul. It also posted a letter of credit in favor of St. Paul in the amount

2

of $2,433,000. The amount of the letter of credit was 15% of the amount of the required appeal bond. A copy of Security's Agreement of Indemnity is attached hereto as ***Exhibit 1*** and incorporated herein by reference.

St. Paul required additional assurance that it would be fully indemnified with regard to the remaining 85% of the amount required for the Appeal Bond. Defendants, who were then Security's reinsurers, agreed to provide such assurance.[2] In or about November 1996, Defendants (together with Allianz, a reinsurer that is not a party to this action) entered into separate identical indemnity agreements with St. Paul. Pursuant to those agreements, Defendants and Allianz severally agreed to indemnify St. Paul, in specific percentages totaling 85% of the potential losses to which St. Paul was exposed as a result of issuing the Appeal Bond. Each indemnity agreement also contained a maximum dollar amount (representing the allocated percentage of $16,220,000) that the particular Defendant who executed the Agreement would be required to pay. Copies of the indemnity agreements ("the Indemnity Agreements"), together with a chart summarizing them, are attached collectively as ***Exhibit 2*** and incorporated herein by reference.

---

[2] It is well recognized that surety bonds such as the Appeal Bond involved in this case "involve essentially an extension of credit" by the surety, rather than the spreading of risks typically associated with insurance policies. *State Highway Administration v. Transamerica Insurance Company*, 278 Md. 690, 697 n.6, 367 A.2d 509, 514 n.6 (1976) quoting E.A. Cushman, Surety Bonds on Public and Private Construction Projects, 46 ABAJ 649, 652 (1960). In connection with these extensions of credit, it is typical for a surety to obtain indemnity rights not only against its principal -- in this case Security -- but also against other credit-worthy parties. In the instance of an appeal bond, where the bond principal already has a judgment entered against it, indemnity becomes an even greater concern. To that end, prior to issuing an appeal bond, it is common that a surety may require security or collateral equal to its entire risk. Examples of successful enforcement efforts by sureties against their principals and other indemnitors include *Western Surety Co. v. Medsolutions, Inc.*, 2003 WL 251433 (N.D. Tex. 2003) (claim against indemnitors on appeal bond); *DeGennaro v. Fidelity and Deposit Co. of Maryland*, 1989 WL 150570 (E.D.N.Y. 1989) (same); *Capitol Indemnity Corporation v. Aulakh*, 313 F.3d 200 (4th Cir. 2002) (claim against indemnitors on construction-related bond), and *Republic Insurance Co. v. Culbertson*, 717 F. Supp. 415 (E.D. Va. 1989) (same).

Each Indemnity Agreement provided, unconditionally and unequivocally, that each Defendant would, *inter alia,*

> indemnify [St. Paul] and hold [St. Paul] harmless in respect to [Defendant's] respective proportion[] of any and all loss, damages, claims, costs, expenses and attorney's fees which [St. Paul] may incur by reason of [St. Paul] having furnished the [Appeal Bond] and [Defendant] further agree[s] that [Defendant] shall immediately pay [St. Paul], upon [St. Paul's] demand, the amount of any claim that [St. Paul] may receive under and by reason of [St. Paul's] having issued the [Appeal Bond]. . . .

Indemnity Agreements, ***Exhibit 2***.

In consideration of the Indemnity Agreements, on or about December 2, 1996, St. Paul, as surety, provided to Security, as principal, the Appeal Bond in the amount of $16,220.000.00. The Appeal Bond provided, *inter alia*:

> The condition of this obligation is such that, whereas the said Security Life Insurance Company appeals to the Court of Appeals of the State of Georgia from the Final Judgment filed on August 6, 1996;
>
> NOW THEREFORE, if Security Life Insurance Company shall pay all costs, charges and damages which may be awarded against it on said appeal, and if Security Life Insurance Company shall pay the judgment or that part of the judgment which is affirmed, then this obligation shall become void to the extent of such payment; and if the judgment is overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified; otherwise to be and remain in full force and effect.

The Appeal Bond was approved by the trial court on December 2, 1996. A copy of the Appeal Bond is attached as ***Exhibit 3*** and incorporated herein by reference.

### III.   The Protracted Appellate Proceedings.

The appellate proceedings have been long and protracted. In a series of decisions, the case was reversed and remanded by the appellate courts several times.[3]

---

[3] A detailed procedural history of the litigation is set forth in St. Paul's Amended Complaint for Declaratory and Other Relief. *See also St. Paul Fire & Marine Ins. Co. v. Clark*, 566 S.E.2d 2 (Ga. App. 2002);

*(Footnote continued on next page)*

Upon remand to the trial court in 2001, Security and St. Paul filed motions to discharge St. Paul as surety in connection with the appeal. In substance, St. Paul contended that the original trial judgment had been reversed and that therefore, under the terms of the Appeal Bond, it had been discharged of its obligations as surety.

The trial court <u>rejected</u> St. Paul's motion. Instead, on July 5, 2001, it entered a "Modified Judgment on Remand." In entering the Modified Judgment, the trial court held that the Appeal Bond remained in full force and effect. It <u>denied</u> Security's and St. Paul's Motions to Discharge Surety.

On appeal, the Court of Appeals affirmed the trial court's rulings. *St. Paul Fire & Marine Insurance Co. v. Clark*, 255 Ga. App. 14, 566 S.E.2d 2 (2002). St. Paul thereafter filed a Petition for Certiorari to the Georgia Supreme Court, which was denied on September 6, 2002. A copy of the Supreme Court's Order denying St. Paul's Petition for Certiorari is attached as ***Exhibit 5*** and incorporated herein by reference.

### IV. The Trial Court Enters Judgment and the Clarks Proceed to Execute on the Appeal Bond.

On remand, on November 11, 2002, the trial court ordered a new trial on the issue of attorneys' fees and punitive damages, and entered judgment in favor of the Clarks, and against St. Paul and Security, in the amount of $7,481,950.53, which included $4,073,000.00 in judgment principal, plus interest. The court also awarded the Clarks additional interest of $1,339.07 per day on the judgment principal until the judgment was

---

*(Footnote continued from previous page)*
*Security Life Ins. Co. v. Clark*, 547 S.E.2d 691 (Ga. App. 2001); *Security Life Ins. Co. v. Clark*, 535 S.E.2d 234 (Ga. 2000); *Security Life Ins. Co. v. Clark*, 521 S.E.2d 434 (Ga. App. 1999); *Clark v. Security Life Ins. Co.*, 509 S.E.2d 602 (Ga. 1998); *Security Life Ins. Co v. Clark*, 494 S.E.2d 388 (Ga. App. 1997). Copies of the Georgia opinions are attached as ***Exhibits 4a - f*** and incorporated herein by reference.

paid, as well as costs. A copy of the November 11, 2002, Judgment on Remand is attached as ***Exhibit 6*** and incorporated herein by reference.

On November 13, 2002, the Clarks obtained and recorded a writ of fieri facias against Security Life and St. Paul, jointly and severally, for the full amount of the judgment. A copy of the writ of fieri facias is attached as ***Exhibit 7*** and incorporated herein by reference.

### V.  St. Paul Pays the $7,527,513.91 Judgment.

Thereafter, pursuant to its obligation under the Appeal Bond, St. Paul paid the Clarks' judgment and the interest thereon, totaling $7,527,513.91.

On December 4, 2002, the Clarks filed a Satisfaction of Bond and Surety in the Litigation, stating that the judgment and interest thereon had been satisfied as to St. Paul. A copy of the Satisfaction of Bond and Surety is attached as ***Exhibit 8*** and incorporated herein by reference.

### VI.  St. Paul's Efforts to Obtain Indemnity from the Defendants.

Since it furnished the Appeal Bond, St. Paul has communicated with Defendants on multiple occasions, orally and in writing, to obtain the promised indemnity. Those efforts have not been successful. *See, e.g.*, Correspondence from Counsel for Defendants, attached collectively as ***Exhibit 9*** and incorporated herein by reference. To date, not one of the Defendants has indemnified St. Paul in any respect. *See* Affidavit of Diane Schumaker, ¶8, attached hereto as ***Exhibit 10*** and incorporated herein by reference.

### VII. St. Paul Draws Down on Security's $2,433,000.00 Letter of Credit.

Of the $7,527,513.91 which it paid pursuant to its obligation under the Appeal Bond, St. Paul has obtained $2,433,000.00 (15% of the $16,220,000 bond) in indemnity to date. It did this by drawing down on the letter of credit provided by Security in connection with the posting of the Appeal Bond. See ***Exhibit 10***, Affidavit of Diane Schumaker, ¶8.

### VIII. Defendants' Liability to St. Paul.

St. Paul now has filed this suit to recover losses it has suffered to date as a result of issuing the Appeal Bond. St. Paul is entitled to full and complete indemnity from the Defendants in accordance with the unambiguous language of the Indemnity Agreements. There is no dispute that St. Paul has incurred losses by reason of having furnished the Appeal Bond, that the Defendants are obligated to provide indemnity for these losses, or regarding each Defendant's respective share of the obligation.

St. Paul seeks judgment at this time only for those losses it has incurred in discharging its bond obligation to date by paying the $7,527,513.91 final judgment in the Georgia state court litigation.[4/] Under the unambiguous language of the Indemnity Agreements, the Defendants in the aggregate are liable for 81.6% of the judgment amount of $7,527,513.91, or $6,142,451.35.[5/] By drawing down on the Security Life letter of credit, St. Paul has already received an amount that, when added to the Defendants' aggregate liability, could result in St. Paul recovering more than the amount

---

[4/] St. Paul reserves the right to seek at a later time from the Defendants herein reimbursement of any and all other losses it has incurred or will incur a result of issuing the Appeal Bond, including, but not limited to, losses arising from attorneys' fees, expenses, and uncollectable judgments.

[5/] Allianz, the Security reinsurer that is not a party to this case, is responsible for 3.4%, with the result that the Defendants and Allianz are collectively responsible for 85%.

7

St. Paul paid in satisfaction of the state court judgment. Therefore, for purposes of this motion, in order to avoid the possibility of any excess recovery, St. Paul seeks a judgment from each of the Defendants that has been proportionally reduced to reflect the funds St. Paul received when it drew down on the letter of credit. The judgment amount sought from each Defendant is reflected in the Exhibit 11. The formula used by St. Paul is set forth in the Affidavit of Diane Schumaker, ***Exhibit 10***, at ¶9.

## ARGUMENT

### I.  Legal Standard.

Summary judgment is appropriate where there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *USAA Casualty Insurance Co. v. Mummert*, 213 F. Supp. 2d 538, 540 (D. Md. 2002).

In contract cases, on summary judgment, it is the Court that determines whether a contract is unambiguous. *Bollech v. Charles County, Maryland*, 166 F. Supp. 2d 443, 455 (D. Md. 2001). *See* C. Wright and A. Miller, 10B Federal Practice and Procedure, §2730.1 ("[W]hether an ambiguity exists is a question of law that may be resolved summarily by the Court.") If the Court determines that a contract is unambiguous on a dispositive issue, it may interpret the contract as a matter of law and grant summary judgment because there is no genuine issue as to the facts. *Bollech*, 166 F. Supp. 2d at 455 (citing *World-Wide Rights Ltd. v. Combe Inc*., 955 F.2d 242, 245 (4th Cir. 1992). "In the absence of . . . a minimal showing [of facts to show that factual issues exist requiring a trial], a party moving for summary judgment should not be required to undergo the considerable expense of preparing for and participating in a trial." *Chesapeake Fiber Packaging Corp. v. Sebro Packaging Corp*., 143 B.R. 360 (D. Md. 1992).

### II. Applicable Principles of Contract Interpretation.

It is a general principle of contract interpretation that where the terms of an agreement are unambiguous, the court will enforce the terms of the agreement consistent with their plain meaning. *See Russack v. Weinstein*, 291 A.D.2d 439, 441, 737 N.Y.S.2d 638, 640 (App. Div. 2002) (stating that interpretation of the terms of a clear and unambiguous contract is a matter of law for the court; words should be given their plain meaning); *Chicago Title Ins. Co. v. Lumbermen's Mut. Casualty Co.*, 120 Md. App. 538, 707 A.2d 913 (1998) (affirming trial court's entry of summary judgment in favor of surety based on unambiguous terms of release of principal, and stating that interpretation of unambiguous contract terms presents question of law for the court); *Levison v. Weintraub*, 215 N.J. Super. 273, 521 A.2d 909 (1987) (stating that where the terms of a contract are clear and unambiguous, there is no room for interpretation or construction and court must enforce terms as written).

This principle is specifically applicable to indemnity agreements. *See, e.g.*, *Wald v. Marine Midland Business Loans, Inc.*, 270 A.D.2d 73, 704 N.Y.S.2d 564 (App. Div. 2000) (holding that interpretation of unambiguous indemnity agreement was question of law for the court); *Andre Construction Assocs, Inc. v. Catel, Inc.*, 293 N.J. Super. 452, 455, 681 A.2d 121, 123 (1996) (stating that where indemnity agreement clearly and unambiguously sets forth parties' obligations, it should be summarily enforced); *United States Fidelity and Guaranty Co. v. Green*, 64 Misc. 2d 1, 4, 314 N.Y.S. 2d 426, 430 (1969) (stating that where intention of parties can be derived from the unambiguous language of the indemnity agreement, a trial is not necessary to determine its legal effect). *See also, e.g., Nobel Insurance Co. v. Hudson Iron Works, Inc.*, 51 F. Supp. 2d 408, 414 (S.D. N.Y. 1999) (granting partial summary judgment in favor of surety as to

co-surety's liability to surety under terms of unambiguous indemnity agreement and co-surety agreement); *Henthorne v. Legacy Healthcare, Inc*., 764 N.E.2d 751, 756 (Ind. App. 2002) (stating that if words of indemnity agreement are clear and unambiguous, they are to be interpreted in accordance with their plain meaning); *Hartford Fire Ins. Co. v. Cheever Development Corp*., 289 A.D.2d 292, 734 N.Y.S.2d 598 (App. Div. 2001) (holding that surety was entitled as a matter of law to recover attorneys' fees from principal under unambiguous terms of indemnity agreement); *Herson v. New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 792, 667 N.E.2d 907, 917 (1996) (stating that parties' rights and obligations under indemnity provision of unambiguous contract are to be determined from contract language itself, not from extrinsic evidence of its meaning or parties' unexpressed intent); *Nabholz Construction Corp. v. Graham*, 319 Ark. 396, 400, 892 S.W.2d 456, 459 (1995) (stating that if there is no ambiguity in language of indemnity contract, there is no need to resort to rules of construction); *Heritage Cablevision v. New Albany Electric Power System*, 646 So.2d 1305, 1313 (Miss. 1994) (holding that where contractual indemnity clause was unambiguous, court would not go beyond language of contract to determine parties' intent); *Safeco Insurance Co. v. Gaubert*, 829 S.W.2d 274, 281 (Texas 1992) (stating that when indemnity contract is unambiguous, court must determine rights and liabilities of parties by giving legal effect to contract as written); *Higgins v. Kleronomos*, 121 Ill. App. 3d 316, 319, 459 N.E.2d 1048, 1051 (1984) (stating that indemnity contract is construed like any other contract; when no ambiguity exists court is bound to give effect to parties' intention determined solely from language used); *Kirkpatrick & Assocs, Inc. v. Wickes Corp*., 53 N.C. App.

306, 308, 280 S.E.2d 632, 634 (1981) (stating that where indemnity contract language is clear and unambiguous, court must interpret contract as written).

### III.     The Plaintiff is Entitled to Summary Judgment.

Based upon the above principles of contract interpretation, St. Paul is entitled to summary judgment at this stage in the proceeding as to each Defendant's current obligation to indemnify St. Paul in connection with losses it has incurred to date in paying the $7,527,513.91 judgment. The Indemnity Agreements signed by Defendants plainly, unconditionally, and unequivocally state that each Defendant will "indemnify [St. Paul] and hold [St. Paul] harmless in respect to [Defendant's] respective proportion[] of any and all loss, damages, claims, costs, expenses and attorney's fees which [St. Paul] may incur by reason of [St. Paul] having furnished the [Appeal Bond]." The Indemnity Agreements further state, unconditionally and unequivocally, that each Defendant agrees that it "shall immediately pay [St. Paul], upon [St. Paul's] demand, the amount of any claim that [St. Paul] may receive under and by reason of [St. Paul's] having issued the [Appeal Bond]. . . ." Indemnity Agreements, *Exhibit 2*.

Defendants broadly and unconditionally agreed to indemnify St. Paul in connection with any loss or expense incurred by St. Paul as a result of furnishing the Appeal Bond. If Defendants had wished to reduce their risk and narrow the scope of their obligation to indemnify St. Paul, Defendants, as sophisticated corporations in the business of insuring risks, knew exactly how to do so. If they had intended that their obligations to St. Paul would be conditional or qualified, they would have included such language in the Indemnity Agreements. Having chosen not to do so, they must now perform their obligations as plainly set forth in the Agreements.

11

All of the conditions for the performance of such obligations have been met. On July 5, 2001, judgment was entered against St. Paul, by reason of St. Paul's issuing the Appeal Bond. That judgment was affirmed by the Court of Appeals, and the Georgia Supreme Court denied St. Paul's Petition for Certiorari seeking review of that judgment. On remand, on November 11, 2002, the trial court entered judgment in the amount of $7,481,950.53, plus interest of $1,339.07 per day until the judgment was paid, as well as costs. A writ of fi. fa. was issued against St. Paul for the full amount of the judgment, and was recorded for execution.

As a result of the Court's judgment against St. Paul, the Court of Appeals' affirmance of the judgment, the Supreme Court's denial of certiorari, and the issuance of the fi. fa., St. Paul was legally obligated to make payment to the Plaintiffs in the amount of $7,527,513.91. Thus, consistent with the language of the Indemnity Agreements, St. Paul incurred a "loss . . . [of $7,527,513.91, as well as] costs, expenses and attorney's fees . . . by reason of [St. Paul] having furnished the [Appeal Bond]."

Defendants now seek to avoid their unconditional obligation to indemnify St. Paul with respect to the losses it has incurred to date in connection with the Appeal Bond. Fourteen Defendants[6] have jointly filed an Answer to Amended Complaint, contending, among other things, that St. Paul's claim for indemnification is "premature," because

---

[6] American United Life Insurance Company, First Allmerica Financial Life Insurance Company, Connecticut General Life Insurance Company, Combined Insurance Company of America, Crown Life Insurance Company, The Equitable Life Assurance Society of the United States, Manufacturers Life Insurance Company, Phoenix Life Insurance Company (formerly known as Phoenix Home Life Mutual Insurance Company), Sun Life Assurance Company of Canada, Swiss Re Life & Health America, Inc. (as successor to The Mercantile & General Reinsurance Company Limited and as successor to Swiss Re Life Company America, sued as Swiss Re Life Company of America), Swiss Re America Holding Corporation, Unum Life Insurance Company of America, General & Cologne Life Re of America (formerly known as Cologne Life Reinsurance Company), and Canada Life Insurance Company of America.

12

Security, the principal on the Appeal Bond, has appealed the judgment entered against St. Paul and Security Life.[7] Answer to Amended Complaint, at ¶¶ 52-55. These Defendants further contend that if Security prevails on any portion of its pending appeal, St. Paul's claim for indemnification should be "reduced commensurately." *Id*. Defendants also suggest, *inter alia*, that "[i]nsofar as the supersedeas bond may have been extinguished when the judgment in this matter was reversed during the appellate process . . . Defendants have no duty to indemnify St. Paul." *Id*. at ¶58.

Defendants' efforts to avoid their clear and unconditional obligations to St. Paul are unjustified and wholly unsupported in law or fact.[8] The Indemnity Agreements signed by Defendants are explicit and unconditional. They provide that Defendants will indemnify St. Paul, in the amount of their respective share "of any and all loss, damages, claims, costs, expenses and attorney's fees which [St. Paul] may incur by reason of [St. Paul] having furnished the [Appeal Bond]." They contain absolutely no provision conditioning Defendants' obligation to indemnify St. Paul upon the correctness of the Georgia courts' refusal to discharge St. Paul as surety in the litigation, or the completion or outcome of an ongoing appeal by Security.

---

[7] Security's pending appeal concerns its contention that the trial court erred in calculating the amount of interest due on the judgment in favor of the Plaintiffs in the Litigation. After Security filed its appeal, the Clarks moved to dismiss the appeal as moot or, alternatively, to substitute St. Paul as appellee because they had been paid by St. Paul the full amount of the judgment against St. Paul and Security. Although under what St. Paul contends is the proper interpretation of Georgia law St. Paul had no interest in Security's appeal, the Court of Appeals, without prior notice to St. Paul, entered an order granting the motion to substitute St. Paul as appellee. A copy of the Order is attached as ***Exhibit 12*** and incorporated herein by reference. St. Paul's motion for reconsideration of that order was denied. St. Paul has appealed that decision to the Georgia Supreme Court; the appeal is pending.

[8] Indeed, Defendants implicitly acknowledge their obligation to St. Paul in an otherwise meritless Motion to Stay these proceedings, in which they argue, albeit incorrectly, that "any reduction in the judgment as a result of Security Life's pending appeal will *reduce the obligation* of the Moving Defendants herein." Motion to Stay at p. 9.

13

In *Western Surety Co. v. Medsolutions, Inc.*, No. 3:01-CV-2248-P, 2003 WL 251433 (W.D. Texas, February 3, 2003), the court granted the surety's summary judgment motion as to its breach of contract claim against indemnitors who failed to reimburse the surety after it paid a judgment against them as defendants in underlying litigation. The indemnitors had promised to indemnify the surety against "every claim, demand, liability, cost, charge, suit, judgment and expense which [surety] may pay or incur in consequence of having executed [the supersedeas bond]" in the appeal in the underlying litigation. 2003 WL 251433 at *2. The indemnitors argued that they should receive a credit toward their obligation based upon the fact that the surety had received from the judgment creditors, and held without claim of ownership, stock certificates issued by one of the defendants. *Id*. at *3. The indemnitors maintained that the value of the stock certificates should be counted against any "loss" incurred by the surety. *Id*. The court rejected the indemnitors' argument, noting that "Defendants have presented no authority in support of their novel theory of avoidance, not one case where a court required an obligee to credit against an obligor's debt the value of property not assigned to the obligee or held as collateral." *Id*. at *7. The court held:

> Finding the Indemnitors' obligations, as expressed in . . . the Indemnity Agreement, to be unambiguous, the Court enforces this obligation according to its terms. If Plaintiff "[paid] or incur[red]" any "claim, demand, liability, cost, charge, suit, judgment and expense . . .in consequence of having executed [the supersedeas bond]" then Defendants are obligated to indemnify Plaintiff for the same . . . . Because Plaintiff "paid" a "judgment," Defendants are obligated to "indemnify and save [Plaintiff] harmless . . . ." Insofar as Defendants have failed to make such payment, the Court finds them to be in breach of their obligations under the Indemnity Agreement.

*Id*. at *5.

In *Andre Construction Assocs., Inc. v. Catel, Inc*., 293 N.J. Super. 452, 681 A.2d 121 (1996), the surety, in issuing a performance and payment bond, required the principal and indemnitors to sign an agreement to

> indemnify and save the [surety] harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee . . . expense, suit, order [,] judgment and adjudication whatsoever, and any and all liability therefor, sustained or incurred by the [surety] by reason of having executed or procured the execution of said bonds or obligations . . . .

681 A.2d at 122.  When the surety sought reimbursement for attorneys' fees incurred in defending claims against the bond, the principal and indemnitors refused to provide such reimbursement, contending that the matter was subject to mandatory fee arbitration under a rule which provided for arbitration of disputes for payment of legal services.  *Id*.  The court, however, rejected the indemnitors' argument, and entered summary judgment in favor of the surety as to the indemnitors' liability to reimburse the attorneys' fees, noting that the indemnification clause was clear and unambiguous, and contained no provision relating to mandatory fee arbitration.  *Id*. at 123-25.

In *Hanover Insurance Co. v. Smith*, 182 Ill. App. 3d 793, 538 N.E.2d 710 (1989), the court construed a similarly worded indemnity agreement, and concluded that a surety on an appeal bond was entitled to indemnity pursuant to the indemnity agreement, <u>even though the appeal bond was determined to be null and void</u>.  In *Hanover*, the indemnitor agreed as follows:

> In consideration of the execution of the bond herein applied for I hereby agree . . . to reimburse the Hanover Insurance Company for all loss, costs, attorney's fees and other expenses which said Company may incur or sustain in consequence of the execution of said bond.

538 N.E.2d at 712.

15

The indemnitor argued that because the appeal bond was void, the surety was not entitled to reimbursement of any fees and costs arising out of the execution of the bond, and therefore the indemnity agreement had no effect. *Id*. The Court disagreed, noting that "clearly the expenses incurred by Hanover were 'sustained in consequence of the execution of [the] said bond.'" *Id*.

The cases cited above illustrate the creative, but unavailing, efforts by indemnitors to impose after-the-fact conditions and exceptions upon their liability to a surety for indemnity, and thus avoid their clear obligations under unambiguous indemnity agreements. Defendants seek to do the same here.

Nowhere, however, do the Indemnity Agreements in this case provide for any of the preconditions or exceptions to liability asserted by Defendants in this action. On the contrary, Defendants agreed, without condition or exception, to indemnify St. Paul with regard to their agreed share of "any and all loss, damages, claims, costs, expenses and attorney's fees which [St. Paul] may incur by reason of [St. Paul] having furnished the [Appeal Bond]."

St. Paul has incurred a loss as a result of furnishing and discharging its obligations under the Appeal Bond. As such, St. Paul is entitled to indemnity pursuant to the plain language of the Indemnity Agreements.

## CONCLUSION

For the reasons set forth above, St. Paul Fire and Marine Insurance Company requests that the Court enter partial summary judgment in its favor and against each Defendant in the amount of that Defendant's proportionate share as set forth on ***Exhibit 11***.

Respectfully submitted,

_____/s/_____
Paul F. Strain, Federal Bar No. 01255
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400


_____/s/_____
James A. Dunbar, Federal Bar No. 007392
Katherine D. Bainbridge
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland  21285-5517
(410) 494-6200

Attorneys for St. Paul Fire and Marine
Insurance Company