IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY | * |
| Plaintiff, | * |
| v. | * |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, et al. | *   Civil Action No.: WDQ-02-3123 |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

## ST. PAUL'S OPPOSITION TO MOTION FOR STAY OF PROCEEDINGS

St. Paul Fire and Marine Insurance Company ("St. Paul"), Plaintiff, by its undersigned attorneys, opposes the Motion for Stay of Proceedings filed by certain Defendants[1] in this matter.

## INTRODUCTION

The Defendants' Motion for a Stay of Proceedings is a good example of the lengths to which sophisticated parties will go to delay or evade their unambiguous written obligations. It also is without legal or factual merit. Defendants have identified no precedent that would support a stay in this breach of contract case. They also have identified no reason for this Court to delay the prompt and early disposition of this case.

---

[1] These Defendants include American United Life Insurance Company, First Allmerica Financial Life Insurance Company, Connecticut General Life Insurance Company, General and Cologne Life Re of America (formerly known as Cologne Life Reinsurance Company), Combined Insurance Company of America, Crown Life Insurance Company, The Equitable Life Assurance Society of the United States, Manufacturers Life Insurance Company, Phoenix Life Insurance Company (formerly known as Phoenix Home Life Mutual Insurance Company), Sun Life Assurance Company of Canada, Swiss Re Life & Health America, Inc. (as successor to The Mercantile & General Reinsurance Company Limited and as successor to Swiss Re Life Company America, sued as Swiss Re Life Company of America), Unum Life Insurance Company of America, and Canada Life Insurance Company of America. All other Defendants have joined in the motion.

No facts are in dispute and the parties' disagreement is about the meaning of their contracts. In fact, the case is ripe for summary disposition, and St. Paul has already filed a motion for partial summary judgment.

This case is an action by St. Paul to enforce unambiguous indemnity agreements with the Defendants. St. Paul, as surety, agreed to furnish an appeal bond in a case in Georgia state court. As a result of furnishing the appeal bond, St. Paul has paid a judgment in Georgia, in the amount of $7,527,513.91. St. Paul also has incurred hundreds of thousands of dollars in attorneys' fees and costs as a result of having furnished the bond.

In consideration of St. Paul's agreement to furnish the appeal bond, the Defendants in this case -- who include some of the largest and most sophisticated insurance companies in the world -- agreed unconditionally, in writing, to indemnify St. Paul against "any and all loss, damages, claims, costs, expenses and attorneys' fees which [St. Paul] may incur by reason of [St. Paul] having furnished" the appeal bond. To date, despite the fact that St. Paul has incurred nearly $8 million in "loss, damages, claims, costs, expenses and attorneys' fees" by reason of having furnished the appeal bond, none of the Defendants has paid St. Paul a penny in indemnity.

Now the Defendants are simply seeking to delay their payment obligations. They have asked this Court to stay this case for an indefinite and open-ended period -- until appellate proceedings in the Georgia state court case have ended. So far those appellate proceedings have ground on for nearly seven years, and the end is nowhere in sight. The Defendants are not parties to the Georgia proceedings and the contract rights between St. Paul and the Defendants are not being adjudicated in these proceedings.

This Court should deny the Defendants' motion to stay. The Defendants' only substantive argument – that the outcome of the Georgia appellate proceedings will somehow affect the merits of this case – is simply wrong, under both the case law and the unambiguous terms of the indemnity agreements that each of the defendants signed. The Georgia proceedings are irrelevant to St. Paul's indemnity rights against the Defendants. Moreover, the Defendants' argument for a stay is really a defense on the merits. That purported defense is ripe for summary judgment and can be adjudicated right now.

Furthermore, "District Courts ordinarily have a strict duty to exercise the jurisdiction that is conferred on them by Congress." *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (citations omitted). The Defendants have presented no legal authority that would justify a departure from this principle. All of the reported cases on which they rely are solely declaratory judgment actions. In such cases a District Court has broad discretion to enter a stay. This case has a declaratory judgment count, but it is principally a breach of contract action. None of the cases relied upon by the Defendants endorses the grant of a stay in a breach of contract case.

Finally, the open-ended stay that Defendants are proposing would be grossly unfair to St. Paul. St. Paul has done just what it promised it would do. It furnished an appeal bond, and when judgment and a writ of execution were entered against St. Paul in late 2002, it paid the judgment. As a result of furnishing the appeal bond, St. Paul has sustained losses and attorneys' fees of nearly $8 million. The Defendants, for their part, have not done what they promised to do. They have failed to indemnify St. Paul against the losses it has sustained and continues to sustain by reason of having furnished the

appeal bond. There is no justification for subjecting St. Paul to continuing financial prejudice when this case is ripe for decision.

## FACTS [2/]

In 1995, Gordon and Clarice Clark ("the Clarks") sued Security Life Insurance Company of America ("Security") in the Georgia state court located in Early County, Georgia. After a trial, on August 6, 1996, the trial court entered judgment in the amount of $14,476,694.18 in favor of the Clarks against Security.

Security wished to appeal the judgment, but under Georgia law it needed to post an appeal bond of $16,220,000 ("the Appeal Bond") to avoid execution on the judgment while the appeal was pending. It asked St. Paul to issue the Appeal Bond.

Before agreeing to furnish the bond, St. Paul demanded and received substantial collateral and indemnity obligations from both Security <u>and</u> the Defendants in the case. Specifically, Security entered into a Agreement of Indemnity with St. Paul, and posted a letter of credit in favor of St. Paul in the amount of $2,433,000. The amount of the letter of credit was 15% of the amount of the required appeal bond.

St. Paul required additional assurance that it would be fully indemnified with regard to the remaining 85% of the amount required for the Appeal Bond. Defendants, who were then Security's reinsurers, agreed to provide such assurance. In or about November 1996, Defendants (together with Allianz, a reinsurer that is not a party to this action) entered into separate identical indemnity agreements with St. Paul. Pursuant to those agreements, Defendants and Allianz severally agreed to indemnify St. Paul, in

---

[2/] The documents and affidavits supporting the facts set forth in this Opposition are attached to St. Paul's pending motion for partial summary judgment.

specific percentages totaling 85% of the potential losses to which St. Paul was exposed as a result of issuing the Appeal Bond. Each indemnity agreement also contained a maximum dollar amount that the particular Defendant who executed the Agreement would be required to pay.

Each Indemnity Agreement provided, unconditionally and unequivocally, that each Defendant would, *inter alia,*

> indemnify [St. Paul] and hold [St. Paul] harmless in respect of [Defendant's] respective proportion[] of any and all loss, damages, claims, costs, expenses and attorney's fees which [St. Paul] may incur by reason of [St. Paul] having furnished the [Appeal Bond] and [Defendant] further agree[s] that [Defendant] shall immediately pay [St. Paul], upon [St. Paul's] demand, the amount of any claim that [St. Paul] may receive under and by reason of [St. Paul's] having issued the [Appeal Bond]. . . .

In consideration of the Indemnity Agreements, on or about December 2, 1996, St. Paul, as surety, and Security, as principal, filed the Appeal Bond in the amount of $16,220.000.00.

The appellate proceedings that followed have been complex and protracted. On or about December 2, 1997, the Georgia Court of Appeals reversed the judgment of the trial court. Thereafter, the Georgia Supreme Court granted certiorari, and in a series of decisions, the case was reversed and remanded by the appellate courts several times.[3]

Upon remand to the trial court in 2001, Security and St. Paul filed motions to discharge St. Paul as surety in connection with the appeal. In substance, St. Paul contended that the original trial judgment had been reversed and that therefore, under the

---

[3] A detailed procedural history of the litigation is set forth in St. Paul's Amended Complaint for Declaratory and Other Relief. *See also St. Paul Fire & Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 566 S.E.2d 2 (Ga. Ct. App. 2002); *Security Life Ins. Co. v. Clark*, 249 Ga. App. 547 S.E.2d 691 (Ga. Ct. App. 2001); *Security Life Ins. Co. v. Clark*, 271 Ga. 44, 535 S.E.2d 234 (Ga. 2000); *Security Life Ins. Co. v. Clark*, 239 Ga. App. 690, 521 S.E.2d 434 (Ga. Ct. App. 1999); *Clark v. Security Life Ins. Co.*, 270 Ga. 165, 509 S.E.2d 602 (Ga. 1998); *Security Life Ins. Co v. Clark*, 229 Ga. App. 593, 494 S.E.2d 388 (Ga. Ct. App. 1997).

terms of the Appeal Bond, it had been discharged of its obligations as surety. The trial court rejected St. Paul's motion. On appeal, the Court of Appeals affirmed the trial court's rulings. *St. Paul Fire & Marine Insurance Co. v. Clark*, 255 Ga. App. 14, 566 S.E.2d 2, 13 (Ga. App. Ct. 2002). St. Paul thereafter filed a Petition for Certiorari to the Georgia Supreme Court, which was denied on September 6, 2002.

On remand, on November 11, 2002, the trial court ordered a new trial on the issue of attorneys' fees and punitive damages, and entered judgment in favor of the Clarks, and against St. Paul and Security, in the amount of $7,481,950.53, which included $4,073,000.00 in judgment principal, plus interest. The court also awarded the Clarks additional interest of $1,339.07 per day on the judgment principal until the judgment was paid, as well as costs.

On November 13, 2002, the Clarks, obtained a writ of fieri facias – that is, a writ of execution -- against Security Life and St. Paul for the full amount of the judgment.[4/] Thereafter, pursuant to its obligation under the Appeal Bond, St. Paul paid the Clarks' judgment and the interest thereon, totaling $7,527,513.91.

Since it furnished the Appeal Bond, St. Paul has communicated with the Defendants on multiple occasions, orally and in writing, to obtain the promised indemnity. Those efforts have not been successful.

St. Paul now has filed this suit to recover losses it has suffered to date as a result of issuing the Appeal Bond. St. Paul is entitled to full and complete indemnity from the Defendants in accordance with the unambiguous language of the Indemnity Agreements.

---

[4/] Under the language of the Indemnity Agreements, the issuance of the writ of execution gave rise to an immediate obligation on Defendants' part to indemnity St. Paul. Under those agreements, the duty to indemnify arises when St. Paul receives a "claim." A writ authorizing the Clarks to execute on St. Paul's property is plainly a "claim."

There is no dispute that St. Paul has incurred losses by reason of having furnished the Appeal Bond; St. Paul's payment of the judgment, by itself, caused it to incur a loss of more than $7.5 million.

## ARGUMENT

### I. The Motion for a Stay of Proceedings Should Be Denied Because the Merits of This Case Will Not Be Affected by the Ongoing Georgia Proceedings.

The Defendants promised unambiguously, in writing, that they would indemnify St. Paul against "any and all loss, damages, claims, costs, expenses and attorneys fees" that St. Paul incurred "by reason of . . . having furnished" the Appeal Bond. That undertaking to indemnify St. Paul is not subject to any conditions or qualifications. Specifically, it is not contingent upon the outcome of the Georgia litigation, the exhaustion of all appellate remedies in Georgia, or the correctness or incorrectness of any decisions of the Georgia courts.

There is no question that St. Paul has incurred "loss, damages, claims, costs, expenses and attorneys' fees" by reason of having furnished the Appeal Bond. Among other losses and expenses, St. Paul paid a judgment entered against it, in its capacity as surety, by the Georgia trial court. St. Paul would not have been exposed to that judgment except for having furnished the Appeal Bond. Before it issued the Appeal Bond at the request of Security Life, St. Paul was not a party to the Georgia case and had no involvement in the case.

In short, based on undisputed facts, this case is ripe for summary judgment today. For that reason, St. Paul has filed a motion for partial summary judgment.

In order to delay being held to their obligations, the Defendants have filed their stay motion. The only basis asserted in support of the motion is that the litigation in the

Georgia courts might somehow affect the outcome in this case. Defendants contend, incorrectly, that, "[r]eversal of any portion of the [Georgia state court judgment against Security] will reduce the potential obligation that defendants may have to St. Paul under the indemnity agreements" (Defendants' Memorandum at 7), and that St. Paul may have "overpaid" when it "volunteered" to pay a "questionable judgment." (Defendants' Memorandum at 6).[5]

That argument is incorrect. Under the clear language of the Indemnity Agreements and the overwhelming weight of the case law, St. Paul is entitled to full indemnity for the amounts it has paid, regardless of the outcome of Security's appeal in Georgia. Thus, there is no reason to stay this case until the Georgia appellate proceedings have concluded.

The Defendants' Indemnity Agreements require the Defendants to indemnify St. Paul against "any and all losses," that it sustains "by reason of" having furnished the Appeal Bond.[6] They do not provide that the amount that may be recovered from the

---

[5] Defendants' argument, in addition to being legally and factually wrong for the reasons set forth below, is really an argument about the merits that can be addressed now by way of a summary judgment motion. The argument turns on this Court's interpretation of the Indemnity Agreements. All of the facts that are necessary for this Court to decide whether the Defendants may be entitled to the reduction in liability depending on the outcome of the Georgia appeal are presently before the Court and can be decided now on summary judgment. In addition, Defendants' argument, if it had any merit, which it does not, goes only to the amount of any judgment that may be entered against the Defendants, but does not affect their liability. Certainly, St. Paul is entitled to proceed with respect to establishing liability.

[6] It is well established that where the terms of an indemnity agreement are unambiguous, the court should enforce the terms of the agreement consistent with their plain meaning. *See, e.g., Wald v. Marine Midland Bus. Loans, Inc.*, 270 A.D.2d 73, 704 N.Y.S.2d 564, 566 (N.Y. App. Div. 2000) (holding that interpretation of unambiguous indemnity agreement was question of law for the court); *Andre Constr. Assoc.'s, Inc. v. Catel, Inc.*, 293 N.J. Super. 452, 681 A.2d 121, 123 (N.J. Super. Ct. Law Div. 1996) (stating that where indemnity agreement clearly and unambiguously sets forth parties' obligations, it should be summarily enforced) (citations omitted); *Kirkpatrick and Assoc. v. Wickes Corp.*, 53 N.C.App. 306, 280 S.E.2d 632, 634 (N.C. Ct. App. 1981) (where indemnity contract language is clear and unambiguous, court must interpret contract as written) (citations omitted); *United States Fid. and Guar. Co. v. Green*, 64 Misc.2d 1, 314 N.Y.S.2d 426, 430 (N.Y. Sup. Ct. 1969) (stating that where intention of parties can be derived from the unambiguous language of the indemnity agreement, a trial is not necessary to determine its legal effect) (citations omitted). *See also, e.g., Nobel Ins. Co. v. Hudson Iron Works, Inc.*, 51 F. Supp. 2d 408, 414 (S.D.N.Y. 1999) (granting partial summary judgment in favor of surety as to co-surety's liability to surety

*(Footnote continued on next page)*

Defendants is contingent upon the precise amount of any final judgment against Security approved by the Georgia courts. They do not require St. Paul to pursue every conceivable avenue of appellate review -- especially after a judgment has been entered against St. Paul and plaintiffs have obtained a writ of execution authorizing seizure of St. Paul's assets. Rather, the Indemnity Agreements require the Defendants to pay "any and all" amounts expended by St. Paul "by reason of" furnishing the Bond.[7/]

Thus, under the language of the Indemnity Agreements, the Defendants' liability to St. Paul is straightforward. St. Paul furnished an Appeal Bond. As a result of furnishing the Bond, and after many years of appeals, a judgment in excess of $7 million was entered against St. Paul, as well as a writ of execution. St. Paul paid the judgment -- undisputedly "by reason of" St. Paul's having furnished the Bond. Therefore, the Defendants must indemnify it.

In many cases indemnitors have attempted to escape their liability under written indemnity agreements by criticizing a surety's decision to resolve a lawsuit or claim, and by characterizing the surety's payments as "voluntary" -- just as the Defendants are attempting to do in this case. The courts have uniformly rejected such attempts by indemnitors, even where the surety was under far less compulsion than St. Paul faced in this case. Instead, the courts have enforced the plain language of the indemnity

---

*(Footnote continued from previous page)*
under terms of unambiguous indemnity agreement and co-surety agreement); *Hartford Fire Ins. Co. v. Cheever Dev. Corp.*, 289 A.D.2d 292, 734 N.Y.S.2d 598, 600 (N.Y. App. Div. 2001) (holding that surety was entitled as a matter of law to recover attorneys' fees from principal under unambiguous terms of indemnity agreement) (citations omitted).

[7/] It is telling that not once in their 11-page memorandum or their three-page motion do the Defendants acknowledge or even mention the language of the Indemnity Agreements that are the basis of St. Paul's claim. That is because under the language of the Indemnity Agreements, what happens in the Georgia litigation does not affect St. Paul's unambiguous contractual rights.

agreements and required the indemnitors to pay the surety in accordance with that language.

In the leading case of *Fidelity and Deposit Co. of Maryland v. Bristol Steel and Ironworks*, 722 F. 2d 1160 (4th Cir. 1983), for example, the entity that was trying to evade its indemnity responsibility contended that the sureties had improperly paid a claim against the bond before the principal's liability had been definitively established. On that basis, the indemnitor argued that it should be relieved of its responsibility to indemnify the sureties. *Id.* at 1163.

The Fourth Circuit forcefully rejected that argument. It held that where there is an express indemnity agreement between the surety and the principal and/or indemnitors, the surety is entitled to recover in accordance with the letter of the agreement. The Court acknowledged that at common law, a surety had a right to indemnification only when it paid a debt for which its principal was actually liable, <u>but this doctrine did not apply where there was a written indemnification agreement</u>. *Id.* The Fourth Circuit further held under the indemnity agreement that was before it, the only payments that the sureties might not be able to recover from the indemnitor were those made through "fraud or lack of good faith." *Id.* Because in that case (as in this one) there was no fraud or bad faith on the part of the sureties, the Fourth Circuit upheld the grant of summary judgment against the indemnitor.

Numerous other courts have reached similar results. In *United States Fidelity & Guaranty Co. v. Feibus*, 15 F. Supp. 2d. 579, 583 (M.D. Pa. 1998), for example, the court held that under the language of the indemnity agreement, the surety was entitled to indemnity from its principals, even if the surety had paid claims without giving notice to

the principals and even if some payments were excessive. In *Commercial Insurance Co. of Newark v. Pacific-Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir. 1977), the court held that the indemnitor's argument that the surety suffered no actual liability under its bond and was therefore a "volunteer" provided no defense to the indemnification obligation created under the express language of the surety agreement. In *Employers Insurance of Wausau v. Abel Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990), the court held that the surety was entitled to reimbursement for payments made in good faith, regardless of whether any liability actually existed.

    These cases show that the outcome of the Georgia appellate proceedings is irrelevant to St. Paul's indemnity rights against the Defendants. Regardless of whether the Georgia appellate courts modify the amount of the judgment entered by the Georgia trial court, St. Paul is and will remain entitled to indemnification against all of the payments it made "by reason of" having issued the Appeal Bond, including the full amount of the judgment it paid. Thus, there is no reason to delay this case until Security's Georgia appeal has concluded.

    The Defendants have identified no case law that supports their argument that St. Paul's damage entitlement could be affected by the outcome of the Georgia case. They have identified no legal authority that would justify a departure from the plain language of the Indemnity Agreements they signed. They have pointed to no law that would permit them to evade their payment obligations to St. Paul on the basis of the assertion that St. Paul was a "volunteer" or that it was required to pursue further appeals in Georgia. On the contrary, as the Fourth Circuit held in *Bristol Steel*, the common law

"volunteer" defense has no application to cases like this one in which there are written Indemnity Agreements. *Bristol Steel*, 722 F.2d at 1163.

Moreover, despite Defendants' mischaracterization of St. Paul's payment as "voluntary" -- which is irrelevant under *Bristol Steel* -- the undisputed *facts* in this case show that St. Paul's payment was not "voluntary." There is no factual dispute that a Georgia state court of competent jurisdiction entered a judgment in excess of $7 million against St. Paul and issued a writ of fieri facias – that is, an order permitting the Clarks to execute on St. Paul's assets. Payment of a judgment under such circumstances could hardly be characterized as "voluntary." It does, however, fit squarely within the language of the Indemnity Agreements – it was money that St. Paul expended "by reason of" issuing the Appeal Bond.

Because they can find no support in the language of the Indemnity Agreements or in the case law, Defendants have mischaracterized a decision of the Georgia Court of Appeals. Defendants argue that "the Georgia Court of Appeals has concluded that the right of St. Paul to obtain indemnity from its indemnitors on the supersedeas bond is conditioned upon a finding that the amount paid by St. Paul was actually due and payable." *See* Defendants' Memorandum at 7.

That argument is a gross mischaracterization of the decision in the Georgia Court of Appeals. The Defendants in this case are not even parties to the Georgia appeal. The nature and extent of St. Paul's indemnity rights against the Defendants are not and have never been before the Georgia courts. The Indemnity Agreements on which St. Paul's claims in this case are based are not in the record in that proceeding. The Georgia Court of Appeals' decision does not say a word about the relationship between St. Paul and the

Defendants in this case, which is entirely contractual. No court in Georgia or anywhere else has addressed or interpreted the Indemnity Agreements between St. Paul and the Defendants.

In short, nothing that can possibly happen in the Georgia litigation can change the facts that St. Paul has incurred substantial losses and expenses by reason of having furnished the Appeal Bond, and the Defendants promised to indemnify St. Paul against those losses and expenses. Those facts mean that this case is ripe to be decided, and a stay would be inappropriate.

### II. The Declaratory Judgment Cases Relied Upon By the Defendants Do Not Support a Stay in This Breach of Contract Case.

This is essentially a breach of contract case. The Defendants have a contract obligation to indemnify St. Paul; they have failed to do so; and they owe St. Paul the resulting damages. Count II, the breach of contract count, is the one on which St. Paul has moved for summary judgment.

None of the cases relied upon by the Defendants in their motion for a stay (*see* Defendants' Memorandum at 8-9) is a breach of contract case. All of them are solely declaratory judgment actions, where it is well established that a District Court has broad discretion to enter a stay in favor of state proceedings that might resolve the parties' disputes.

A District Court does not have that broad discretion in a matter such as this one, which involves a breach of contract claim. Defendants have not cited a single case in which an appeals court upheld a District Court's decision to stay a claim for breach of contract. Rather, this case is controlled by the well-established principle that "District Courts ordinarily have a strict duty to exercise the jurisdiction that is conferred upon

them by Congress." *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823-25 (4th Cir. 2000) (vacating District Court decision to abstain in a case that included a breach of contract claim).

Even if the declaratory judgment cases relied upon the Defendant were relevant, it would not be appropriate to stay this case. As the Fourth Circuit has stated on repeated occasions, the key factors that District Court should consider determining whether to stay a declaratory judgment action include:

> (1) whether the state has a strong interest in having the issues decided in its courts;
> (2) whether the state courts could resolve the issues more efficiently than the federal courts;
> (3) whether the presence of 'overlapping issues of fact or law' might create unnecessarily 'entanglement' between the state and federal courts; and
> (4) whether the federal action is mere 'procedural fencing' in the sense that the action is merely the product of forum shopping.

*See, e.g., United Capital Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-494 (4th Cir. 1998) (citations omitted).

Even if this case were subject to the broad discretion afforded to stay cases that involve only requests for declaratory judgments (and it is not), the four factors identified by the Fourth Circuit counsel strongly *against* a stay in this case.

(1) <u>State interest</u>: This is a simple breach of contract action; no state has articulated any particular interest in resolving the straightforward contractual issues that are presented.[8]

---

[8] The Indemnity Agreements were delivered from Defendants' counsel's office in New York to St. Paul's office in New Jersey. The only exception is the Transamerica Indemnity Agreement, which was sent from Transamerica's office in North Carolina to St. Paul in New Jersey. Thus, under Maryland's choice of law principles, the law of New York, New Jersey, or North Carolina governs. *See Ericksson v. Cartan Travel Bureau*, 109 F. Supp. 315, 317 (D. Md. 1953) (concluding that, under Maryland choice of law rule, contract between Maryland travelers and Illinois travel agency was effective in Illinois where agency, after

*(Footnote continued on next page)*

(2) <u>Efficiency</u>: There is no state court that could resolve the issues more efficiently than this Court. The contract issues in this case are not pending before any state court. The Defendants are not parties in the state case. The reason that St. Paul brought this case in this jurisdiction is that St. Paul is able to obtain jurisdiction over the vast majority of the Defendants in this Court, and it is the office location of the responsible parties at St. Paul. The existence of a single court in which nearly every indemnitor can be joined is a strong efficiency argument for proceeding with the case expeditiously in this forum. On the other hand, if this case were stayed, St. Paul might well be subject to declaratory judgment suits by the Defendants in a variety of other forums, which would lead to multiple, duplicative litigation.

(3) <u>Overlapping issues</u>: As demonstrated above, there are no overlapping issues of fact or law between this case and any pending state case. In fact, there is no pending state case that involves these parties, and this is the only case in which the Indemnity Agreements between St. Paul and the Defendants are an issue.

(4) <u>Forum shopping</u>: There has been no procedural fencing or forum shopping by St. Paul. It is simply trying to adjudicate its contract rights in the most efficient forum possible, and has selected this forum, in which the Defendants are amenable to jurisdiction.

Therefore, even if this case were solely a declaratory judgment action and therefore subject to a possible stay (which it is not), the appropriate exercise of this

---

*(Footnote continued from previous page)*
confirming reservations, sent coupon books from Chicago to Baltimore, after receiving travelers' payment mailed from Baltimore to Chicago); *Sun Ins. Office, Ltd., of London v. Mallick*, 160 Md. 71, 153 A. 35, 40 (1931) (stating that where insurance policy was executed by insurer in New York, but delivered in Maryland through insurer's Maryland broker to the insured, it was a Maryland contract).

Court's discretion would be to deny a stay and allow this case to proceed to a prompt conclusion.

### III. St. Paul Would Be Prejudiced by the Grant of the Requested Stay.

St. Paul has spent nearly $8 million by reason of having issued the Appeal Bond in this case. So far, it has not received any indemnity from the Defendants with respect to those expenditures.[2/] Now, Defendants, who so far have attempted to evade their obligations under their Indemnity Agreements, are seeking even more delay. They want this Court to put the case on hold until Security's pending appeal is over -- even though, as established above, the outcome of the appeal is irrelevant to this case.

Such a result would be unfair to St. Paul. So far, the post-trial and appellate proceedings in Georgia have extended from August 6, 1996, when the initial trial court judgment was entered, until today, a period of more than 6½ years. It is completely unclear when the Georgia appellate courts will issue final (completely irrelevant) decisions on the matters that are now pending before them.

It would be grossly unfair to subject St. Paul to such open-ended delay, when it has fulfilled its obligations to the Defendants by providing an Appeal Bond and has fulfilled its obligation under the Bond by paying when judgment was entered against it. There is simply no reason for St. Paul to be required to continue to suffer losses of millions of dollars for an indefinite period of time, waiting for decisions that have no relevance to its indemnity rights against Defendants.

---

[2/] As St. Paul has stated in its Motion for Summary Judgment, St. Paul did recover a little over $2.4 million as a result of drawing down on a letter of credit posted as collateral by Security with respect to its indemnity obligations.

## CONCLUSION

For the reasons stated, this Court should deny the Defendants' Motion for a Stay of Proceedings.

Respectfully submitted,

*Paul F. Strain* /s/

Paul F. Strain, Federal Bar No. 01255
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

/s/

James A. Dunbar, Federal Bar No. 007392
Katherine D. Bainbridge
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517
(410) 494-6200

*Attorneys for St. Paul Fire and Marine Insurance Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of **April**, 2003, a copy of the foregoing **ST. PAUL'S OPPOSITION TO MOTION FOR STAY OF PROCEEDINGS** was mailed first class, postage prepaid, to:

>Gregg L. Bernstein
>Martin, Snyder & Bernstein, P.A.
>Redwood Tower, Suite 2000
>217 East Redwood Street
>Baltimore, Maryland 21202
>  and

Reid Evers, Esquire
Vice President and Associate General Counsel
Transamerica Occidental Life Ins. Co.
Post Office Box 2101
Los Angeles, California 90051-0101
*Attorneys for Defendant Transamerica Occidental Life Insurance Company*

Bryan D. Bolton, Esquire
Funk & Bolton
100 Light Street, Suite 1000
Baltimore, Maryland 21202
    and
Elizabeth J. Bondurant, Esquire
Elizabeth A. Beskin, Esquire
Carter & Ansley
1180 West Peachtree Street, Suite 2300
Atlanta, Georgia 30309
*Attorney for Defendant Principal Mutual Life Insurance Company*

J. Snowden Stanley, Jr., Esquire
Semmes, Bowen & Semmes
250 West Pratt Street, 16th Floor
Baltimore, Maryland 21201
    and
Lawrence S. Greengrass, Esquire
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
*Attorneys for Defendants American United Life Insurance Company; Transamerica Occidental Life Insurance Company; First Allmerica Financial Life Insurance Company; Connecticut General Life Insurance Company; Combined Insurance Company of America; Crown Life Insurance Company; The Equitable Life Assurance Society of the United States; Manufacturers Life Insurance Company; Phoenix Home Life Mutual Insurance Company; Sun Life Assurance Company of Canada; Swiss Re Life & Health America, Inc.; Swiss Re America Holding Corporation; Unum Life Insurance Company of America; General & Cologne Life Re of America; and Canada Life Insurance Company of America*

James A. Dunbar, Federal Bar No. 007392