IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, et al. | * | Civil Action No.: WDQ-02-3123 |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S OPPOSITION TO TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

St. Paul Fire and Marine Insurance Company ("St. Paul"), Plaintiff, by its undersigned attorneys, opposes Transamerica Occidental Life Insurance Company's ("Transamerica") Motion to Dismiss for Failure to State a Claim.

### INTRODUCTION

This is an action by St. Paul to enforce its rights under a written, signed indemnity agreement between it and Transamerica (as well as identical indemnity agreements with the other Defendants). In that agreement, Transamerica promised to indemnify St. Paul against 12.1125% of all losses and expenses incurred by St. Paul by reason of having furnished an appeal bond in a Georgia case. St. Paul has incurred losses and expenses of nearly $8 million by reason of having furnished the appeal bond, but Transamerica has refused to indemnify it.

In its motion to dismiss, Transamerica contends that its liability is not controlled by the express language of the *indemnity agreement* it signed, which requires it to indemnify St. Paul for *all* expenses it incurred as a result of furnishing the bond. Rather,

it contends that under the language of the *appeal bond*, St. Paul had no liability after the initial trial court judgment was reversed by the Georgia Court of Appeals in 1997, so neither should Transamerica.

Both aspects of Transamerica's argument are flatly wrong, under very well settled case law.

(1)   Virtually every court to consider the issue has held that when there is an express written indemnity agreement between a surety and an indemnitor, the language of that agreement defines the surety's rights to recover indemnification, *regardless of whether the surety faced actual liability under the bond. See, e.g., Fidelity and Deposit Co. of Maryland v. Bristol Steel and Ironworks*, 722 F.2d 1160 (4th Cir. 1983) (enforcing surety's right to recover indemnification of all payments it made in the absence of fraud or bad faith, regardless of the fact that liability under the bond was not definitively established); *Commercial Ins. Co. of. Newark, N.J. v. Pacific-Peru Constr. Corp.* 558 F.2d 948 (9th Cir. 1977) (surety was entitled to recover from indemnitor under written indemnity agreement for payment made to satisfy judgment, despite indemnitor's contention that the judgment was invalid; surety's indemnity rights turned on language of indemnity agreement, not validity of judgment). Indeed, in at least one reported case, Transamerica itself has successfully relied on the doctrine that a surety's indemnity rights depend on the language of the indemnity agreement, not the existence or non-existence of liability under the bond. *See Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 977 (D. Or. 1989). Thus, because Transamerica's indemnity agreement requires it to indemnify St. Paul against *all* loss and expenses St. Paul incurred by reason of St. Paul's furnishing the appeal bond, and St. Paul has incurred such loss and expenses, Transamerica is liable to indemnify St. Paul in this case.

(2)   It has been definitively established that Transamerica's contention that St. Paul's liability under the bond was discharged in 1997 is false. *St. Paul Fire and Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 566 S.E. 2d 2, 13 (2002) (both judgment and bond have been continuously in effect since 1996). Thus, even if, contrary to law, the language of the bond controlled Transamerica's liability to St. Paul, Transamerica still would be liable in this case.

Accordingly, the Court should deny the motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. Further, in considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.*, at n.4, (quoting *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (citations omitted)).

## FACTS

The following well-pleaded facts are set out in the First Amended Complaint in this case.

On August 6, 1996, the Superior Court for Early County, Georgia entered a judgment in the amount of $14,476,694.18 in favor of Gordon and Clarice Clark and against Security Life Insurance Company of America ("Security"). *Amended Complaint*,

¶¶ *21, 22.* Security sought and obtained an Appeal Bond in the amount of $16,220,000 from St. Paul. *Amended Complaint, ¶ 25.* In connection with St. Paul's issuance of the Appeal Bond, the Defendants in this case, including Transamerica, entered into separate Indemnity Agreements with St. Paul. *Amended Complaint, ¶ 21.* In those Indemnity Agreements, the Defendants, including Transamerica, agreed to indemnify St. Paul against "all loss, damages, claims, costs, expenses and attorneys' fees" incurred by St. Paul "by reason of . . . having furnished" the Appeal Bond. *Complaint, ¶ 21 and Ex. A.* In its Indemnity Agreement, Transamerica specifically agreed that it would indemnify St. Paul in an amount equal to 12.1125% of St. Paul's losses and expenses incurred by reason of having issued the Appeal Bond, up to a limit of $1,964,648.00. *Amended Complaint, ¶ 24 and Ex. A.*

St. Paul filed the Appeal Bond on or about December 2, 1996. *Amended Complaint, ¶ 25.* The Appeal Bond stated that "if the judgment is overturned, vacated, reversed or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed or modified; otherwise to be and remain in full force and effect." *Amended Complaint, ¶ 25 and Ex. B.* On December 2, 1997, the Georgia Court of Appeals reversed the trial court's judgment, and over the ensuing six years there have been numerous additional appellate decisions. *Amended Complaint, ¶¶ 26-30.* Ultimately, those decisions resulted in a determination by the Georgia Court of Appeals that the original August 6, 1996 judgment entered by the trial court has, in part, remained continuously in effect since it was first entered. *See St. Paul Fire & Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 566 S.E.2d 2, 13 (Ga. Ct. App. 2002).

On remand to the trial court in 2001, St. Paul filed a motion to be discharged as surety on the Appeal Bond. *Amended Complaint,* ¶ *31*. The trial court denied that motion, holding that the original judgment had remained in full force and effect from its entry on August 6, 1996. It held, therefore, that the Appeal Bond also remained in full force and effect. *Amended Complaint,* ¶ *32*. As noted previously, the Georgia Court of Appeals agreed with this decision and affirmed the trial court. The Georgia Supreme Court denied St. Paul's petition for *certiorari* on this issue. *Amended Complaint,* ¶¶ *33, 34*.

Thereafter, in its capacity as surety, St. Paul paid the judgment in the litigation in the total amount of $7,527,513.91. *Amended Complaint,* ¶ *35*. St. Paul has also incurred attorneys' fees in excess of $283,000 in connection with the issuance of the Appeal Bond. *Amended Complaint,* ¶ *37*. To date, Transamerica and the other Defendants have declined to indemnify St. Paul as required by their indemnity agreements. *Complaint,* ¶ *39 and Ex. C.*

## ARGUMENT

Transamerica promised, unambiguously, in writing, that it would indemnify St. Paul against "any and all loss, damages, claims, costs, expenses and attorneys fees" that St. Paul incurred "by reason of . . . having furnished" the Appeal Bond. That undertaking to indemnify St. Paul is not subject to any conditions or qualifications. Specifically, it is not contingent upon the outcome of the Georgia litigation or the correctness or incorrectness of any decisions of the Georgia courts.

There is no question that St. Paul has incurred "loss, damages, claims, costs, expenses and attorneys' fees" by reason of having furnished the Appeal Bond. Among other losses and expenses, St. Paul paid a judgment entered against it, in its capacity as

surety, by the Georgia trial court. St. Paul would not have been exposed to that judgment except for having furnished the Appeal Bond. Before it issued the Appeal Bond, St. Paul was not a party to the Georgia case and had no involvement in the case.

St. Paul plainly has stated a claim for which relief can be granted in its Complaint, based on the foregoing facts. Count II of the Complaint is a claim for breach of contract. St. Paul has identified (a) an express written contract between itself and Transamerica requiring Transamerica to indemnify St. Paul against any loss or expense it incurred by reason of issuing the Appeal Bond; (b) performance of the contract by St. Paul; (c) a breach of the contract by Transamerica in the form of Transamerica's failure to pay its indemnity obligations; and (d) resulting damages to St. Paul. Under applicable law, which is either North Carolina or New Jersey law, as well as the law of virtually every other jurisdiction, these are the only elements required to state a claim for breach of contract.[1] *See, e.g., John Hancock Mut. Life Ins. Co. v. King*, 1997 WL 373512 at *3 (D.N.J. March 26, 1997) (elements of claim for breach of contract include existence of contract, breach, and resulting damages); *Public Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 219 (D.N.J. 1989) (elements of breach of contract action under New Jersey law are contract, breach, damages, and performance by plaintiff) (citations omitted); *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838, 843 (N.C. Ct. App.

---

[1] The Indemnity Agreement between St. Paul and Transamerica was sent from Transamerica's office in North Carolina to St. Paul's office in New Jersey. Thus, under Maryland's choice of law principles, the law of either North Carolina or New Jersey governs. *See Ericksson v. Cartan Travel Bureau*, 109 F. Supp. 315, 317 (D. Md. 1953) (concluding that, under Maryland choice of law rules, contract between Maryland travelers and Illinois travel agency was effective in Illinois where agency, after confirming reservations, sent coupon books from Chicago to Baltimore, after receiving travelers' payment mailed from Baltimore to Chicago); *Sun Ins. Office, Ltd., of London v. Mallick*, 160 Md. 71, 153 A. 35, 40 (1931) (stating that where insurance policy was executed by insurer in New York, but delivered in Maryland through insurer's Maryland broker to the insured, it was a Maryland contract).

2000) (elements of claim for breach of contract are existence of valid contract and breach) (citations omitted).[2/]

Transamerica apparently does not contend that the elements of a claim for breach of contract have been pleaded insufficiently. Instead, Transamerica argues that under the terms of the *Appeal Bond*, to which Transamerica is not a party, St. Paul should have been discharged from all liability, and therefore Transamerica should have been discharged under the Indemnity Agreement that it signed. Transamerica argues that the Appeal Bond contains language providing that St. Paul would be discharged under certain circumstances:

> If the judgment is overturned, vacated, reversed or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is so overturned, vacated, reversed or modified; otherwise to be and remain in full force and effect.

Transamerica further argues that because the Georgia Court of Appeals, in its decision of December 2, 1997, reversed the judgment of the trial court, then the Appeal Bond should have become void at that time.

Transamerica's argument is wrong as a matter of law, because it ignores the language of the Indemnity Agreement between Transamerica and St. Paul. In that agreement, Transamerica undertook to indemnify St. Paul for "any and all" losses and expenses sustained by St. Paul "by reason of" having furnished the Appeal Bond. The Indemnity Agreement does not provide that Transamerica can escape its indemnity obligation if an intermediate appellate court reverses a part of the trial court judgment. In

---

[2/] Count I, which seeks a declaratory judgment, also states a claim upon which relief can be granted. It identifies a contract between St. Paul and Transamerica; identifies the uncertainty that has come about as a result of Transamerica's failure to honor its contract obligation; and seeks a declaration as to the parties' responsibilities for past and future losses and expenses. Once again, no more is required.

fact, the Indemnity Agreement does not contain any exception to Transamerica's indemnity obligation; so long as St. Paul pays out funds "by reason of" having issued the Bond, Transamerica is required to indemnify it.

The Amended Complaint pleads, and the facts will prove, that St. Paul incurred the losses and expenses for which it is seeking indemnity from Transamerica by reason of having furnished the Appeal Bond. *See, e.g., Amended Complaint ¶ 37.* Thus, the well-pleaded allegations of the Complaint, including the language of the Indemnity Agreement, state a claim for breach of contract.

In addition, Transamerica's reliance upon the language of the Appeal Bond, rather than the unambiguous language of the Indemnity Agreement, is directly contrary to the case law. For example, in *United States Fidelity & Guaranty Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa.1998), the indemnitors, like Transamerica in this case, were attempting to avoid liability under indemnity agreements they had executed. The court described the indemnitors' argument as follows:

> [D]efendants argue that the terms of the *bonds* are controlling and not the language of the [indemnity agreement]. Defendants contend that Plaintiff breached the bonds by making payments it was not obligated to make and therefore any money paid by Plaintiff was as a "volunteer." . . . Under this argument, there would have to be *actual liability* under the bonds before Plaintiff could make any payments to an obligee.

*Id.* (emphasis in original).

The District Court rejected the indemnitors' argument, similar to Transamerica's argument in this case, that the surety had made the payments for which it was seeking indemnity as a "volunteer". The District Court noted that the parties had signed an express indemnity agreement. That agreement did not provide that the surety would be entitled to indemnity only if there was "actual liability under the bonds;" rather, it gave

the surety far broader indemnity rights. The Court held that the "volunteer" defense might apply if the plaintiff was seeking to enforce implied indemnity rights under the common law, but not where there was an express indemnity agreement. *Id.* at 583-84 (citing *Fidelity and Deposit Co. of Maryland v. Bristol Steel and Iron Works*, 722 F.2d 1160, 1163 (4th Cir. 1983)).

The District Court also pointed out that many courts (including the Fourth Circuit) have rejected arguments by indemnitors that their liability depends on the language of the bond rather than their indemnity agreement. *See Feibus*, 15 F. Supp. 2d at 583-84 (citing *Bristol Steel*, 722 F.2d at 1163); *Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, 558 F.2d 948, 952 (9th Cir. 1977) (argument that surety suffered no actual liability under its bond and was therefore a "volunteer" provided no defense to indemnification under the express language of the surety agreement); *United States for the Use of Int'l Brotherhood of Elec. Workers v. United Pacific Ins. Co.*, 697 F. Supp. 378, 381 (D. Idaho 1988) (indemnity agreement, not bond, controls indemnitors' liability); *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990) (surety is entitled to reimbursement for payments made in good faith, regardless of whether any liability actually existed).

In fact, Transamerica itself has, in at least one previous case, successfully argued that the language of the indemnity agreement controls the indemnitor's liability, *not* the language of the bond. In *Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 977, Transamerica was one of two sureties who sued an indemnitor under a written indemnity agreement. The court held, in the sureties' favor, that the sureties' indemnity rights depended on the indemnity agreement, not the enforceability or validity of the bond. *Id.* at 976-77. "Any claim asserted against the surety, regardless if it is valid or outside the

scope of the bond triggers the obligation to indemnify the surety." *Id.* Transamerica's position in *Nizdil*, which is consistent with the overwhelming weight of authority, is diametrically opposed to the completely unsupported position it is taking in *this* case in which it is trying to evade its unambiguous liability.

The cases cited above establish that the express language of the Indemnity Agreement controls Transamerica's liability, not the language of the Appeal Bond. The Indemnity Agreement in this case does not contain language that permitted Transamerica to escape liability in the event the judgment was reversed. Rather, it requires Transamerica to indemnify St. Paul against any and all losses and expenses St. Paul incurred "by reason of" issuing the Appeal Bond. In this case, because St. Paul incurred loss and expenses by reason of issuing the Bond -- in fact, it had judgment and a writ of execution entered against it -- Transamerica owes it indemnity.

In addition to being wrong as a matter of law, Transamerica's argument is also wrong as a matter of indisputable fact. The decisions of the Georgia courts, as pleaded in the Amended Complaint and set forth in published opinions, affirmatively disprove Transamerica's factual premise that the Appeal Bond became void after the initial appellate decision in December 1997. Transamerica contends that St. Paul should have sought to be discharged as surety on the basis that the appellate reversal of the trial court judgment voided the Appeal Bond. St. Paul *did* file such a motion. *Amended Complaint*, ¶ *31*. The trial court denied that motion, holding that the judgment had remained in "full force and effect" continuously after its entry on August 6, 1996. *Amended Complaint* ¶ *32*.[3/] The text of the decision of the Georgia trial court, in July 2001, specifically states

---

[3/] Although Transamerica's argument is hard to follow, Transamerica may be arguing that St. Paul should have filed its motion for discharge earlier, shortly after December 2, 1997, rather than when it did. If that is

that "the final judgment on the jury's verdict on the plaintiff's fraud claim was affirmed by the Supreme Court" and that that "final judgment remains in full force and effect from the date of entry, August 6, 1996." *See Attachment 1* hereto, Modified Final Judgment on Remand from the Court of Appeals, Superior Court of Early County, State of Georgia, filed July 9, 2001, at p. 6.

This decision by the trial court was affirmed by the Georgia Court of Appeals. *Amended Complaint* ¶ 33. In its published opinion affirming the trial court on this issue, *St. Paul Fire & Marine Insurance Co. v. Clark*, the Georgia Court of Appeals stated:

> St. Paul contends the trial court erred because the appellate courts reversed the original judgment thereby causing the bond obligation to become void pursuant to the simple terms of the agreement. We disagree.
>
> * * *
>
> [T]he appellate courts did not reverse the verdict for fraud, which had been specifically incorporated by reference in the original judgment. Therefore, that part of the original judgment had not been eliminated by the appellate courts. The trial court entered the modified judgment by following the instructions and opinions of the appellate courts. Accordingly, the bond remained in full force and effect as to that portion of the original judgment. The trial court did not err.

255 Ga. App. 14, 566 S.E.2d 2, 13 (Ga. Ct. App. 2002). St. Paul filed a petition for *certiorari* to the Georgia Supreme Court seeking to challenge this holding, but that petition was denied. *Amended Complaint,* ¶ 33-34.

In other words, the factual premise of Transamerica's motion to dismiss – that St. Paul's obligation under the bond became void, and hence Transamerica's obligation to

---

Transamerica's argument, it is nonsense. First of all, St. Paul had no opportunity to file such a motion earlier that it did. The case never returned to the trial court on remand until 2001, and St. Paul filed its motion seeking discharge at that time. Second, there is no indication in the opinions of the Georgia courts, or anywhere else, that the result would have been any different if the motion had been filed earlier. On the contrary, the Georgia Court of Appeals clearly held that the original judgment has <u>always</u> and <u>continuously</u> been in effect since August 6, 1996. Thus, an earlier filing of St. Paul's motion for discharge would not have affected the result.

indemnify St. Paul ceased – is simply false. The Georgia courts have definitively spoken on this issue: the original trial court judgment has been continuously in effect, and the Appeal Bond <u>never</u> became void.

## CONCLUSION

Transamerica's motion to dismiss is frivolous. The Court should deny it.

Respectfully submitted,

*/s/ Paul F. Strain*

Paul F. Strain, Federal Bar No. 01255
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

*/s/*

James A. Dunbar, Federal Bar No. 007392
Katherine D. Bainbridge
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517
(410) 494-6200

Attorneys for St. Paul Fire and Marine Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this /4ᵗʰ day of **April**, 2003, a copy of the foregoing PLAINTIFF'S OPPOSITION TO TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM was mailed first class, postage prepaid, to:

> Gregg L. Bernstein
> Martin, Snyder & Bernstein, P.A.
> Redwood Tower, Suite 2000
> 217 East Redwood Street
> Baltimore, Maryland 21202
>     and
> Reid Evers, Esquire
> Vice President and Associate General Counsel
> Transamerica Occidental Life Ins. Co.
> Post Office Box 2101
> Los Angeles, California 90051-0101
>   *Attorneys for Defendant Transamerica Occidental Life*
>   *Insurance Company*
>
> Bryan D. Bolton, Esquire
> Funk & Bolton
> 100 Light Street, Suite 1000
> Baltimore, Maryland 21202
>     and
> Elizabeth J. Bondurant, Esquire
> Elizabeth A. Beskin, Esquire
> Carter & Ansley
> 1180 West Peachtree Street, Suite 2300
> Atlanta, Georgia 30309
>   *Attorney for Defendant Principal Mutual Life Insurance*
>   *Company*
>
> J. Snowden Stanley, Jr., Esquire
> Semmes, Bowen & Semmes
> 250 West Pratt Street, 16th Floor
> Baltimore, Maryland 21201
>     and

Lawrence S. Greengrass, Esquire
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
    *Attorneys for Defendants American United Life Insurance Company; Transamerica Occidental Life Insurance Company; First Allmerica Financial Life Insurance Company; Connecticut General Life Insurance Company; Combined Insurance Company of America; Crown Life Insurance Company; The Equitable Life Assurance Society of the United States; Manufacturers Life Insurance Company; Phoenix Home Life Mutual Insurance Company; Sun Life Assurance Company of Canada; Swiss Re Life & Health America, Inc.; Swiss Re America Holding Corporation; Unum Life Insurance Company of America; General & Cologne Life Re of America; and Canada Life Insurance Company of America*

                                    _____
                                    James A. Dunbar, Federal Bar No. 007392