IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE CO., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. WDQ-02-3123 |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT TRANSAMERICA OCCIDENTAL
LIFE INSURANCE COMPANY'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, Transamerica Occidental Life Insurance Company ("Transamerica"), by its undersigned counsel, submits this Reply Brief in support of its Motion to Dismiss the First Amended Complaint of Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") for failure to state a claim upon which relief can be granted.

**ARGUMENT**

St. Paul argues in opposition to Transamerica's Motion to Dismiss that, pursuant to the language of the indemnity agreement between the parties ("Indemnity Agreement"), Transamerica is liable to St. Paul for any and all losses to St. Paul "by reason of having furnished the [Supersedeas] Bond." Plaintiff's Opposition to Transamerica Occidental Life Insurance Company's Motion to Dismiss for Failure to State a Claim ("Plt. Opp.") at 7. Under St. Paul's analysis, simply agreeing to indemnify imposes liability on Transamerica once St. Paul made a payment, regardless whether the judgment underlying the bond in question ("Supersedeas Bond") has been reversed, thereby triggering the discharge provisions of the bond. Under this analysis, St. Paul ignores the clear and unambiguous language of the Supersedeas Bond at issue, which provides that, St. Paul's (and, as a

result, Transamerica's) obligation is discharged in the event that the trial court's judgment is "overturned, vacated, reversed or modified in any way by any court exercising appellate jurisdiction over [the] matter." Exhibit B to St. Paul's First Amended Complaint ("Exhibit B"). Plt. Opp. 7. St. Paul's response is that the language contained within the Indemnity Agreement, itself, is the only language to be properly considered in determining Transamerica's liability to St. Paul. Plt. Opp. 7-10.

St. Paul's argument misses the mark. Transamerica is not contending that liability under the Supersedeas Bond has not been "conclusively established." Therefore, Transamerica is not contending in its Motion to Dismiss that there is an issue of so-called "volunteer payments," an issue advanced by the defendants in the cases cited by St. Paul. See, e.g., Com'l Ins. Co. of Newark v. Pacific-Peru Constr. Corp., 558 F.2d 948 (9th Cir. 1977); United States Fidelity & Guaranty Co. v. Feibus, 15 F. Supp.2d 579 (M.D. Pa. 1998); Employer's Ins. of Wausau v. Able Green, Inc., 749 F. Supp. 1100 (S.D. Fla. 1990); Fireman's Fund Ins. Co. v. Nizdil, 709 F. Supp. 975 (D. Or. 1989); United States for use of I.B.E.W. v. United Pac. Ins. Co., 697 F. Supp. 378 (D. Idaho 1988). Instead, Transamerica is contending that it has no liability under the Indemnity Agreement. The terms of the Indemnity Agreement are clear that, Transamerica is obligated, along with the other indemnitors, to indemnify St. Paul in the event St. Paul is required to make payment pursuant to the terms of the Supersedeas Bond. What is equally clear, however, is that the Supersedeas Bond is "<u>discharged</u>" in the event that the judgment is vacated by "<u>any</u> court exercising appellate jurisdiction…." Exhibit B (emphasis added). Notwithstanding these explicit provisions of the Supersedeas Bond, St. Paul allowed the Supersedeas Bond to continue after the Court of Appeals of Georgia reversed and vacated the judgment, and later paid the eventual judgment entered by the trial court after later

appellate rulings changed the undertaking taken by St. Paul for which Transamerica had provided indemnification. By seeking to obtain indemnification from Transamerica for this changed undertaking, St. Paul is seeking to impose additional contractual terms under the Indemnity Agreement that Transamerica did not bargain for when it agreed to enter into the Indemnity Agreement.

Thus, Transamerica does not contend that an issue exists as to St. Paul's liability under the Supersedeas Bond, or that it made some payment it was not under an obligation to make; instead, Transamerica's motion should be granted because, applying the strict terms of the Indemnity Agreement, and the Supersedeas Bond incorporated therein, Transamerica's obligation under the Indemnity Agreement ended when the appellate court reversed the judgment on which the Supersedeas Bond is based.

In this regard, the cases relied on by St. Paul in its Opposition are irrelevant. For example, in United States Fidelity & Guaranty Co. v. Feibus, 15 F. Supp. 2d 579 (M.D. Pa. 1998) the defendants claimed that plaintiff breached the terms of the performance bonds by making payments plaintiff was not obligated to make. Feibus, 15 F.Supp. 2d at 583. As a result, according to defendants, the payments were made on a "voluntary" basis. See id.

The Court found defendants' argument unpersuasive. The Court interpreted both the language of the bond and the language of the underlying Master Surety Agreement ("MSA") in determining defendants' liability, and held that the language of the MSA did not require actual liability in order for the defendants to indemnify the plaintiff:

> the liability of [defendants] hereunder shall extend to and include all amounts paid by [plaintiff] in good faith under the belief that: (1) [plaintiff] was or might be liable therefore; (2) such payments were necessary or advisable to protect any of [plaintiff's] rights or to avoid

or lessen [plaintiff's] liability or alleged liability.

Feibus, 15 F. Supp. 2d at 582 (brackets in original) (emphasis supplied).  Instead, any payments made by the plaintiff under the Bond were consistent with the terms of the MSA because they were made in "good faith," regardless whether there remained any issue as to defendant's underlying liability.

The Feibus Court relied on the Fourth Circuit's decision in Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160 (4th Cir. 1983) in which the defendant contractor also argued that it was not obligated to indemnify plaintiff because actual liability under the bond had not been established.  See Bristol Steel, 722 F.2d at 1163.  The Court stated that, where a contract between the parties existed, implied indemnity principles did not apply.  See id.  Instead, the rights of the surety must be determined by the "letter" of the contract; actual liability need not be established.  See id.; see also Employer's Ins. of Wausau v. Able Green, Inc., 749 F. Supp. 1100, 1103 (S.D. Fla. 1990) (stating that "a surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed." (emphasis in original)).  In the instant case, the issue is not whether actual liability exists thereby requiring the surety to pay out under the bond, or even whether the surety acted in "good faith."  The issue is simply whether St. Paul seeks to impose additional contractual terms on Transamerica after the underlying judgment had been reversed.

In Com'l Ins. Co. of Newark v. Pacific-Peru Constr. Corp., 558 F.2d 948 (9th Cir. 1977), also cited by St. Paul, a Peruvian corporation, El Pacifico, agreed to act as surety for the defendant contractor on a construction project in Peru.  The plaintiff insurance company and El Pacifico entered into a contract of reinsurance, where plaintiff agreed to reimburse El Pacifico for any

liability incurred pursuant to the project. The contractor, in turn, agreed to indemnify the plaintiff. A dispute arose between the contractor and the project manager, and a Peruvian arbitrator found in favor of the project manager. The contractor refused to pay the amount ordered, and a Peruvian judge ordered El Pacifico to pay. El Pacifico's appeal as to this issue was denied, and El Pacifico elected not to pursue further appeals, despite provisions in Peru's rules of procedure that would have allowed it to do so. Instead, El Pacifico paid the judgment; plaintiff, in turn, reimbursed El Pacifico and sought indemnification from the defendant. The District Court granted summary judgment in favor of the plaintiff, and the contractor appealed. See Pacific-Peru Constr. Corp., 558 F.2d at 950-51.

On appeal, the defendant argued that, the Peruvian judgment was not valid and therefore, El Pacifico "suffered no 'actual liability' under its surety bond, but was merely a volunteer," and that, as a result, neither El Pacifico nor plaintiff was entitled to indemnification. Id. at 951. The defendant also argued that plaintiff did not act in "good faith" in paying El Pacifico by failing to raise certain defenses under the reinsurance agreement. Id. at 954. The Court first noted that, the foreign judgment was irrelevant to the issue of indemnification, and any invalidity of that judgment was not a defense. See id. at 952. As to indemnification, the Court stated that, "[t]he indemnification right, rather, turns on the <u>interpretation of the contracts signed between El Pacifico and Pacific-Peru</u>." Id. (emphasis added). The Court found that the language of the indemnity agreement between El Pacifico and Pacific-Peru "plainly embraces the payment which was actually made to discharge the obligation incurred under the Peruvian judgment." Id. at 953. The Court noted that, pursuant to this language, once El Pacifico's right to indemnification pursuant to the agreement was established, the plaintiff was entitled to recover as a third-party beneficiary of the

agreement.

Finally, in Northwestern National Insurance Co. v. Lutz, 71 F.3d 671, 673 (7th Cir. 1996), the Court determined the right to indemnification according to the indemnity agreement and the document creating the underlying obligation. In that case, the insurance company sought indemnification from Lutz for default on the purchase of three units of a partnership. The indemnity agreement at issue provided that Lutz would "'indemnify the Company and hold harmless against it all loss, liability, costs, claim, damages and expense, internal or external, of whatever kind and nature …, caused by a default under the promissory note(s) of [Lutz].'" Lutz, 71 F.3d at 677 (brackets and ellipses in original). The Court reviewed the promissory note, in addition to the indemnity agreement, and determined that the Company was entitled to indemnification for the value of one unit of the partnership, because the note had been amended after Lutz signed it. See id. at 677. The Court found that Lutz's liability pursuant to the indemnity agreement was limited to value of underlying note, and distinguished the indemnification language at issue from the language in United States for use of I.B.E.W. v. United Pac. Ins. Co., 697 F. Supp. 378 (D. Idaho 1988)[1] and Fireman's Fund Ins. Co. v. Nizdil, 709 F. Supp. 975 (D. Or. 1989).[2] See id. at 677-78.

---

[1] In United States for use of I.B.E.W. v. United Pac. Ins. Co., 697 F. Supp. 378 (D. Idaho 1988), United Pacific Insurance Company ("UPIC"), as third-party plaintiff, sought indemnification from the indemnitors for payment on two construction bonds. Indemnitors claimed by way of defense that, UPIC acted in bad faith in settling the claims for which remuneration was sought because liability pursuant to the bonds had not been established. The Court rejected this argument, finding that the language of the indemnity agreement required indemnity regardless of whether actual liability on the bonds had been established. See United Pac. Ins. Co., 697 F. Supp. at 381. The Court found no evidence of bad faith, and found that UPIC's settlement was reasonable pursuant to the broad terms of the indemnity agreement giving it the power to do so. See id.

[2] In Fireman's Fund Ins. Co. v. Nizdil, 709 F. Supp. 975 (D. Or. 1989), Nizdil executed an indemnity agreement with Fireman's Fund and Transamerica Insurance Company, causing them to post a Public Official Fidelity Bond as sureties. Payment on these bonds was demanded by

Here, St. Paul's right to indemnification pursuant to the Agreement has not been established. Interpretation of Transamerica's liability under the Indemnity Agreement includes an interpretation of the terms of the underlying Supersedeas Bond. It is a well-settled principle of contract law that separate writings which are part of the same transaction can be interpreted together:

> in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument even though they do not in terms refer to each other. The rule applies even where the parties to the instruments are not the same, so long as the writings form part of a single transaction and are designed to effectuate the same purpose.

Richard A. Lord, Williston on Contracts, § 30:26, at 239-243 (4th ed. 1990); see, e.g., Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 53 (2d Cir. 1993) (finding that Asset Purchase Agreement and Lease, which contained an indemnification provision, were part of intertwined transactions and must be construed together in determining indemnification pursuant to CERCLA liability); Dakota Gasification Co., v. Natural Gas Pipeline Co., 964 F.2d 732, 734-35 (8th Cir. 1992) (stating that agreements regarding pipelines obligations under gas purchase agreements should be construed together despite the fact that the parties to the several agreements were different); St. Paul Fire & Marine Insurance Co. v. Tennefos Constr. Co., 396 F.2d 623, 628 (8th Cir. 1968) (holding that surety could not avoid liability on contract bond to contractor for default of joint

---

Multnomah County after Nizdil stole funds from the estates of wards for whom he served as Guardian and Conservator. Plaintiffs paid pursuant to the bonds and sought indemnification from Nizdil. Nizdil sought to avoid liability by arguing that, plaintiffs overpaid the county's claims. The court stated that "any claim asserted against the surety, regardless if it is valid or outside the scope of the bond triggers the obligation to indemnify the surety." Nizdil, 709 F. Supp. at 976-77. The decision in Nizdil, however, did not involve the situation in the instant case in which St. Paul established additional terms under the Agreement.

venture partner because the bond and the joint venture agreement must be read together as they "represent successive steps which were taken to accomplish a single purpose."). Both federal and state courts in New Jersey and North Carolina have uniformly applied this principle. See, e.g., Van Orman v. American Ins. Co., 680 F.2d 301 (3d Cir. 1982); Gurney Industries, Inc. v. Perrin, 467 F.2d 588 (4th Cir. 1972); In re Resorts International, Inc., 199 B.R. 113 (Bankr. D.N.J. 1996); United Rubber, Cork, Linoleum and Plastic Worker of America v. Lee Rubber & Tire Corp., 269 F. Supp. 708 (D.N.J. 1967); Nester v. O'Donnell, 693 A.2d 1214 (N.J. Super. 1997); Keegan v. Estate of Keegan, 384 A.2d 913 (N.J. Super. 1978); General Electric Credit Corp. v. Castiglione, 360 A.2d 418 (N.J. Super. 1976); American Express Co. v. Rona Travel Svc., Inc., 187 A.2d 206 (N.J. Super. 1962); Yates v. Brown, 170 S.E.2d 477 (N.C. 1969); American Trust Co. v. Catawba Sales & Processing Co., 88 S.E.2d 233 (N.C. 1955); Carolina Place Joint Venture v. Flamers Charburger, Inc., 551 S.E.2d 569 (N.C. App. 2001); Beau Rivage Plantation, Inc. v. Melex USA, Inc., 436 S.E.2d 152 (N.C. App. 1993); In the Matter of Sutton Investments, 266 S.E.2d 686 (N.C.App. 1980).

The Indemnity Agreement provides for indemnification for payments made by St. Paul under the Supersedeas Bond. The Supersedeas Bond specifically provides that its obligations are discharged once an appellate court vacates the judgment of the trial court. That judgment was vacated by the Court of Appeals of Georgia on December 2, 1997; thus, at that point, Transamerica's liability under the Indemnity Agreement was discharged.[3]

---

[3] St. Paul's argument that the original judgment "has always and continuously been in effect," notwithstanding the reversal by the Court of Appeals, again misses the mark. The decision of the appellate court on December 2, 1997 reversed the RICO judgment that had been entered by the trial court, thereby rendering the issues regarding the fraud judgment "moot." 255 Ga. App. 14, 566 S.E. 2d 217. It was only after the Georgia Supreme Court reversed the Court of Appeals with regard to the RICO claim, and in its opinion, suggested that the fraud claim was still viable, that the case was remanded to the lower court, which ultimately reimposed the judgment on the fraud claim. Id.

St. Paul argues that it did seek to be relieved from liability under the Supersedeas Bond, but its motion was rejected by the trial court. Plt. Opp. at 10-11. This argument fails for several reasons. First, St. Paul did not move to be discharged from the Supersedeas Bond until well after the Court of Appeals of Georgia reversed and vacated the original judgment, and there had been further appellate review back and forth in the Court of Appeals, the Supreme Court of Georgia, and ultimately the trial court. Second, there is nothing to indicate St. Paul would have been precluded from seeking discharge under the Bond once the appellate court reversed the judgment. Pursuant to section 15-1-3(6) of the Georgia Code, St. Paul could have sought such discharge from the trial court. Indeed, other trial courts have discharged supersedeas bonds when the trial court's judgment has been reversed by an appellate court even though the judgment could later be, in whole or in part, reinstated. See, e.g., Revlon, Inc. v. Carson Products, Co., 647 F.Supp. 905, 905-906 (S.D.N.Y. 1986); Water Technologies Corp. v. Calco, Ltd., 694 F.Supp. 1328, 1331 (N.D. Ill. 1988). Finally, the language of the Supersedeas Bond, itself, is clear as to the limits of liability – the Supersedeas Bond is discharged when the trial court's judgment is "overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over the matter," (Exhibit B) (emphasis added)), not until after all appellate review has been exhausted. What St. Paul did or did not do after the judgment was reversed is ultimately irrelevant to a determination of Transamerica's liability under the Indemnity Agreement.

As noted in Transamerica's Memorandum in Support of its Motion to Dismiss, the indemnitor (Transamerica) is relieved from liability when the surety (St. Paul) changes the

---

Regardless, at the time when the Court of Special Appeals issued its original Opinion, the entire judgment had been reversed, and Transamerica's obligations under the Supresedeas Bond were discharged.

undertaking by adding new terms to the Agreement. United States Fidelity & Guar. Co. v. Hathaway, 394 S.E.2d 764, 767 (W. Va. 1990) (citing General Ins. Co. v. Fleeger, 389 F.2d 159 (5th Cir. 1968); Hiern v. St. Paul-Mercury Indem. Co., 262 F.2d 526 (5th Cir. 1959); American Casualty Co. v. Idaho First Nat'l Bank, 328 F.2d 138 (9th Cir. 1964); Denton v. Fireman's Fund Indem. Co., 352 F.2d 95 (10th Cir. 1965); United Pac. Ins. Co. v. Johnson-Gillanders Co., 280 F. Supp. 90 (D.N.D. 1968); United States Fire Ins. Co. v. Johansen, 76 Cal. Rptr. 174 (Cal. Ct. App. 1969); Rosenbloom v. Feiler, 431 A.2d 102 (Md. 1981); New Amsterdam Casualty Co. v. Lundquist, 198 N.W.2d 543 (Minn. 1972); Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co., 714 S.W.2d 597 (Mo. Ct. App. 1986); Huck v. Gabriel Realty, 346 A.2d 628 (N.J. Super Ct. Law Div. 1975); and 41 Am. Jur. 2d Indemnity § 37 (1968 & Supp. 1990)). St. Paul's decision to provide a continuing commitment under the Bond after the reversal by the Court of Appeals of Georgia on December 12, 1997 constituted a material, additional undertaking that was not agreed to by Transamerica. Accordingly, Transamerica had no liability under this new term.

## CONCLUSION

For the foregoing reasons, Transamerica's Motion to Dismiss for Failure to State a Claim should be granted.

                                Respectfully submitted,

                                _____/s/_____
Gregg L. Bernstein (Fed. Bar No. 01340)
Martin, Snyder & Bernstein, P.A.
217 East Redwood Street, Suite 2000
Baltimore, Maryland 21202
Telephone:  (410) 547-7163
Facsimile:  (410) 547-1605


                                _____/s/_____
Reid A. Evers
Transamerica Occidental Life
Insurance Company
1150 South Olive Street
Los Angeles, CA 90015
Telephone:  (213) 742-3595
Facsimile:  (213) 763-9680

*Counsel for Defendant*
*Transamerica Occidental Life*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of May, 2003, copies of Occidental Life Insurance Company's Reply Brief in Support of its Motion to Dismiss, which was electronically filed in this case on May 12, 2003, were sent electronically or by first-class mail (pursuant to the Local Rules and the rules governing electronic filing) to the following:

Paul F. Strain, Esq.
Venable, Baetjer & Howard, LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201

James A. Dunbar, Esq.
Venable, Baetjer & Howard, LLP
210 Allegheny Avenue
Towson, MD 21285-5517
*Counsel for Plaintiff, St. Paul Fire and Marine Ins. Co.*

Bryan D. Bolton, Esq.
Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, MD 21201-3111

Elizabeth J. Bondurant, Esq.
Elizabeth A. Beskin, Esq.
Carter & Ansley
Suite 2300
Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, GA 30309
*Counsel for Defendant Principal Mutual Life Ins. Co.*

J. Snowden Stanley, Jr., Esq.
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street
Baltimore, MD 21201

Lawrence S. Greengrass, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
*Counsel for Defendants
American United Life Insurance Company, First Allmerica Financial Life Insurance Company, Connecticut General Life Insurance Company, Combined Insurance Company of America, Crown Life Insurance Company, the Equitable Life Assurance Society of the United States, Manufacturers Life Insurance Company, Phoenix Life Insurance Company, Sun Life Assurance Company of Canada, Swiss re Life & Health America, Inc., Swiss Re America Holding Corporation, Unum Life Insurance Company of America, General & Cologne Life Re of America, and Canada Life Insurance Company of America*

                                                   _____/s/_____
                                                   Gregg L. Bernstein