# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY

                          Plaintiff,

    v.

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY, et al.

                       Defendants.

|  |  |
|---|---|
| * | |
| * | |
| * | |
| * | |
| * | Civil Action No.:  WDQ-02-3123 |
| * | |
| * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PLAINTIFF ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
### REPLY BRIEF IN SUPPORT OF ITS
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

_____/s/_____
Paul F. Strain, Federal Bar No. 01255
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
Two Hopkins Plaza
Baltimore, Maryland  21201
Telephone:  (410) 244-7400
Fax No.:  (410) 244-7742

_____/s/_____
James A. Dunbar, Federal Bar No. 007392
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland  21285-5517
Telephone:  (410) 494-6200
Fax No.:  (410) 821-0147
*Attorneys for St. Paul Fire and Marine
Insurance Company*

# <u>Table of Contents</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

ARGUMENT ............................................................................................................... 3

I. DEFENDANTS HAVE FAILED TO IDENTIFY A DISPUTED ISSUE OF MATERIAL FACT
   THAT WOULD PRECLUDE THE ENTRY OF PARTIAL SUMMARY JUDGMENT IN
   FAVOR OF ST. PAUL ............................................................................................ 3

II. IF THE LAW OF GEORGIA GOVERNED THIS CASE, ST. PAUL STILL
    WOULD BE ENTITLED TO PARTIAL SUMMARY JUDGMENT, BUT
    THE LAW OF GEORGIA DOES NOT GOVERN ........................................................ 12

    A. EVEN IF GEORGIA LAW APPLIED, ST. PAUL WOULD BE ENTITLED
       TO PARTIAL SUMMARY JUDGMENT .................................................................. 12
    B. GEORGIA LAW DOES NOT GOVERN THIS DISPUTE ........................................... 17

III. BECAUSE THE LANGUAGE OF THE INDEMNITY AGREMENTS IS UNAMBIGUOUS,
     DEFENDANTS MAY NOT EVADE SUMMARY JUDGMENT BY ATTEMPTING TO
     IMPOSE UNWRITTEN CONDITIONS ON THEIR INDEMNITY OBLIGATIONS ............... 20

IV. THIS COURT SHOULD REJECT DEFENDANTS' DISCREDITED ARGUMENT THAT
    ST. PAUL'S RIGHT TO ENFORCE ITS UNAMBIGUOUS INDEMNITY AGREEMENTS
    DEPENDS UPON THE OUTCOME OF THE GEORGIA PROCEEDINGS ......................... 24

CONCLUSION ........................................................................................................... 27

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                            **<u>Page</u>**

<u>Ammerman v. Miller</u>, 488 F.2d 1285, 1293 (D.C. Cir. 1973).......................................... 19

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)............................................... 4

<u>Andre Construction Assoc., Inc., v. Cotell, Inc</u>., 681 A.2d 121, 123 (N.J. Super. Ct. 1996)
............................................................................................................................... 9

<u>Banque Nationale de Paris, S. A. v. Insurance Company of North America</u>, 896 F. Supp.
163 (S.D.N.Y. 1995) .................................................................................................. 6, 7

<u>Brendle's Stores, Inc. v. Otr</u>, 978 F.2d 150, 157-58 (4th Cir. 1992)………………………..4

<u>Cara's Notions, Inc. v. Hallmark Cards, Inc.</u>, 140 F.3d 566, 571-572 (4th Cir. 1998)
.................................................................................................... ….21, 22

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) .......................................................... 3

<u>Chemical Bank of New Jersey National Association v. Bailey</u>, 687 A.2d 316 (N.J. Super.
Ct. 1997).................................................................................................................... 9

<u>Commercial Ins. Co. of Newark v. Pacific-Peru Construction Corp.</u>, 558 F.2d 948, 952
(9th Cir. 1977).......................................................................................................... 23

<u>D.R. v. East Brunswick Board of Education</u>, 838 F. Supp. 184, 190 (D. N.J. 1993) ....... 22

<u>Davis v. Wells</u>, 104 U.S. 159 (1881) ........................................................................ 18, 19

<u>Fidelity & Casualty Company v. Finch</u>, 159 N.Y.S.2d 391, 396 (App. Div. 1957)........... 6

<u>Fidelity & Deposit Co. of Md. v. Bristol Steel and Iron Works, Inc.</u>, 722 F.2d 1160 (4th
Cir. 1983) ........................................................................................... 11, 12, 23

<u>Fidelity & Guaranty Insurance Company v. Keystone Contractors, Inc.</u>, 2002 WL
1870476, at *4 (E.D. Pa. 2002)..................................................................................... 11

<u>First Data POS, Inc. v. Willis</u>, 273 Ga. 792, 546 S.E.2d. 781, 794 (2001) ................ 12, 13

<u>Flagg Energy Development Corp. v. General Motors Corp.</u>, 223 Ga. App. 259, 477
S.E.2d. 402 (Ct. App. 1996)........................................................................................... 13

<u>Fox v. Washburn</u>, 264 Ga. 617, 618, 449 S.E.2d 513, 514 (1994) ................................... 23

Frontier Insurance Co. v. International, Inc., 124 F. Supp. 2d 1211, 1214 (N.D. Ala. 2000) ................................................................................................ 11

General Accident Ins. Co. of America v. Merritt-Meridian Construction Corp., 975 F. Supp. 511 (S.D.N.Y. 1997) ........................................................ 6, 8, 9

General Ins. Co. of America v. Capolino Construction Corp., 903 F. Supp. 623 (S.D.N.Y. 1995) ............................................................................................ 8

General Insurance Co. of America v. Merritt-Meridian Construction Corp., 1997 WL 187372 (S.D.N.Y. 1997) .......................................................... 7, 8

Golbar Properties, Inc. v. North American Mortgage Investors, 78 A.D.2d 504, 431 N.Y.S.2d 820, 822-23 (App. Div. 1980)……………………………………………..5

Grain Dealers Mutual Ins. Co. v. Van Buskirk, 241 Md. 58, 66, 215 A.2d 467 (1965)... 18

H.D. McLendon v. Hartford Accident & Indemnity Co., 119 Ga. App. 459, 167 S.E.2d. 725 (1969) ...................................................................................... 15, 16

Holocaust Victim Assets Litigation, 2003 WL 1868640, *2 (E.D.N.Y. 2003) ................ 22

Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) ................................. 3, 4

International Fidelity Ins. Co. v. Spadafina, 596 N.Y.S.2d 453, 454 (App. Div. 1993)…..8

International Fidelity Insurance Co. v. Jones, 682 A.2d 263 (N.J. Super. Ct. 1996)…9, 10

Lancaster v. Lancaster, 530 S.E.2d 82, 86 (N.C. Ct. App. 2000)..................................... 23

Lumbermen's Mutual Casualty Ins. Co. v. Darel Group USA, Inc., 2003 WL 1628830 (S.D.N.Y. 2003) ................................................................................ 7

M-Pax, Inc. v. Dependable Insurance Co., Inc., 176 Ga. App. 93, 335, S.E.2d. 591 (Ct. App. 1985) ............................................................................. 16, 17

Magnet Resources, Inc. v. Summitt MRI, Inc., 318 N.J. Super. 275, 723 A.2d 976, 987 (Super. Ct. App. Div. 1998)…………………………………………………………….5

Moreland Auto Stop, Inc. v. TSC Leasing Corp., 216 Ga. App. 438, 454 S.E.2d 626, 628 (Ct. App. 1995)……………………………………………………………………….5

National Surety Company v. Fulton, 183 N.Y.S. 237 (App. Div. 1920) ............................ 8

Polselli v. Nationwide Mut. Fire Insurance Co., 23 F.3d 747, 751 (3d Cir. 1994)........... 11

Reliance Ins. Co. v. Romine, 707 F. Supp. 550 (S.D. Ga. 1989) ............................... 13, 14

Sergeant Company v. Pickett, 285 Md. 186, 401 A.2d 651, 660 (1979)………………4, 5

Smith v. Childs, 112 N.C. App. 672, 437 S.E.2d 500, 507-8 (Ct. App. 1993)……………5

Temkin v. Frederick County Commissioners, 945 F.2d 716, 718 (4th Cir. 1991) ............ 3

The Rouse Co. v. Federal Ins. Co., 991 F. Supp. 460, 462 (D. Md. 1998)................. 17, 18

Transamerica Ins. Co. v. Avenell, 66 F.3d 715 (5th Cir. 1995) ....................................... 10

Transamerica Ins. Co. v. H.V.A.C. Contractors, Inc., 857 F. Supp. 969 (N.D. Ga. 1994)
........................................................................................................................ ..14, 15, 16

Union Trust Co. of New Jersey v. Knabe, 122 Md. 584, 89 A. 1106 (1914) ............ 19, 20

United States Fidelity & Guaranty Co. v. Feibus, 15 F. Supp. 2d 579, 585 (M.D. Pa.
1998) ........................................................................................................... 11, 12, 23

United States for the Use of International Brotherhood of Electrical Workers v. United
Pacific Ins. Co., 697 F. Supp. 378, 381 (D. Idaho 1988) ............................................ 23

Walton v. City of Raleigh, 467 S.E.2d 410, 411 (N.C. 1996) ......................................... 22

Whipple v. American Surety Co. of New York, 92 F.2d. 673 (5th Cir. 1937)................. 17

### PLAINTIFF ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul"), by its undersigned attorneys, submits this Reply Brief in support of its Motion for Partial Summary Judgment.

### INTRODUCTION AND SUMMARY OF ARGUMENT

St. Paul entered into Indemnity Agreements with the Defendants that require each Defendant to indemnify St. Paul against a percentage of any losses or expenses incurred by reason of having issued an Appeal Bond in a Georgia case. St. Paul has incurred millions of dollars in losses and expenses by reason of having issued the Bond, including a payment of more than $7 million to discharge a judgment against St. Paul itself, but Defendants have refused to live up to their indemnity obligations.

In the lengthy briefs that have been submitted in opposition to St. Paul's Motion for Partial Summary Judgment, the Defendants do not dispute St. Paul's *prima facie* case. Instead, they make four arguments in an attempt to avoid summary judgment. None of them has merit. All of them can and should be resolved by the Court right now, as matters of law.

First, Defendants assert that there is a factual dispute as to whether St. Paul acted in "good faith" or "reasonably" when it paid the judgment. (See, e.g., Brief of Defendant America United Life Insurance Co. ("American United Brief") at 24-27). The Defendants have not met their burden under Fed. R. Civ. Proc. 56 of identifying a single fact that would create a dispute as to whether St. Paul acted in good faith when it paid the judgment. Defendants also have failed to provide an affidavit, as required by Federal Rule of Civil Procedure 56(f), identifying any evidence they hope to find in discovery

bearing on this issue. Defendants cannot avoid summary judgment based on their factually unsupported allegation of bad faith.

Second, Defendants claim that this case is governed by Georgia law, and that under Georgia law they are entitled to a jury trial on whether St. Paul paid the judgment in good faith. (See American United Brief at 6-9, 17-21). Defendants are wrong in both respects. Georgia law does not govern this case. Even if it did, the law of Georgia requires the enforcement of unambiguous indemnity agreements like the ones in this case, and does not justify a jury trial when the Defendants have failed to meet their burden under Rule 56 of identifying a disputed issue of material fact supported by admissible evidence.

Third, Defendants argue that the Indemnity Agreements, which unconditionally require them to indemnify St. Paul against "all" losses and expenses it incurs "by reason of" having furnished the Appeal Bond, mean something different from what they say. They contend, for example, that the Indemnity Agreements require St. Paul to exhaust collection efforts against Security Life before attempting to collect from Defendants. (See American United Brief at 37-39). They argue that St. Paul was required to exhaust all potential avenues of appeal before paying the judgment that was entered against it as a result of having issued the Bond. (Id. at 20-21). Defendant Transamerica argues that the terms of the Appeal Bond govern, rather than the terms of the Indemnity Agreements. (See Brief of Defendant Transamerica Occidental Life Insurance Co.) None of these arguments -- which are obvious attempts to add new, inconsistent and unwritten conditions to the unambiguous language of the Indemnity Agreements -- is proper under the applicable rules of contract construction.

Finally, Defendants attempt to revive their discredited argument that the ongoing appellate proceedings in the State of Georgia somehow control the outcome of this case (American United Brief at 9-16). In doing so, they ignore the pertinent undisputed facts: (1) The Indemnity Agreements between St. Paul and the Defendants are unambiguous in their terms and do not depend on the outcome of the Georgia proceedings; (2) Those Indemnity Agreements are not involved in any case pending before the Georgia courts; (3) Defendants themselves are not parties to any appellate proceeding in Georgia courts; and (4) The issues between St. Paul and the Defendants are completely different from the issues presently pending in Georgia between St. Paul and Security Life, and are governed by different sets of laws, agreements and cases. Defendants have identified no doctrine of law that would give any effect, much less controlling effect, to the Georgia proceedings.

Accordingly, this Court should grant St. Paul's motion for partial summary judgment.

## ARGUMENT

**I.   DEFENDANTS HAVE FAILED TO IDENTIFY A DISPUTED ISSUE OF MATERIAL FACT THAT WOULD PRECLUDE THE ENTRY OF PARTIAL SUMMARY JUDGMENT IN FAVOR OF ST. PAUL**

The party moving for summary judgment "bears the initial burden to point to the absence of a genuine issue of material fact." Temkin v. Frederick County Commissioners, 945 F.2d 716, 718 (4th Cir. 1991), citing, inter alia, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden then shifts to the non-moving party to come forward with facts sufficient to create a "triable issue of fact." Id. at 718-719. A party resisting summary judgment "must set forth specific facts showing that there is a

genuine issue for trial." <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).

St. Paul identified the undisputed facts that entitle it to partial summary judgment

on pages 2 through 8 of its memorandum in support of its motion for partial summary

judgment.  Those facts are supported by the affidavit of Diane Schumaker and the

exhibits authenticated through that affidavit, which are attached to the memorandum.[1]

Defendants do not dispute these facts.  Instead, they assert that a jury trial is

required on the issue of St. Paul's good faith and reasonableness in paying the full

judgment entered against it when, they assert, there were grounds for appeal that could

have reduced St. Paul's obligation under the Appeal Bond.[2]  In substance, therefore,

Defendants argue that St. Paul has failed to mitigate its damages.  Failure to mitigate is an

affirmative defense, and the burden of proof rests on the party asserting the defense.

<u>Brendle's Stores, Inc. v. OTR</u>, 978 F.2d 150, 157-58 (4th Cir. 1992) (under South

Carolina law, party asserting failure to mitigate has the burden of proof); <u>Sergeant</u>

---

[1] The Defendant's minimal factual submissions do not create a dispute of fact.  Defendants Principal Mutual Life Insurance Company and Transamerica Occidental Life Insurance Company have submitted no factual materials whatsoever.  Defendants American United Life Insurance Company, et al. submitted an affidavit of Daniel Markewich, one of their lawyers, that is not based on personal knowledge.  Paragraphs 1 through 16 of Mr. Markewich's affidavit simply authenticate pleadings in the ongoing Georgia litigation. Paragraphs 17 and 18 of Mr. Markewich's affidavit authenticate indemnity agreements between St. Paul and the Defendants and St. Paul and Security Life, but they do not identify any disputes of material fact relating to or arising from those agreements.  Paragraphs 19 and 20 of Mr. Markewich's affidavit authenticate self-serving correspondence written by Defendants' counsel, but once again do not create any issue of fact relating to St. Paul's entitlement to summary judgment.  Paragraph 21 of Mr. Markewich's affidavit authenticates a copy of an order confirming an arbitration award arising out of an arbitration among Security Life and the Defendants herein.  It does not have anything to do with the grounds for St. Paul's motion for partial summary judgment.

[2] Defendants allude vaguely to discovery they would like to take, but they have failed to comply with the relevant rule, Fed. R. Civ. Proc. 56(f).  That rule provides that if a party defending against a summary judgment motion shows, <u>by affidavit</u>, that it "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," then discovery may be appropriate.  The Defendants have failed to submit any affidavit that even remotely complies with the requirements of Rule 56(f) -- because, as their sophisticated counsel undoubtedly realize, there is no dispute of material fact in this case.

Company v. Pickett, 285 Md. 186, 401 A.2d 651, 660 (1979) (under Maryland law, burden of proving that losses could have been avoided was on the party breaching the contract); Moreland Auto Stop, Inc. v. TSC Leasing Corp., 216 Ga. App. 438, 454 S.E.2d 626, 628 (Ct. App. 1995) (same); Magnet Resources, Inc. v. Summitt MRI, Inc., 318 N.J. Super. 275, 723 A.2d 976, 987 (Super. Ct. App. Div. 1998) (same); Golbar Properties, Inc. v. North American Mortgage Investors, 78 A.D.2d 504, 431 N.Y.S.2d 820, 822-23 (App. Div. 1980) (same); Smith v. Childs, 112 N.C. App. 672, 437 S.E.2d 500, 507-8 (Ct. App. 1993) (burden of proving that mitigation failed to occur falls on defendant).

The sole purported "evidence" that Defendants have identified to support their claim of "bad faith" or "unreasonableness" on St. Paul's part is that St. Paul paid the judgment, after it was entered against St. Paul, when Security Life, St. Paul's principal, had opted to appeal to seek a partial reduction of the judgment. The Defendants do not contend that any other fact would support a finding of bad faith on St. Paul's part.[3/]

Defendants' argument fails, and they fail to identify admissible evidence that would meet their burden of proof. Decisions from the relevant jurisdictions make it clear that a surety's decision to settle or discharge a bond obligation, rather than exhaust appellate remedies, is insufficient as a matter of law to support a claim of bad faith against the surety.

---

[3/] Transamerica also contends that St. Paul had the ability to seek to be discharged of its obligations under the Appeal Bond once the Georgia Court of Appeals modified the original trial court judgment. Transamerica makes further, frivolous contentions that St. Paul's inability to obtain a discharge of the Appeal Bond somehow breached a duty of good faith. The dispositive answer, based on undisputed facts set forth in St. Paul's response to Transamerica's motion to dismiss, is that St. Paul did move for discharge on the very ground Transamerica has identified, lost in the trial court, appealed the issue all the way to the Georgia Supreme Court, and lost at every stage.

## CASES DECIDED UNDER NEW YORK LAW

In <u>General Accident Ins. Co. of America v. Merritt-Meridian Construction Corp.</u>, 975 F. Supp. 511 (S.D.N.Y. 1997), the District Court judge rejected an indemnitor's claim that the surety was not entitled to summary judgment because of the indemnitor's conclusory allegation of "bad faith." The "bad faith" allegation was based on the fact that the surety had paid claims despite the existence of possible defenses. <u>Id.</u> at 517-518. The District Court reaffirmed the principle of New York law that "[i]t is irrelevant whether [the principal] was actually liable for the payments claimed . . . so long as [the surety] acted in good faith in making the payments . . ." <u>Id.</u> at 516. The Court further observed that under long-standing New York law, a surety is entitled to recover upon a showing that it acted pursuant to a reasonable determination that it was liable, not proof that it was actually liable. <u>Id.</u> at 517, n. 4, citing <u>Fidelity & Casualty Company v. Finch</u>, 159 N.Y.S.2d 391, 396 (App. Div. 1957). In language that is directly applicable to the Defendants' argument here, it held that, as a matter of law, a "<u>decision to proceed with claims despite possible defenses … is not evidence of bad faith</u>." <u>Id.</u> at 518 (emphasis added).

The court in <u>General Accident</u> relied on <u>Banque Nationale de Paris, S. A. v. Insurance Company of North America</u>, 896 F. Supp. 163 (S.D.N.Y. 1995). In <u>Banque Nationale,</u> the defendant asserted that the surety's settlement of a case was not in good faith because there had been defenses to the payment of the claim.[4] The court rejected that assertion, observing

> There is not a scintilla of evidence, as distinct from conclusory assertions, that [the surety] acted inappropriately. Indeed, it obviously was in [the

---

[4] Under New York law, performing in good faith "entails acting with a 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" <u>Banque National de Paris</u>, 896 F. Supp. at 164, quoting Restatement (Second) Contracts § 205, Comment a (1981).

surety's] economic interest to press the alleged defenses for all they were
worth, as the third-party defendant's failure to post collateral meant that
[the surety's] own funds were at risk. . . . There is no evidence that [the
surety] failed to extract in the settlement whatever value could be derived
from the alleged defenses.

Id. at 165.  The court went on to hold that under the particular indemnity agreement in

question, the surety's decision to settle "ought to be regarded as presumptively correct.

Certainly it was in a better position to assess the value of the claim that it settled then

would be a reviewing court."  Id.

Numerous other New York cases reject the Defendants' contention that a surety's

decision not to exhaust all legal defenses or appeals constitutes evidence of bad faith or

unreasonableness.  For example, in Lumbermen's Mutual Casualty Ins. Co. v. Darel

Group USA, Inc., 2003 WL 1628830 (S.D.N.Y. 2003), a case involving a customs bond,

a defendant trying to evade its indemnity obligation claimed the surety "acted in bad faith

by failing to contest the unjustified demands of the United States Customs Service," and

"by ignoring the interest of its indemnitors."  Id at *7.  As the court pointed out, these

allegations were "purely conclusory," and therefore not sufficient to avoid summary

judgment.

This case is controlled by the foregoing cases.  As in those cases, the Defendants

have offered only a conclusory allegation of bad faith.  The only fact on which they rely

-- St. Paul's decision to pay the judgment while Security Life appealed -- is insufficient

as a matter of law to support a claim of "bad faith" or "unreasonableness."

The New York cases cited by the Defendants do not affect the appropriateness of

summary judgment in this case.  General Insurance Co. of America v. Merritt-Meridian

Construction Corp., 1997 WL 187372 (S.D.N.Y. 1997), is an unreported District Court

opinion.  In that opinion, Judge Chin confirmed the key principle that in cases involving

indemnity agreements, summary judgment must be granted if the plaintiff makes out its *prima facie* case and the defendants' "conclusory affidavits are insufficient to raise a triable issue." Id. at *2-*3, citing International Fidelity Ins. Co. v. Spadafina, 596 N.Y.S.2d 453, 454 (App. Div. 1993). Judge Chin went on to find, however, that the defendants in that case had submitted sufficient evidence from which a jury could conclude that the surety failed to act reasonably and in good faith (although the opinion does not identify what that evidence was). Id. at *3. Thus, Judge Chin's decision has no application to this case, in which Defendants have failed to submit either affidavits or any other evidence germane to the issue of whether St. Paul acted in good faith.

It is clear, however, that the factual setting of Judge Chin's decision was much different from this case. In particular, the defendants in that case had offered to post collateral for the judgment against the surety, with the result that the surety would have had no exposure or risk if it had failed to pay the judgment. (Id.) To say the least, no such offer has been made in this case. On the contrary, in this case the Defendants have consistently refused to put up a single penny of their own money.

Further, it is well established in New York law that it is irrelevant to the enforcement of a surety's indemnity rights whether the indemnitor was actually liable on the underlying debt. See Spadafina, 596 N.Y.S.2d at 454. Judge Chin's opinion acknowledges that principle but does not apply it. Id. at n. 4.[5/] In any event, the General

---

[5/] The same distinction applies to the case of General Ins. Co. of America v. Capolino Construction Corp., 903 F. Supp. 623 (S.D.N.Y. 1995), which, like Judge Chin's opinion, acknowledges the principle but does not follow it. 903 F. Supp. at 627, n. 1. Finally, in the case of National Surety Company v. Fulton, 183 N.Y.S. 237 (App. Div. 1920), an 83-year old trial court opinion, it is unclear what evidence the defendant proffered to create a jury question on the issue of good faith; in any event it surely must have been more than the nonexistent showing that the Defendants have made in this case.

Accident case, decided only a few months later, reaffirms that under New York law conclusory allegations of bad faith, which is all that Defendants have offered in this case, are inadequate to avoid summary judgment.

### CASES DECIDED UNDER NEW JERSEY LAW

Defendants' citations to New Jersey law are equally unavailing. Under New Jersey law, where the obligations of the parties "are clear and unambiguously set forth in an indemnity agreement, the court should summarily enforce such indemnification provisions." Andre Construction Assoc., Inc., v. Cotell, Inc., 681 A.2d 121, 123 (N.J. Super. Ct. 1996) (citations omitted) Neither of the cases relied upon by the Defendants -- Chemical Bank of New Jersey National Association v. Bailey, 687 A.2d 316 (N.J. Super. Ct. 1997), or International Fidelity Insurance Co. v. Jones, 682 A.2d 263 (N.J. Super. Ct. 1996) -- changes this doctrine.

In Chemical Bank, the language on which Defendants rely relates to a title insurance company's common law right of subrogation against an attorney who committed legal malpractice. It did not relate to the interpretation of an express indemnity agreement. See 687 A.2d at 320-321. In fact, when the court in Chemical Bank turned to the interpretation of an express written indemnity agreement, it enforced that agreement in precise accordance with its terms. Id. at 322-323. Thus, Chemical Bank, rather than supporting the Defendants' position, actually supports St. Paul's.

Jones is similarly irrelevant. In Jones, the plaintiff was seeking indemnification against legal fees it had expended. The Court stated that the defendant was entitled to contest the reasonableness of those fees, pointing out that attorneys' fee awards are closely regulated by the New Jersey courts. 682 A.2d at 264. Jones does not address an

appeal bond surety's right to be indemnified when it has paid a judgment entered against it by a court of competent jurisdiction.

Finally, neither of the New Jersey cases relied upon by the Defendants can remove this case from the scope of Fed. R. Civ. Proc. 56, which requires the Defendants to provide admissible evidence of bad faith by St. Paul to avoid summary judgment.

### CASES DECIDED UNDER THE LAW OF OTHER JURISDICTIONS

In addition to the Defendants' failure to supply evidence sufficient to create a disputed issue of material fact under the law of New York and New Jersey, they have failed to do so under the principles enunciated in cases from other jurisdictions.

Transamerica Ins. Co. v. Avenell, 66 F.3d 715 (5th Cir. 1995), is closely on point. In that case judgment had been entered against a surety and its bond principal in a construction case. The surety and the bond principal both appealed, but while the appeal was pending, the surety decided to settle. Id. at 718. The principal elected to continue the appeal alone.

The surety then sought indemnification for the amounts it had paid to settle the case from two of its individual indemnitors. They refused to indemnify the surety, claiming that the surety's settlement of the litigation before appeals were exhausted was an act of bad faith. Id. at 718. The individual indemnitors had demanded that the surety not make any payments to settle the case until the appeals were final, but did not offer to provide the surety with any security against the consequences of not settling.

The Fifth Circuit rejected the indemnitors' claim that the surety had acted in bad faith by settling the case prior to the finalization of all appeals, holding that they were "conclusionary." Id at 721. In the absence of any factual support for the allegations of

bad faith other than the mere decision to pay, the Fifth Circuit upheld the grant of summary judgment to the surety.

Numerous other cases demonstrate the inadequacy of the Defendants' factual showing in this case to avoid summary judgment. Courts have repeatedly held that a surety does not act in "bad faith," absent the "conscious doing of a wrong because of dishonest purpose or moral obliquity." Fidelity & Guaranty Insurance Company v. Keystone Contractors, Inc., 2002 WL 1870476, at *4 (E.D. Pa. 2002), citing Polselli v. Nationwide Mut. Fire Insurance Co., 23 F.3d 747, 751 (3d Cir. 1994) and United States Fidelity & Guaranty Co. v. Feibus, 15 F. Supp. 2d 579, 585 (M.D. Pa. 1998). As another federal District Court held in Frontier Insurance Co. v. International, Inc., 124 F. Supp. 2d 1211, 1214 (N.D. Ala. 2000), "the law is clear that alleged overpayment or negligent investigation of claims does not constitute bad faith in the suretyship context.…" Moreover, "[g]ross negligence, bad judgment and alleged excessive payments by the surety does not rise to the level of bad faith." Id. at 1214-1215, citing Feibus, 15 F. Supp. 2d at 585-87. Defendants have not provided a shred of evidence to support their claim of "bad faith" under these standards.

The leading case, the Fourth Circuit's decision in Fidelity & Deposit Co. of Md. v. Bristol Steel and Iron Works, Inc., 722 F.2d 1160 (4th Cir. 1983), makes it starkly clear that a surety is allowed to pay a claim, and then obtain indemnity from its indemnitors, even if it paid the claim to solely serve its own interests. In Bristol Steel, the sureties had been blacklisted by the Commonwealth of Pennsylvania and were not permitted to function as sureties on future contracts with Pennsylvania's Department of Transportation. The sureties settled the claims against the bonds in order to be allowed to

resume writing surety bonds for road work in Pennsylvania.  The Fourth Circuit found

that there was "no justification for a finding of bad faith or fraud simply because [the

sureties] made the payment to secure their removal from PennDOT'S blacklist."  Id. at

1165.

Consistent with the Fourth Circuit's decision in Bristol Steel, the District Court

observed in United States Fidelity & Guaranty Co. v. Feibus, "other jurisdictions have

similarly upheld a surety's right to indemnification for claims paid to protect its own

interests, as long as the payments were made in good faith."  15 F. Supp. 2d at 586.

In short, the overwhelming weight of the law, including those jurisdictions whose

law governs this case, establishes that the conclusory allegations of bad faith made by the

Defendants in this case are insufficient as a matter of law to avoid summary judgment.[6]

## II.    IF THE LAW OF GEORGIA GOVERNED THIS CASE, ST. PAUL STILL WOULD BE ENTITLED TO PARTIAL SUMMARY JUDGMENT, BUT THE LAW OF GEORGIA DOES NOT GOVERN.

### A.    EVEN IF GEORGIA LAW APPLIED, ST. PAUL WOULD BE ENTITLED TO PARTIAL SUMMARY JUDGMENT

This is a contract case.  The courts of Georgia apply the same rules of contract

construction as those applied in other states.  The Supreme Court of Georgia stated in

First Data POS, Inc. v. Willis, 273 Ga. 792, 546 S.E.2d 781, 794 (2001):

> It is axiomatic that contracts must be construed to give effect to the
> parties' intentions, which must whenever possible be determined from a
> construction of the contract as a whole.  Whenever the language of a
> contract is plain, unambiguous, and capable of only one reasonable
> interpretation, no construction is required or even permissible, and the

---

[6] Defendants' unsupported claim of "bad faith" is especially hollow in light of the uncontested facts in the record showing strong reasons for paying the judgment, including that judgment had been entered against St. Paul itself; that a writ authorizing the seizure of St. Paul's property had been issued; that the arguments that would form the basis for any appeal had already been rejected in a well-reasoned trial court opinion; that at most, a partial reduction in the judgment could be achieved; that interest was running on the judgment in the amount of more than $400,000 per year; that attorneys' fees were mounting; and that Defendants had refused to live up to their indemnity obligations in any respect.

contractual language used by the parties must be afforded its literal
meaning.

(Citations omitted).  <u>See</u> <u>also</u> <u>Flagg Energy Development Corp. v. General Motors Corp.</u>,
223 Ga. App. 259, 477 S.E.2d. 402 (Ct. App. 1996) (under Georgia law, "[t]he cardinal
rule of construction is to determine the intention of the parties.  But no construction is
required or even permissible when the language employed by the parties in the contract is
plain, unambiguous and capable of only one reasonable interpretation") (citations
omitted).

The language of the Indemnity Agreements executed by each of the Defendants is
plain and unambiguous.  It requires that each Defendant, up to a prescribed limit,
indemnify St. Paul against "all losses, damages, claims, costs, expenses and attorneys
fees" that St. Paul incurred "by reason of … having furnished" the appeal bond.  The
Defendants have identified no ambiguity in the language.  Under Georgia contract law,
no further construction is required or even permissible.  Therefore, the Indemnity
Agreements must be enforced in accordance with their plain and express terms.

Courts applying Georgia law routinely enforce indemnity agreements similar to
those executed by the Defendants in this case.  In <u>Reliance Ins. Co. v. Romine</u>, 707 F.
Supp. 550 (S.D. Ga. 1989), for example, the defendant, like the Defendants in this case,
signed an indemnity agreement to induce a surety to issue a bond.  After the surety was
required to make payments as a result of having issued the bond, it sued the defendant for
indemnity.  The defendant attempted to evade liability by claiming that the surety had
overpaid some of the bond claims.

The District Court rejected this attempt.  It observed that "under Georgia law,
where the language of a contract is definite and unambiguous, a court must give it

effect." 707 F. Supp. at 552. (Citations omitted). The indemnity agreement in question gave the surety discretion to settle the claims against the bond, and as a result the Court held that the only question was whether the decision to settle was "bad faith, arbitrary or capricious." Id. Because the record was devoid of evidence of bad faith, the Court granted summary judgment to the plaintiff surety.

In a similar case, Transamerica Ins. Co. v. H.V.A.C. Contractors, Inc., 857 F. Supp. 969 (N.D. Ga. 1994), the surety Transamerica had issued a bond on behalf of H.V.A.C. As a condition of issuing the bond, the surety obtained indemnity agreements from the contractor and three of its officers. The indemnity agreement, like the ones involved in this case, required the indemnitors to indemnify the surety against losses sustained by the surety "by reason of having executed or procured execution of the bonds." Id. at 972, n.3. The surety paid claims as a result of having issued the bond, and sued the indemnitors. The indemnitors defended on several grounds, including an assertion that the surety had paid claims that it was not required to pay.

The District Court rejected the indemnitors' attempts to evade liability. It held that there was no evidence that the surety paid claims in bad faith, or had a motive to do so. It observed that the surety "had nothing to gain by inflating payments. To the contrary, each payment required more work and risk on plaintiff's part that it might not recover from defendants under the agreement of indemnity." Id. at 974. The Court enforced the indemnity agreement and granted summary judgment to the plaintiff surety.

As these cases demonstrate, Georgia law requires the granting of St. Paul's motion for partial summary judgment in this case, given the failure of the Defendants to identify evidence that would create a disputed issue of material fact.

None of the Georgia cases cited by the Defendants permit the Defendants to avoid summary judgment. The Defendants rely principally upon <u>H.D. McLendon v. Hartford Accident & Indemnity Co.</u>, 119 Ga. App. 459, 167 S.E.2d. 725 (1969). In that case a panel of Georgia's Court of Appeals based its decision on an indemnity agreement between the surety and its bond principal. <u>Id.</u> at 726. The agreement gave the surety the exclusive right, <u>on behalf of its principal</u>, to settle claims against the principal. The Court held that this provision made the surety the agent of the principal for the purposes of settlement. Based on that specific contractual provision, and the resulting agency relationship, the Court held that the surety had a fiduciary relationship to the principal. Because of that fiduciary relationship, the Court held that the principal should have been permitted to introduce at trial evidence to support its defense that the surety had violated its fiduciary duty.

<u>McLendon</u> has nothing to do with this case. There is no provision of the Indemnity Agreements between St. Paul and the Defendants that made St. Paul the Defendants' "agent." Because the critical fact that led the Georgia Court of Appeals to find a fiduciary relationship in <u>McLendon</u> is absent here, <u>McLendon</u> is irrelevant to this case.

<u>McLendon</u> is distinguishable on a second ground. The defendant in <u>McLendon</u> had alleged "in specific detail" that the surety had not acted in good faith, in violation of its fiduciary duty, in paying claims. <u>Id.</u> at 727. In this case, the Defendants have failed to provide any admissible evidence of bad faith, much less "specific detail."

<u>McLendon's</u> irrelevance to this case is confirmed by <u>Transamerica Ins. Co. v. H.V.A.C.</u>, <u>supra</u>. The District Court in <u>H.V.A.C.</u>, in distinguishing <u>McLendon</u>, pointed

out that it had "not located any authority which states the surety owes the indemnitors any duty beyond what is already provided in the Agreement of Indemnity." 857 F. Supp. at 975, n.11. Because the unique language on which the Georgia Court relied in McLendon was absent in H.V.A.C. -- just as it is absent here – McLendon did not control the decision in H.V.A.C.

The other cases relied upon by the Defendants are equally irrelevant. In M-Pax, Inc. v. Dependable Insurance Co., Inc., 176 Ga. App. 93, 335 S.E.2d. 591, 594 (Ct. App. 1985), the Georgia Court of Appeals held that the principal on a bond was not allowed to challenge in an indemnity action the amount that a surety had paid to satisfy a judgment against it. That holding was based on a Georgia statute, O.G.C.A. § 10-7-42, which is not applicable in this case because the Defendants are not St. Paul's principals. Thus, the holding of M-Pax, if it were applicable to this case, would squarely support St. Paul, not the Defendants.

Instead of relying on the holding on M-Pax, therefore, the Defendants have taken out of context language relating to the surety's recovery of attorneys' fees against the principal and the indemnitors. Id. at 593-4. The Court pointed out that the surety had introduced *prima facie* evidence of its attorneys' fees, and the defendants did not by cross examination or otherwise seek to challenge the propriety or reasonableness of those payments. Consequently, the court upheld the trial court's decision to direct a verdict for the recovery of those fees.

This aspect of M-Pax also supports St. Paul's position in this case. Just as the defendants in M-Pax failed to introduce evidence to challenge the award of attorneys' fees to the plaintiff in that case, the Defendants in this case have failed to provide any

evidence to create a dispute of material fact as to St. Paul's good faith, which is their burden under Rule 56.  Therefore, just as it was appropriate for the trial court in <u>M-Pax</u> to direct a verdict in favor of the Plaintiff, it is appropriate in this case for this Court to enter partial summary judgment against the Defendants.[7/]

In short, even if Georgia law applied, it would require the enforcement of the Indemnity Agreements in accordance with their plain language.  Defendants have failed to identify any admissible evidence that would create an issue of material fact as to whether St. Paul acted in good faith in paying the judgment against it.

### B.  GEORGIA LAW DOES NOT GOVERN THIS DISPUTE

Defendants contend that Georgia law, rather than the law of New York, New Jersey, or North Carolina, governs this dispute.  That contention rests on a fundamental mischaracterization of the facts relating to the formation of the Indemnity Agreements. This Court should reject it.

The parties agree that this Court should follow Maryland's general rule of "<u>lex loci contractus</u>" to determine which state's law governs this dispute.  "Under the <u>lex loci</u> principle, a contract is 'made' where the last act necessary for its formation is performed."  <u>The Rouse Co. v. Federal Ins. Co.</u>, 991 F. Supp. 460, 462 (D. Md. 1998),

---

[7/] The only other case cited by the Defendants, <u>Whipple v. American Surety Co. of New York</u>, 92 F.2d. 673 (5th Cir. 1937), is completely irrelevant.  <u>Whipple</u> involved a bond posted by a public official to assure his proper handling of public funds.  Funds were lost as a result of a bank failure, and the surety was required to pay on the bond.  The public official had agreed to indemnify the surety against its costs and expenses incurred by reason of executing the bond, and the Fifth Circuit enforced that obligation.  <u>Id.</u> at 674.  The defenses raised by the bond principal to his indemnity obligations are irrelevant to the issues in this case; they related to the provisions of Georgia statutes governing public funds.  Unlike the modern Georgia cases relied upon by St. Paul, <u>Whipple</u> has nothing to do with the issue of whether a surety acted in good faith by paying a judgment.  It certainly does not stand for the proposition that the Defendants are entitled to a jury trial when they have failed to present any admissible evidence that would give rise to a dispute of material fact as to whether St. Paul acted in good faith.

citing Grain Dealers Mutual Ins. Co. v. Van Buskirk, 241 Md. 58, 66, 215 A.2d 467

(1965).  Thus, the choice of law issue in this case turns upon the mixed factual and legal

issue of where the last act necessary for contract formation was performed.

     The facts relating to the formation of the Indemnity Agreements are

straightforward.  By letter dated November 7, 1996, St. Paul offered to issue the Appeal

Bond, if the Defendants would agree to indemnify it in the required percentages and

certain other conditions were met.  See Exhibit 1, November 7, 1996 letter.  The

Defendants accepted St. Paul's offer by sending their executed Indemnity Agreements

from New York (for all Defendants other than Transamerica) and North Carolina (for

Transamerica) to St. Paul in New Jersey.

     It has long been established that indemnity contracts made under these

circumstances are formed when the indemnity agreement is delivered to the indemnitee.

In Davis v. Wells, 104 U.S. 159 (1881), for example, the defendants, two individuals,

agreed with the plaintiff bank that they would guarantee the indebtedness of a business

firm.  When the bank sued to enforce the agreement, the defendants contended that no

binding contract had been formed because the bank had not given them notice that it had

accepted the guarantee.

     The Supreme Court rejected this defense.  It found that the contract had been

formed when the agreement was delivered to the bank.  It observed:

> If the guaranty is made at the request of the [bank], it then becomes the
> answer of the guarantor to a proposal made to him, and its delivery to or
> for the use of the [bank] completes the communication between them and
> constitutes a contract.

Id. at 166.

Similarly, in <u>Ammerman v. Miller</u>, 488 F.2d 1285, 1293 (D.C. Cir. 1973), the plaintiff Miller required that the defendant Ammerman execute a guaranty as a condition for Miller's making a loan to two of Ammerman's business partners.  The D.C. Circuit, relying on <u>Davis v. Wells</u>, stated that a guaranty contract was formed when the guaranty was delivered to Miller.  "Since the guarantee by Ammerman and Wolman was made at the request of Miller, the guarantee became the answer of Ammerman and Wolman to Miller's proposal, and its delivery to Miller or for his use completed the communication between them and constituted a conditional contract of guaranty."  <u>Ammerman</u>, 488 F.2d at 1293.

The same analysis governs this case.  As a condition to issuing an Appeal Bond on behalf of Security Life, St. Paul demanded that the Defendants execute indemnity agreements.  They did so.  Under those circumstances, a binding contract was formed when the indemnity agreements were delivered to St. Paul in New Jersey, from New York and North Carolina, respectively.

Defendants rely principally upon <u>Union Trust Co. of New Jersey v. Knabe</u>, 122 Md. 584, 89 A. 1106 (1914), in support of their argument that the Indemnity Agreements in this case were not formed until St. Paul issued the Appeal Bond in Georgia.  The facts of <u>Knabe</u> were significantly different from the facts in this case, and <u>Knabe</u> does not support the Defendants' argument that Georgia law should govern the contract dispute in this case.

In <u>Knabe</u>, a New Jersey bank sued a Maryland resident to enforce a guaranty that she had executed and then had delivered to the bank's lawyer in Baltimore.  One issue in the case was whether the guaranty contract had been formed in Maryland, when the

contract was delivered to the bank's Baltimore lawyer, or in New Jersey, when the bank had made the actual entries in its books evidencing the loan.

After an extensive factual review, the Court of Appeals concluded that the guaranty agreement had been made in New Jersey. Its reasoning was that the guaranty agreement had not been delivered in response to a promise by the bank to make a loan. Rather, the Court of Appeals held, the guaranty was in the nature of a promise to guarantee, in the event that a loan was made in the future. Id. at 1114.

The factual setting of Knabe is distinctly different from the factual setting of this case. Unlike the plaintiff bank in Knabe, which had not, according to the Court of Appeals, promised to make a loan if it received the guarantee, St. Paul in this case did offer to issue an Appeal Bond if the Defendants would furnish the Indemnity Agreements. See Exhibit 1. Thus, the Indemnity Agreements in this case were formed when, in response to that offer by St. Paul, the Defendants delivered them to St. Paul. Because the contracts were fully formed once the Defendants delivered them to St. Paul in New Jersey from New York and North Carolina, the law of those states applies.

**III. BECAUSE THE LANGUAGE OF THE INDEMNITY AGREEMENTS IS UNAMBIGUOUS, DEFENDANTS MAY NOT EVADE SUMMARY JUDGMENT BY ATTEMPTING TO IMPOSE UNWRITTEN CONDITIONS ON THEIR INDEMNITY OBLIGATIONS.**

Defendants attempt to evade summary judgment by claiming that the Indemnity Agreements do not mean what they say, in three different respects.

(1) Defendants American United, et al. contend that St. Paul is entitled to be indemnified only to the extent that the judgment against Security Life is upheld on

appeal, rather than for "all" of its losses and expenses incurred, as is required by the language of the Indemnity Agreements.[8]

(2) Defendants American United, et al. claim that St. Paul should be required to exhaust collection efforts against Security Life and its parent company before attempting to collect from the Defendants – even though the Indemnity Agreements contain no such requirement, and Defendants cite no case law or statute that supports their position.

(3) Defendant Transamerica argues that St. Paul should not be able to enforce the indemnity agreements at all, basing its argument on language that is contained in the Appeal Bond, rather than in the Indemnity Agreement itself.

None of those arguments have any merit, because they are all attempts to import additional unwritten and unagreed upon conditions into the unambiguous language of the Indemnity Agreements.  That language requires each Defendant to pay a specified percentage of all losses and expenses incurred by St. Paul by reason of having issued the Appeal Bond, up to a specified dollar limit.

Under the law of every state whose law might be applicable, such unambiguous language is to be given effect and enforced by the courts.  See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 571-572 (4th Cir. 1998) (under North Carolina law, when the language of the contracts is unambiguous, the intent of the parties is reflected within that language and the court will determine the parties intent from the four corners of the document itself) (citing Walton v. City of Raleigh, 467 S.E.2d 410, 411

---

[8] Defendants attempt to distinguish the cases relied upon by St. Paul in its summary judgment memorandum and response to the order to show cause, primarily by pointing to language in the indemnity agreements used in those cases that is more detailed than the language in the Indemnity Agreements in this case.  (See American United Brief at 28-30).  Significantly, however, Defendants identify no cases that actually support their position.  Further, virtually all of the cases relied upon by St. Paul contain operative language that is very similar to this operative language in this case, which requires Defendants to indemnify St. Paul for "all" of its losses and expenses received "by reason of" having issued the Appeal Bond.  The Indemnity Agreements in this case, if anything, provide stronger rights to the surety than the agreements described in the other cases, because the Agreements in this case are simple, all-encompassing, and unconditional.

(N.C. 1996)); <u>In re Holocaust Victim Assets Litigation</u>, 2003 WL 1868640, *2 (E.D.N.Y. 2003) (citations omitted) ("Under New York law, 'when the intent of the parties can fairly be gleaned from the face of the instrument, the plain words of the contract govern, and matters extrinsic to the agreement may not be considered.'"); <u>D.R. v. East Brunswick Board of Education</u>, 838 F. Supp. 184, 190 (D.N.J. 1993) (under New Jersey law, when a contract is plain and unambiguous and susceptible only to one interpretation, the words therein will be given their plain and ordinary meaning). <u>See</u> <u>also</u> Georgia cases cited at pp. 13-17, <u>supra</u>.

Moreover, each of the Defendants' arguments has significant additional flaws. For example, Defendants' argument that St. Paul was required to exhaust appeals rather than pay the judgment, if accepted, would require St. Paul to pursue an appeal on grounds that it believes to be inappropriate. Such a construction would be inconsistent with public policy, which does not support the pursuit of non-meritorious appeals.

Defendants' contention that under the Indemnity Agreements "St. Paul was obligated to make its best efforts to collect from Security Life" before looking to the Defendants is simply ridiculous. The Defendants are among the world's largest insurance companies. They are represented by sophisticated counsel. If the parties had intended such a result, they plainly could have said so, but they did not.

Further, St. Paul required that the Defendants sign Indemnity Agreements unconditionally indemnifying it for 85% of the Appeal Bond amount – that is, all of the Bond amount that was not covered by the letter of credit posted by Security Life. The

obvious reason for this requirement was that St. Paul would not have to attempt to collect from Security Life, but would be able to proceed directly against the Defendants.[9]

Defendants raise the specter that St. Paul could attempt to collect 285% of its losses. There is no factual basis for this specter.  St. Paul has made no effort to overcollect; rather, it drew down the entire letter of credit, and has taken great care to make sure that each of the Defendants received full credit for the funds St. Paul received as a result of its drawing down on the letter of credit.  That is why the Defendants are not quibbling about St. Paul's calculation of the amount it is seeking at this time by way of summary judgment.

Finally, Transamerica's argument -- that the language of the Appeal Bond controls St. Paul's right to recover, rather than the language of the Indemnity Agreement itself -- has been rejected by every court to have considered the issue.  Transamerica has not cited a single case that has accepted its radical attempt to rewrite contract law.  See, e.g., Feibus, 15 F. Supp. 2d at 583-84, citing Bristol Steel, 722 F.2d at 1173; Commercial Ins. Co. of Newark v. Pacific-Peru Construction Corp., 558 F.2d 948, 952 (9th Cir. 1977); United States for the Use of International Brotherhood of Electrical Workers v. United Pacific Ins. Co., 697 F. Supp. 378, 381 (D. Idaho 1988).  St. Paul has fully addressed Transamerica's arguments in this regard in its opposition to Transamerica's motion to dismiss, and will not repeat that discussion here.[10]

---

[9] Exhibit 18 to Defendants' Affidavit indicates that Defendants are entitled to be indemnified by Security Life against any losses they incur as a result of entering into the Indemnity Agreements.  They are certainly free to pursue those rights.

[10] Transamerica also argues that its indemnity agreement should not be enforced because of a so-called "mutual mistake."  Transamerica has not offered a shred of admissible evidence in support of this contention, and it should be discarded.  Further, any alleged mistake in this case was unilateral, not mutual, since St. Paul does not share and never has shared Transamerica's alleged understanding of its Indemnity Agreement.  See, e.g., Lancaster v. Lancaster, 530 S.E.2d 82, 86 (N.C. Ct. App. 2000) (mistake must be mutual); Fox v. Washburn, 264 Ga. 617, 618, 449 S.E.2d 513, 514 (1994) (mutual mistake must have been shared by both parties).

In short, Defendants have identified no language on the face of the Indemnity Agreement that would justify the imposition of conditions on St. Paul's right to obtain indemnity from the Defendants for <u>all</u> sums it has expended by reason of having issued the Appeal Bond. Nor have they identified any doctrine of law that would permit them to escape their unambiguous obligations under those Agreements by imposing such unwritten conditions.

### IV. THIS COURT SHOULD REJECT DEFENDANTS' DISCREDITED ARGUMENT THAT ST. PAUL'S RIGHT TO ENFORCE ITS UNAMBIGUOUS INDEMNITY AGREEMENTS DEPENDS UPON THE OUTCOME OF THE GEORGIA PROCEEDINGS.

In their final attempt to avoid liability under the Indemnity Agreements they executed, Defendants argue that the outcome of the pending Georgia appellate proceedings should control the amount St. Paul is entitled to recover from them. (<u>See</u> American United Brief at 9-16).[11/] That argument is based on a misleading characterization of the narrow issues that are actually before the Georgia courts. This Court rejected the Defendants' argument once, when it considered St. Paul's response to the Court's order to show cause and denied the motion for a stay filed by Defendants American United, et al. It should reject that argument again.

This is a contract case. The Defendants have identified no contract provision that would entitle them, as St. Paul's indemnitors under written contracts, to the benefit of any reduction in the judgment amount ordered by the Georgia courts. The Defendants' indemnity obligations are unambiguous and require them to indemnify St. Paul for <u>all</u>

---

[11/] Defendants (other than Transamerica) do not contend on this ground that they are not liable at all; they are simply arguing about the amount that they must pay St. Paul. Of course, they have refused to pay St. Paul anything at all, including the amounts that they do not contest.

losses and expenses it incurs by reason of having filed the Appeal Bond, not simply the amount of the judgment ultimately affirmed by the Georgia appellate courts. Thus, there is no <u>contractual</u> basis for a holding that St. Paul's rights in this contract case are dependent upon the outcome of the Georgia proceedings.

St. Paul has fully briefed many of the issues relating to Defendants' argument in its response to the Court's order to show cause. In that brief St. Paul demonstrated that under the relevant case law, which is virtually uniform throughout the nation, when a surety enters into an indemnity agreement that entitles it to be indemnified against "all" losses it incurs "by reason of" issuing a bond, it must be indemnified for the full amount it pays out in good faith on the bond, even if the claim has not been reduced to judgment, even if all appeals are not pursued and exhausted, and even if the defendant claims the surety "overpaid." In the interest of conserving paper, St. Paul will not repeat those arguments here, but respectfully refers the Court to the brief it filed previously with regard to the order to show cause.

Further, St. Paul's contract rights against the Defendants cannot and will not be affected by any decision in Georgia, because its contracts with the Defendants are not before the Georgia courts. The irrelevance of the Georgia proceeding to St. Paul's contract rights is evident from the Georgia Court of Appeals' February 10, 2003 order (Exhibit 1 to Defendants' Affidavit), on which the Defendants rest their entire argument. The Court of Appeals' order, which was entered without notice to St. Paul or a hearing, explicitly states the basis for St. Paul's forced participation in the appeal: "The Clarks have transferred and

assigned the judgment appeal from and the fi.fa. issued thereon to St. Paul.  Therefore it is St.

Paul, not the Clarks, who have the right to enforce that judgment and execution against

Security.  Therefore, St. Paul is substituted as appellee. …"

In short, the entire basis for St. Paul's forced participation in the ongoing Georgia

appeal is its ownership of the Clarks' judgment against Security Life.  The appeal has

nothing to do with the Indemnity Agreements between St. Paul and the Defendants in this

case.  <u>There is not a word in any of the Georgia courts' opinions about these Indemnity</u>

<u>Agreements, because those Agreements are simply not involved in the Georgia case</u>.

They are not in the record in that case.  No one has brought them to the Georgia courts'

attention.  No one has claimed that they should play any role in the Georgia Court's

decisions.

Not only are the Indemnity Agreements not involved in the Georgia appeal;

<u>neither are the Defendants themselves</u>.  Because the Defendants are not parties to any of

the proceedings in Georgia, no Georgia court has had any occasion, need, or reason to

opine upon the contract rights between St. Paul and the Defendants.  In short, there is

absolutely no basis for considering the Georgia proceedings as having any relevance to

the amount that St. Paul can recover in this case.

In an attempt to get around these incontrovertible facts, the Defendants attempt to

argue that the language contained in St. Paul's Indemnity Agreement with Security Life

is similar to the language contained in the agreements between St. Paul and the

Defendants, and therefore the Georgia proceedings must be relevant.  What the

Defendants have failed to tell the Court is that <u>the contract rights between St. Paul and</u>

<u>Security Life also are not before the Georgia courts</u>.  St. Paul's indemnity agreement with

Security Life is not in the record in the Georgia case. St. Paul has never sued Security Life in Georgia, or anywhere else, on that agreement. Thus, even if that agreement were identical to the agreements between St. Paul and the Defendants in this case, which it is not, the Georgia court's decisions would have no impact on this case.

The Defendants acknowledge that there can and will be no collateral estoppel effect of anything that happens in the Georgia case on this case. (See American United Brief at 16). They have identified no other doctrine of law that would support giving preclusive effect to the Georgia proceedings. Their argument that the Georgia proceedings somehow govern this one should be rejected again.

## CONCLUSION

For the reasons stated, this Court should grant St. Paul's motion for partial summary judgment.

Respectfully submitted,

_____/s/_____

James A. Dunbar
Federal Bar No. 007392
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
Post Office Box 5517
Towson, Maryland 21285-5517
Telephone: (410) 494-6200
Fax No.: (410) 821-0147
*Attorneys for St. Paul Fire and Marine Insurance Company*

<u>C</u>ERTIFICATE OF <u>S</u>ERVICE

I HEREBY CERTIFY that on this __9<u>th</u>__ day of June, 2003, a copy of the foregoing

Plaintiff's Reply Brief in Support of its Motion for Partial Summary Judgment  was

mailed first class, postage prepaid, to:

  Gregg L. Bernstein
  Martin, Snyder & Bernstein, P.A.
  Redwood Tower, Suite 2000
  217 East Redwood Street
  Baltimore, Maryland  21202
    and
  Reid Evers, Esquire
  Vice President and Associate General Counsel
  Transamerica Occidental Life Ins. Co.
  Post Office Box 2101
  Los Angeles, California  90051-0101
   *Attorneys for Defendant Transamerica Occidental Life*
   *Insurance Company*

  Bryan D. Bolton, Esquire
  Funk & Bolton
  100 Light Street, Suite 1000
  Baltimore, Maryland 21202
    and
  Elizabeth J. Bondurant, Esquire
  Elizabeth A. Beskin, Esquire
  Carter & Ansley
  1180 West Peachtree Street, Suite 2300
  Atlanta, Georgia 30309
   *Attorney for Defendant Principal Mutual Life Insurance*
   *Company*

  J. Snowden Stanley, Jr., Esquire
  Semmes, Bowen & Semmes
  250 West Pratt Street, 16th Floor
  Baltimore, Maryland 21201
    and

Lawrence S. Greengrass, Esquire
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, New York  10004

*Attorneys for Defendants American United Life Insurance Company; Transamerica Occidental Life Insurance Company; First Allmerica Financial Life Insurance Company; Connecticut General Life Insurance Company; Combined Insurance Company of America; Crown Life Insurance Company; The Equitable Life Assurance Society of the United States; Manufacturers Life Insurance Company; Phoenix Home Life Mutual Insurance Company; Sun Life Assurance Company of Canada; Swiss Re Life & Health America, Inc.; Swiss Re America Holding Corporation; Unum Life Insurance Company of America; General & Cologne Life Re of America; and Canada Life Insurance Company of America*

_____
                    /s/
James A. Dunbar, Federal Bar No. 007392