IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION


                                    *

ST. PAUL FIRE AND MARINE            *
INSURANCE COMPANY,
                                    *

      Plaintiff,

                                    *    CIVIL NO.:  WDQ-02-3123
v.
                                    *

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY, et al.,          *

      Defendants.                   *


*     *     *     *     *     *     *     *     *     *     *     *     *

<u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota corporation, has sued the defendants for breach of contract.  The defendants include:  American United Life Insurance Company, Combined Life Insurance Company of America, Connecticut General Life Insurance Company, Crown Life Insurance Company and Canada Life Insurance Company of America, The Equitable Life Assurance Society of the United States, First Allmerica Financial Life Insurance Company, General and Cologne Life Re of America (formerly known as Cologne Life Reinsurance Company), Manufacturers Life Insurance Company, Phoenix Life Insurance Company (formerly known as Phoenix Home Life Mutual Insurance Company), Principal Life Insurance Company (formerly known as Principal Mutual Life Insurance Company), Sun Life Assurance Company of Canada, Swiss Re Life & Health America, Inc.

(as successor to The Mercantile & General Reinsurance Company Limited and as successor to Swiss Re Life Company America, sued as Swiss Re Life Company of America), Transamerica Occidental Life Insurance Company ("Transamerica"), and Unum Life Insurance Company of America.  Jurisdiction is based on diversity of citizenship.

In its amended complaint, St. Paul seeks almost $5 million in reimbursement pursuant to indemnity agreements (the "Indemnity Agreements") executed by each of the defendants in consideration of a supersedeas bond (the "Appeal Bond" or "Bond") that St. Paul issued, as surety, in a state-court case.  Transamerica has filed a motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted.  St. Paul has filed a motion for partial summary judgment.  The issues have been fully briefed by the parties, and no hearing is necessary.  Local Rule 105.6 (D. Md.).

## BACKGROUND

In 1995, Gordon and Clarice Clark (the "Clarks") sued Security Life Insurance Company of America ("Security") in Georgia state court.  After a trial, the jury found Security liable for fraud and violation of the Georgia Racketeer Influenced and Corrupt Organization statute ("RICO").  On August 6, 1996, the trial court entered judgment on the RICO claim only

in the amount of $14,476,694.18 in favor of the Clarks and
against Security.  *Sec. Life Ins. Co. v. Clark*, 494 S.E.2d 388,
389-90 (Ga. Ct. App. 1997)[hereinafter *Security I*].  The judgment
included an award of treble compensatory damages pursuant to
RICO.

     To avoid execution on the judgment while it pressed an
appeal, Security was required to post an Appeal Bond in the
amount of $16,220,000.  Am. Compl., Ex. B.  It asked St. Paul to
serve as surety.

     Before agreeing to furnish the Bond, St. Paul demanded and
received substantial collateral and indemnification to protect
itself against loss.  Thus, Security posted a letter of credit in
favor of St. Paul in the amount of $2,433,000.  Mot. for Summ.
J., Ex. 1.  This figure represented 15% of the required amount of
the Appeal Bond.  Security also entered into a written agreement
of indemnity with St. Paul, promising

               to indemnify and keep indemnified [St. Paul]
               and hold and save it harmless from and
               against any and all loss or expense of
               whatever nature which [St. Paul] shall or may


               for any cause, at any time, sustain for or by
               reason or in consequence of [St. Paul] having
               executed [the Appeal Bond].
Defs.' Opp'n, Ex. 16.

     In November 1996, the defendants, who were then Security's
reinsurers, and Allianz Life Insurance Company of North America

3

("Allianz"), a reinsurer not a party to this action, also entered into separate, identically worded Indemnity Agreements with St. Paul.  Am. Compl., Ex. A.  The defendants and Allianz expressly agreed

> to indemnify [St. Paul] and hold [St. Paul]
> harmless in respect of [their] respective
> proportions of any and all loss, damages,
> claims, costs, expenses and attorney's fees
> which [St. Paul] may incur by reason of [St.
> Paul] having furnished the [Appeal Bond] and
> . . . [to] immediately pay [St. Paul], upon
> [St. Paul's] demand, the amount of any claim
> that [St. Paul] may receive under and by
> reason of [St. Paul's] having issued the
> [Appeal Bond].

Am. Compl., Ex. A.  Their "respective proportions" totaled 85% of the potential loss to which St. Paul would be exposed as a result of issuing the Appeal Bond.  Each Indemnity Agreement also specified a maximum dollar amount (representing the allocated percentage of $16,220,000) that the particular reinsurer-indemnitor would be required to pay.[1]

---

[1]The following table summarizes the defendants' obligations under the Indemnity Agreements (Am. Compl., Ex. A):

| Defendant | Contractual Share | Max. Aggregate Liability |
|---|---|---|
| Am. United Life Ins. Co. | 2.5500% | $413,610.00 |
| Combined Ins. Co. of Am. | 2.3375% | $379,143.00 |
| Conn. Gen. Life Ins. Co. | 10.6250% | $1,723,375.00 |
| Crown Life Ins. Co. *and* Can. Life Ins. Co. of Am. | 1.2219% | $198,188.00 |

In consideration of the Indemnity Agreements and Security's letter of credit, on December 2, 1996, St. Paul, as surety, and Security, as principal, filed the Appeal Bond in the amount of $16,220,000.  Am. Compl., Ex. B.  The Appeal Bond provided, *inter*

---

| | | |
|---|---|---|
| Equitable Life Assurance Soc'y of the U.S. | 1.2750% | $206,805.00 |
| First Allmerica Fin. Life Ins. Co. | 0.4250% | $68,935.00 |
| Gen. & Cologne Life Re of Am. (f/k/a Cologne Life Reins. Co.) | 12.7500% | $2,068,050.00 |
| Mfrs. Life Ins. Co. | 8.5000% | $1,378,700.00 |
| Phoenix Life Ins. Co. (f/k/a Phoenix Home Life Mut. Ins. Co.) | 0.4250% | $68,935.00 |
| Principal Life Ins. Co. (f/k/a Principal Mut. Life Ins. Co.) | 1.0625% | $172,338.00 |
| Sun Life Assurance Co. of Can. | 3.9313% | $637,649.00 |
| Swiss Re Life & Health Am., Inc. (as successor to Mercantile & Gen. Reins. Co. Ltd.) | 22.6312% | $3,670,787.00 |
| Swiss Re Life & Health Am., Inc. (as successor to Swiss Re Life Co. Am., sued as Swiss Re Life Co. of Am. | 0.6906% | $112,019.00 |
| Transamerica Occidental Life Ins. Co. | 12.1125% | $1,964,648.00 |

| *Defendant* | *Contractual Share* | *Max. Aggregate Liability* |
|---|---|---|
| Unum Life Ins. Co. of Am. | 1.0625% | $172,338.00 |
| **TOTAL** | 81.6000% | $13,235,520.00 |

Allianz agreed to indemnify 3.4000% of St. Paul's potential loss (to a maximum aggregate liability of $551,480.00).  Therefore, all of the reinsurer-indemnitors are collectively responsible for 85% (or $13,787,000.00) of the required amount of the Appeal Bond.

5

*alia*:

> The condition of this obligation is such that, whereas the said Security Life Insurance Company appeals to the Court of Appeals of the State of Georgia from the Final Judgment filed on August 6, 1996;
>
> NOW THEREFORE, if Security Life Insurance Company shall pay all costs, charges and damages which may be awarded against it on said appeal, and if Security Life Insurance Company shall pay the judgment or that part of the judgment which is affirmed, then this obligation shall become void to the extent of such payment; and if the judgment is overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified; otherwise to be and remain in full force and effect.

*Id.* The trial court approved the Bond the same day it was filed.

The appellate proceedings that followed have been long and complex. On December 2, 1997, the Court of Appeals of Georgia reversed the judgment of the trial court, holding that the evidence entitled Security to a directed verdict on the Clarks' RICO claim. *Security I*, 494 S.E.2d at 393-96. The Supreme Court of Georgia granted certiorari, and on October 26, 1998, it affirmed in part and reversed in part the decision of the intermediate appellate court. *Clark v. Sec. Life Ins. Co. of Am.*, 509 S.E.2d 602, 605 (Ga. 1998)[hereinafter *Security II*]. It held, in particular, that the Court of Appeals had improperly

6

analyzed Security's vicarious liability for the acts of its
agent. *Id.* at 604-05. On remand, on July 30, 1999, the Court of
Appeals affirmed the original judgment of the trial court. *Sec.
Life Ins. Co. v. Clark*, 521 S.E.2d 434, 435-36 (Ga. Ct. App.
1999)[hereinafter *Security III*]. The Supreme Court again granted
certioriari. On September 11, 2000, it reversed the decision in
*Security III* and clarified its opinion in *Security II*. *Sec. Life
Ins. Co. of Am. v. Clark*, 535 S.E.2d 234, 238 (Ga. 2000)
[hereinafter *Security IV*]. It emphasized that the RICO judgment
could not stand, but indicated that the jury's original verdict
for fraud could. *Id*. at 237-38. Again, the Supreme Court
remanded the case to the Court of Appeals for action consistent
with its opinions. *Id.* at 238. In response, on April 3, 2001,
the intermediate appellate court vacated its decision in *Security
III* and remanded the case to the trial court "for proceedings
consistent with *Security IV*, *Security II*, and *Security I*." *Sec.
Life Ins. Co. v. Clark*, 547 S.E.2d 691, 692 (Ga. Ct. App.
2001)[hereinafter *Security V*].

When the case finally returned to the trial court after
*Security V*, St. Paul moved to be discharged as surety and to have
the Appeal Bond declared void. The trial court denied the
motion. Defs.' Mot. to Stay, Ex. I at 7. Instead, on July 5,
2001, it entered a modified judgment on the jury's original fraud
verdict in the amount of $6,330,694.18 in favor of the Clarks and

against Security and St. Paul, jointly and severally.  *Id.* at 8.
The modified judgment no longer included treble compensatory
damages.

Security appealed, challenging the entry of the fraud
judgment; St. Paul appealed, challenging the denial of its motion
for discharge.  On April 12, 2002, the Court of Appeals affirmed
Security's liability on the fraud claim, but ordered retrial of
its liability for punitive damages, the amount of such damages
(if any), and the amount of attorneys' fees that the Clarks could
recover.  *St. Paul Fire & Marine Ins. Co. v. Clark*, 566 S.E.2d 2,
11 (Ga. Ct. App. 2002)[hereinafter *Security VI*].  The Court of
Appeals also affirmed St. Paul's liability under the Appeal Bond.
*Id.* at 13.  Though St. Paul petitioned the Supreme Court to
review the latter ruling, the high court, on September 6, 2002,
declined to do so.  Am. Compl. ¶ 34.

On remand, on November 11, 2002, the trial court ordered a
new trial on the issues of punitive damages and attorneys' fees,
and entered a second modified judgment in favor of the Clarks and
against Security and St. Paul, jointly and severally, in the
amount of $7,481,950.53.  Mot. for Summ. J., Ex. 6 at 4.  This
judgment included $4,073,000 in judgment principal, plus
interest.  *Id.* at 3.  The trial court further awarded the Clarks
additional interest in the amount of $1,339.07 per day on the
judgment principal until the judgment was paid.  *Id.* at 4.

On November 13, 2002, the Clarks obtained a writ of
execution against Security and St. Paul for the full amount of
the second modified judgment.  Mot. for Summ. J., Ex. 7.  On
November 21, 2002, Security filed a notice of appeal, challenging
the trial court's calculation of the interest awarded the Clarks.
Defs.' Opp'n, Ex. 11 at 6.  St. Paul, however, decided to forego
further appeal.  On December 4, 2002, it paid the Clarks'
judgment and the interest thereon, totaling $7,527,513.91.  Mot.
for Summ. J., Ex. 8.

If successful, the pending appeal could reduce the final
judgment by as much as $2 million.  Defs.' Opp'n at 23.  The
Clarks moved to dismiss the appeal, contending that St. Paul's
payment of the judgment rendered the appeal moot.  *Id.*, Ex. K.
In the alternative, they sought to have St. Paul substituted for
them as appellee.  *Id.*  On February 10, 2003, the Court of
Appeals denied the Clarks' motion to dismiss, but granted their
request that St. Paul take their place as appellee.  Defs.'
Opp'n, Ex. 1.  The Court explained:  "St. Paul has demanded
indemnification from Security, and a reversal of the judgment on
the grounds urged by Security will reduce any potential
obligation that Security may have to St. Paul to indemnify it for
payment of the judgment."  *Id.*  St. Paul filed a motion for
reconsideration, which the Court denied.  Defs.' Opp'n, Ex. 10.
It then filed a petition for a writ of certiorari with the

Supreme Court.  Its petition remains pending.

Since it furnished the Appeal Bond, St. Paul has communicated with the defendants on several occasions to obtain indemnification.  Mot. for Summ. J., Ex. 9.  To date, none of the defendants has paid.  Schumaker Aff. ¶ 8.  Nevertheless, by drawing on the letter of credit posted by Security, St. Paul has obtained $2,433,000.00 in indemnity.  *Id.*

In this action, St. Paul seeks to recover its outstanding loss.  The amended complaint states two counts.  Count I asks for a declaration that St. Paul is entitled to indemnity from each of the defendants, up to and including the full amount of each defendant's proportionate share of all loss, damages, claims, costs, expenses, and attorneys' fees that St. Paul has incurred by reason of having furnished the Appeal Bond.  Count II seeks damages for breach of the Indemnity Agreements.  Only on this latter count has St. Paul moved for partial summary judgment.[2] To avoid any excess recovery, St. Paul seeks a judgment against each defendant that has been proportionately reduced to reflect the funds St. Paul received when it drew on the letter of

---

[2]St. Paul seeks judgment at this time only for damages it has incurred under the Appeal Bond *to date*, by paying the $7,527,513.91 judgment in the underlying litigation.  It reserves the right to seek from the defendants *at a later time* reimbursement of any and all other losses it has incurred or will incur as a result of having issued the Bond, including, but not limited to, attorneys' fees, expenses, and uncollectable judgments.

credit.[3]

---

[3]St. Paul has allocated part of the funds received under the letter of credit to indemnify itself for 15% (or $1,129,127.09) of the sum it paid to the Clarks.  The remaining funds received under the letter of credit thus totaled $1,303,872.91.  St. Paul has allocated this amount as a credit to the defendants, crediting each in proportion to its liability to St. Paul under its Indemnity Agreement.  To do so, St. Paul has divided each defendant's contractual share of liability by 0.85, then multiplied the result by $1,303,872.91.  The following table summarizes these calculations and specifies the judgment that St. Paul seeks against each defendant (Schumaker Aff. ¶¶ 9–10):

| Defendant | Contract. Share | Contract. Liability as to Full Amt. of Judgment Paid to Clarks | Credit for Amt. Received from Security's Ltr. of Credit | Judgment Sought |
|---|---|---|---|---|
| Am. United Life Ins. Co. | 2.5500% | $191,951.60 | $39,116.19 | $152,835.41 |
| Combined Ins. Co. of Am. | 2.3375% | $175,955.64 | $35,856.51 | $140,099.13 |
| Conn. Gen. Life Ins. Co. | 10.6250% | $799,798.35 | $162,984.11 | $636,814.24 |
| Crown Life Ins. Co. *and* Can. Life Ins. Co. of Am. | 1.2219% | $91,978.69 | $18,775.77 | $73,202.92 |
| Equitable Life Assurance Soc'y of the U.S. | 1.2750% | $95,975.80 | $19,558.09 | $76,417.71 |
| First Allmerica Fin. Life Ins. Co. | 0.4250% | $31,991.93 | $6,519.36 | $25,472.57 |
| Gen. & Cologne Life Re of Am. (f/k/a Cologne Life Reins. Co.) | 12.7500% | $959,758.02 | $195,580.94 | $764,177.08 |
| Mfrs. Life Ins. Co. | 8.5000% | $639,838.68 | $130,387.30 | $509,451.38 |
| Phoenix Life Ins. Co. (f/k/a Phoenix Home Life Mut. Ins. Co.) | 0.4250% | $31,991.93 | $6,519.36 | $25,472.57 |

| Defendant | Contract. Share | Contract. Liability as to Full Amt. | Credit for Amt. Received from Security's | Judgment Sought |
|---|---|---|---|---|

CHOICE OF LAW

Sitting in diversity, this Court must apply the choice-of-law rules of Maryland. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In a contract action, Maryland adheres to the doctrine of *lex loci contractus*. *Am. Motorists Ins. Co. v.*

| | | *of Judgment Paid to Clarks* | *Ltr. of Credit* | |
|---|---|---|---|---|
| Principal Life Ins. Co. (f/k/a Principal Mut. Life Ins. Co.) | 1.0625% | $79,979.84 | $16,298.41 | $63,681.43 |
| Sun Life Assurance Co. of Can. | 3.9313% | $295,929.15 | $60,369.32 | $235,559.83 |
| Swiss Re Life & Health Am., Inc. (as successor to Mercantile & Gen. Reins. Co. Ltd.) | 22.6312% | $1,703,566.72 | $347,090.97 | $1,356,475.75 |
| Swiss Re Life & Health Am., Inc. (as successor to Swiss Re Life Co. Am., sued as Swiss Re Life Co. of Am.) | 0.6906% | $51,985.01 | $10,561.37 | $41,423.64 |
| Transamerica Occidental Life Ins. Co. | 12.1125% | $911,770.12 | $185,801.89 | $725,968.23 |
| Unum Life Ins. Co. of Am. | 1.0625% | $79,979.84 | $16,298.41 | $63,681.43 |
| **TOTAL** | 81.6% | $6,142,451.32 | $1,251,718.00 | $4,890,733.32 |

Allianz's 3.4000% share of St. Paul's current losses in connection with payment of the Clarks' judgment is $203,780.55, resulting in a total of $5,094,513.87 in reimbursement currently sought from the reinsurer-indemnitors. This total represents five cents less than 85% of the full amount of the judgment paid (or the full amount of the judgment paid minus the amount received under the letter of credit): $7,527,513.91 - $2,433.000.

12

*ARTRA Group, Inc.*, 338 Md. 560, 573 (1995).  Absent a choice-of-law provision in the contract, the substantive law of the jurisdiction where the contract was made controls.  *Id.*  A contract is made "in the place where the last act occurs necessary under the rules of offer and acceptance to give the contract a binding effect."  *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 55 (2002).

In November 1996, representatives of all defendants other than Transamerica signed the Indemnity Agreements in New York; a representative of Transamerica signed in North Carolina.  Their signatures, however, did not make the contracts binding.  The defendants promised indemnity "in consideration of [St. Paul] *executing and delivering* [the Appeal Bond]."  Am. Compl., Ex. A. When their representatives signed the Indemnity Agreements, St. Paul had not yet executed and delivered the Appeal Bond.  The promise to indemnify rested not upon St. Paul's *promise* to furnish the Bond, but upon the Bond actually being furnished. *Union Trust Co. of N.J. v. Knabe*, 122 Md. 584, 606 (1914)("When the offer contemplates an acceptance by the doing of an act, the contract is formed, not by a promise to do that act, but by actually doing it.")(citation and internal quotation marks omitted).  Until St. Paul executed and delivered the Bond *in Georgia*, the signed Indemnity Agreements remained mere *offers* to contract.  Because acceptance in Georgia made the contracts

binding, the substantive law of Georgia governs.

MOTION TO DISMISS

A.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The function of Rule 12(b)(6) is to test the *legal* sufficiency of the complaint, not the facts that support it.  *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Co.*, 609 F.2d 1083, 1086 (4th Cir. 1979).  Therefore, in determining whether to dismiss a complaint, the court must accept the well-pleaded material allegations as true, viewing the facts and the reasonable inferences drawn therefrom in the light most favorable to the plaintiff.  *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).  The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

B.   Analysis

The amended complaint alleges a breach of contract.  Under Georgia law, a breach-of-contract claim has two elements:  breach of a valid contract by the non-complaining party, and resultant damages to the complaining party.  *Budget Rent-a-Car of Atlanta,*

14

*Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996).

St. Paul has pled that Transamerica breached a contract to indemnify St. Paul against certain losses, and that St. Paul has suffered damages as a result. Am. Compl. ¶¶ 46-50 & Ex. A. Transamerica argues, however, that St. Paul materially changed the undertaking that Transamerica had agreed to indemnify, without Transamerica's consent and to its detriment. Therefore, Transamerica concludes, its indemnity obligation became void, and St. Paul cannot "prevail on its breach-of-contract claim." Mot. to Dismiss at 7 (relying on, *inter alia*, *Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 n.3 (5th Cir. 1968)(applying Texas law)("[A]n act on the part of an indemnitee which materially increases the risk or prejudices the right of the indemnitor will discharge the indemnitor to the extent that [the indemnitor] has been damaged as a result of that act.")).

Transamerica's argument addresses not the sufficiency of the pleading, but raises an affirmative defense to St. Paul's claim. Generally, the merits of an affirmative defense should be decided on the basis of proof, not merely on the basis of the complaint. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Only when the defense "clearly appears on the face of the complaint" should a court consider dismissal under Rule 12(b)(6). Because the asserted defense does not so appear, Transamerica's motion to dismiss the breach-of-contract

claim must be denied.

In addition to damages, St. Paul also seeks a judicial declaration of the parties' rights and obligations under the Indemnity Agreement.  Am. Compl. ¶¶ 41-45.  The Declaratory Judgment Act applies only in "a case of actual controversy."  28 U.S.C. § 2201(a).  Unless such a controversy exists, a federal court has no power to grant declaratory relief.  U.S. Const. Art. III, § 2; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).  Although the distinction between an abstract question and an actual controversy "is necessarily one of degree," *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941), there can be no question that the contract dispute between St. Paul and Transamerica is genuine:  St. Paul has stated a valid breach-of-contract claim, and Transamerica denies liability.

The grant of a declaratory judgment, however, rests in the sound discretion of the trial court.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  Two principal circumstances favor exercise of the court's jurisdiction:  "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)(quoting Edwin M. Borchard,

16

Declaratory Judgments 107-09 (1934))(internal quotation marks omitted).

St. Paul and Transamerica disagree about their respective rights and obligations under the Indemnity Agreement. Their disagreement has led not only to grave uncertainty, but to this lawsuit. A declaratory judgment will dispel any uncertainty about what, if anything, Transamerica owes St. Paul. It is immaterial that St. Paul also seeks — and may be awarded — damages. *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."); *Powell v. McCormack*, 395 U.S. 486, 517-18 (1969). The Court, therefore, declines to dismiss St. Paul's request for declaratory relief.

<u>MOTION FOR SUMMARY JUDGMENT</u>

A.    <u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. A fact issue is material if

17

it must be decided to resolve the plaintiff's substantive claim. *Id.* at 248.  The "materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Id.*

A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask. . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded [factfinder] could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.  In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely, *Celotex Corp.,* 477 U.S. at 324.  Finally, the mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Id.*

B.  Analysis

Under Georgia law, if a surety-indemnitee pays or settles a claim prior to judgment, its contractual indemnitors may raise three defenses in a suit for reimbursement:  (1) that the surety-

indemnitee failed to exercise good faith in making the payment; (2) that the amount paid was unreasonable; and (3) that the surety-indemnitee was not legally liable to the party it paid. *See M-Pax, Inc. v. Dependable Ins. Co.*, 335 S.E.2d 591, 593 (Ga. Ct. App. 1985); *Robert & Co. Assocs. v. Pinkerton & Laws Co.*, 169 S.E.2d 360, 364 (Ga. Ct. App. 1969).  If a surety-indemnitee pays a claim after judgment, however, the judgment conclusively establishes both its legal liability and the reasonableness of its payment.  *M-Pax, Inc.*, 335 S.E.2d at 594 (relying, in part, on Georgia's statutory law of suretyship).  Contractual indemnitors with notice of the suit may then contest only the good faith of the surety-indemnitee.  *Id.* at 593.  The agreement of indemnity need not expressly require the surety-indemnitee to pay in good faith, because the law implies such a duty.[4]  Ga. Code Ann. § 11-1-203 (West Group, WESTLAW through 2002 regular sess.); *West v. Koufman*, 384 S.E.2d 664, 666 (Ga. 1989).

To preclude the indemnitors' defenses, the judgment must be final.  And a timely-filed appeal suspends the finality of a trial court's judgment.  *Scott v. Liberty Mut. Ins. Co.*, 310 S.E.2d 772, 773 (Ga. Ct. App. 1983).  Only "when no timely attempt is . . . made to reverse the original judgment of the trial court" does that judgment become "conclusively final."

---

[4]The order of the Georgia Court of Appeals, dated February 10, 2003, seems no more than a cryptic gloss of these principles.  Defs.' Opp'n, Ex. 1.

19

*Id.; see also George v. George*, 212 S.E.2d 813, 814 (Ga. 1975) ("[A] judgment cannot be treated as final so long as either party has the right to have it reviewed by [an appellate court].").

*Security VI* finally and conclusively establishes St. Paul's liability to the Clarks. Thus, with respect to legal liability, the Georgia trial court's second modified judgment, entered November 11, 2002, is final. *See Stafford Enters., Inc. v. Am. Cyanamid Co.*, 297 S.E.2d 307, 311 (Ga. Ct. App. 1982)("[T]he decision of the appellate court, and any direction awarded, shall be respected and in good faith carried into full effect by the court below."). Security, however, has timely appealed the *amount* of liability. With respect to that amount, the second modified judgment is *not* final. Accordingly, because St. Paul paid the judgment during the pendency of Security's appeal, the defendant-indemnitors may raise two defenses: St. Paul's lack of good faith and the unreasonableness of its payment. Either defense, if properly supported, creates a genuine issue of material fact forestalling summary judgment.

A surety-indemnitee that pays a claim against its principal-indemnitor acts as the principal-indemnitor's agent. *See McLendon v. Hartford Accident & Indem. Co.*, 167 S.E.2d 725, 726 (Ga. Ct. App. 1969). Ultimately, the money it pays comes not out of its own pocket, but out of the principal-indemnitor's. It therefore owes its principal-indemnitor fiduciary duties of

utmost good faith and loyalty. *Id.; see also* Ga. Code Ann. § 23-2-58 (requiring fiduciary to exercise "utmost good faith"); *Dawes Mining Co. v. Callahan*, 272 S.E.2d 267, 269-70 (Ga. 1980)(elaborating some of the duties of a fiduciary); *Harrison v. Harrison*, 105 S.E.2d 214, 218 (Ga. 1958)(same).  Utmost good faith demands that the surety-indemnitee treat its principal-indemnitor's interests at least on par with its own. *Cf. Thomas v. Atlanta Cas. Co.*, 558 S.E.2d 432, 439 (Ga. Ct. App. 2001)("When [an] insurer considers its own self-interest regarding whether . . . to settle a case within policy limits, the insurer must give at least equal consideration to the interests of its insured under the facts and circumstances of the case.").  It may require even more. *See Dawes Mining Co.*, 272 S.E.2d at 269 (stating that an agent must "act primarily for the benefit of the principal in matters connected with the agency")(citation and internal quotation marks omitted); *David C. Joel, Att'y at Law, P.C. v. Chastain*, 562 S.E.2d 746, 750 (Ga. Ct. App. 2002) (explaining that attorney must not "pursue any interest or take any act adverse to [client's] interests"); Restatement (Second) of Agency § 387 (1958).

If a surety obtains agreements of indemnity not only from its principal but from others as well, it owes them no less a duty of good faith. *See M-Pax, Inc.*, 335 S.E.2d at 593

(indicating that a surety's fiduciary duty to exercise good faith in paying a claim extends to contractual indemnitors other than its principal).

The defendants point to ample evidence from which a trier of fact could conclude that St. Paul breached its duty of good faith — at least with respect to the amount now disputed on appeal.[5] First, St. Paul paid the second modified judgment over the defendants' express protest. *See* Defs.' Opp'n, Ex. 17.  Second, St. Paul paid even though Security, its principal and an independent contractual indemnitor, was pressing a non-frivolous appeal that could substantially reduce the final judgment — saving the indemnitors as much as $2 million in aggregate. Security, moreover, was prosecuting that appeal *with its own counsel and at its own expense*.  Indeed, it continues to do so. Third, St. Paul had indemnities in excess of $16 million, more than double the amount of the second modified judgment.  And no evidence suggests that any of its indemnitors was financially insecure.

Even if St. Paul owed the defendants a mere contractual duty of good faith rather than a more stringent fiduciary duty, a reasonable factfinder could find a breach of that duty.  A party may perform a contract in bad faith not only if motivated by

---

[5]The Court notes that a finding of bad faith on the part of the indemnitee fully discharges an indemnitor from its obligation of reimbursement, regardless whether the indemnitee paid a reasonable amount. *Nat'l Sur. Co. v. Runge*, 162 S.E. 867, 868 (Ga. Ct. App. 1932).

genuine ill will, but also if motivated by some other, less "sinister" self-interested purpose. *Blaney v. O'Heron*, 568 S.E.2d 774, 777 (Ga. Ct. App. 2002); *Ryland Group v. Daley*, 537 S.E.2d 732, 737 (Ga. Ct. App. 2000). The implied covenant of good faith prohibits a party from "doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Carmichael v. Gonzales*, 131 S.E.2d 149, 151 (Ga. Ct. App. 1963)(citation and internal quotation marks omitted).

The bond that underlies the Indemnity Agreements was an *appeal* bond, not some run-of-the-mill construction performance bond. The defendants agreed to indemnify St. Paul for the specific purpose of enabling Security to prosecute its appeal of the Clarks' judgment. St. Paul's unilateral settlement of the second modified judgment may have thwarted the defendants' purpose.

Furthermore, St. Paul paid an unreasonable amount if it paid more than "what the [Clarks] could have reasonably expected to obtain, under the facts and applicable law, had the case[] been allowed to proceed to . . . [final] judgment." *Robert & Co., Assocs.*, 169 S.E.2d at 364. Of course, the mere fact that a final judgment would fix the amount of liability below what an indemnitee actually paid does not make a settlement unreasonable. *Id.* "Applicable law" aside, however, the fact that St. Paul paid

the Clarks the *most* they could hope to receive — without discount
for the costs that they would incur in defending the second
modified judgment or the likelihood that Security's appeal would
succeed — raises a genuine question whether St. Paul unreasonably
paid too much.

In the case of an indemnity agreement under a construction
performance bond, for example, the surety-indemnitee cannot
collect from its indemnitors if it arbitrarily completed the
underlying contract, when the principal defaulted, at the highest
bid it received. *See Nat'l Sur. Co.*, 162 S.E. at 868 ("While the
indemnity agreement authorizes the [surety-indemnitee] to
complete the contract, it does not give it the right to
arbitrarily complete the contract and force the indemnitors to
pay an arbitrary sum for the same. The [surety-indemnitee] . . .
[has] a legal . . . obligation to complete the work at the lowest
figure that would consummate the work in accordance with the
terms of the contract."). A surety-indemnitee, it seems, has
some duty to mitigate its damages. *Id.*

<u>ORDER</u>

For the foregoing reasons, it is, this 1st day of July 2003,
hereby ORDERED:

1.    That defendant Transamerica's motion to dismiss BE, and it
      hereby IS, DENIED;

2.    That the plaintiff's motion for partial summary judgment

24

BE, and it hereby IS, DENIED; and

3.    That the Clerk of the Court send copies of this Memorandum

Opinion and Order to counsel for the parties.

_____/s/_____

William D. Quarles, Jr.
United States District Judge